HEATHER E. WILLIAMS, #122664
Federal Defender
BENJAMIN D. GALLOWAY, #214897
Chief Assistant Federal Defender
RACHELLE BARBOUR, #185395
Attorney
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax: 916-498-5710

Attorneys for
OMAR AMEEN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ, | Case No.  2:18-mj-152 EFB<br><br>STATUS REPORT<br><br>Date:  October 15, 2018<br>Time: 10:00 a.m.<br>Judge: Hon. Edmund F. Brennan |

Mr. Ameen acknowledges being the person identified in the Iraqi arrest warrant, and accordingly waives an identity hearing in this Court.  He adamantly denies having been involved in the charged offense, and, in fact, was not even in Iraq at the time.  Defense counsel is diligently working to develop facts and pursue investigation that will explain the inconsistent statements by the lone purported eyewitness and obliterate the weak probable cause presented by the Iraqi government.  Given the complexity and seriousness of this case, the defense requests a reasonable amount of time to continue to investigate and present admissible evidence to the Court.  To that end, the defense requests that the Court set a further status conference in December.

As the extradition packet makes clear, the Iraqi charge is based on the statement of a single purported eyewitness to the alleged murder.  That witness's statement, given in April 2018 to the Iraqi court, is both internally inconsistent and extensively contradicted by that witness's earlier statement taken in October 2017 by the FBI.

The Iraqi judicial system, especially in a special counterterrorism court like the one that issued the warrant against Mr. Ameen, puts "heavy reliance on informants" who "never appear in court; their claims are passed to the judges in dry, written reports from intelligence officials with no hint of their possible motivation."  AP, "Neighbor's word can bring death sentence in Iraq's ISIS trials," New York Post (July 9, 2018)(noting that thousands of death sentences have been handed out, "at a rapid clip" on flimsy cases); Coker & Hassan, "A 10-Minute Trial, a Death Sentence: Iraqi Justice for ISIS Suspects," NYT (April 17, 2018)(noting perfunctory trials in special counterterrorism courts, a process "more concerned with retribution than justice"). Defense lawyers in counterterrorism courts in Iraq note that they are not allowed to request time to study case files or explore defenses.  Cases proceed without adversarial testing and without corroborating evidence.  "Authorities have made no efforts to solicit victims' or witnesses' participation in the trials."  Human Rights Watch, 2017 Iraq Report p. 3 (Jan. 2018).  "Numerous detainees have alleged that authorities forced them to confess through the use of torture."  Id.

In the end, the sentence for any such offense is usually death by hanging, accomplished within hours of presidential ratification of the sentence.[1]  Multiple international agencies, including the U.S. State Department and the United Nations, have noted the lack of legal due process for those charged under Iraqi counterterrorism laws.  U.S. Dept. of State, "Iraq 2017 Human Rights Report," pp. 12-13 (noting lack of due process for arrestees and detainees); UN, Human Rights Council, "Report of the Special Rapporteur on extrajudicial, summary or arbitrary executions on her mission to Iraq," A/HRC/38/44/Add.1 para. 47 (June 5, 2018)(noting that counterterrorism law denies defendants their fair trial rights and due process guarantees); UNAMI/OHCHR, "Report on Human Rights in Iraq," pp. vi, 5-8 (July to Dec. 2017)(noting the lack of due process and large-scale mass executions of persons convicted of terrorism crimes). Iraq mass executions have become the norm.  Tawfeeq, Said-Moorhouse, and Walsh, "Iraqi PM orders 'immediate' execution of all 'terrorists condemned to death'" CNN.com (June 30, 2018).

Undersigned counsel expect to show that Mr. Ameen was not in Iraq at the time of the alleged murder in June 2014, and that the witness's statement is not credible.  Defense

---

[1] Iraq has one of the highest rates of executions in the world.  2017 Iraq Report at p. 5.

Status Report – US v. Ameen

2

investigation will also determine how this incredible allegation was procured. The defense believes that its investigation will result in admissible evidence that will obliterate probable cause. Given the incredibly high stakes in this case – a virtually-ensured death sentence should Mr. Ameen be returned to Iraq – defense counsel respectfully requests that this Court provide reasonable time for a full investigation.

Extradition hearings are not meant to ratify a warrant by a requesting court. Requests for extradition must be based on "competent legal evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused." In re Wei Tung Lam, 2009 U.S. Dist. LEXIS 43075 at *16 (E.D. Cal. May 12, 2009). To determine whether the standard is met, one must "look to whether there is a fair probability of guilt." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Although an extradition hearing is not meant to be a full trial, defense counsel has a meaningful role in investigating alleged probable cause and developing any facts that would explain or obliterate it. "[T]he accused has the right to introduce evidence which is 'explanatory' of the demanding country's proof." In re Sindona, 450 F.Supp. 672, 685 (S.D.N.Y. 1978); Santos v. Thomas, 830 F.3d 987, 990 (9th Cir. 2016)(evidence of coercion is explanatory).

The Ninth Circuit has held that explanatory evidence is evidence that "explains away or completely obliterates probable cause," whereas contradictory evidence is that which "merely controverts the existence of probable cause, or raises a defense." Mainero v. Gregg, 164 F.3d 1199, 1207 n. 7 (9th Cir. 1999). This distinction is difficult to discern in practice. See, e.g., Hoxha v. Levi, 465 F.3d 554, 561 (3d Cir. 2006) ("In practice," the line between contradictory and explanatory evidence "is not easily drawn."); In re Extradition of Strunk, 293 F.Supp. 2d 1117, 1122 (E.D.Cal. 2003)(Hollows, J.) ("The distinction between evidence which 'explains' and evidence which 'contradicts' seems metaphysical."). The purpose behind the rule admitting explanatory evidence "is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." Sindona, 450 F. Supp. at 685.

The right to present explanatory evidence necessarily relies on the right to investigate and develop such evidence. At this point, based on the limited investigation so far, the defense expects to be able to present clear-cut evidence that will negate probable cause. <u>Sandhu v. Burke</u>, 2000 U.S. Dist. LEXIS 3584 *20 (S.D.N.Y. Feb. 7, 2000) ("Whatever the precise boundary between admissible 'explanatory' evidence and inadmissible 'contradictory' evidence, evidence that would completely negate probable cause, is admissible in an extradition hearing.").

The extradition hearing provides important legal protections. "[S]ufficient information must be submitted to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." <u>In re Ben-Dak</u>, 2008 U.S. Dist. LEXIS 29460 (S.D.N.Y. 2008) (<u>quoting</u> <u>Gates</u>, 462 U.S. at 239). Specifically, "the materials submitted must set forth facts from which both the reliability of the source and probable cause can be inferred." <u>In re Ernst</u>, 1998 U.S. Dist. LEXIS 10523, at *4 (S.D.N.Y. 1998). "Where, as in the case before the Court, probable cause is supported by an affidavit, 'recital of sufficient underlying circumstances is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp.'" <u>In re Platko</u>, 213 F. Supp. 2d 1229, 1240 (S.D. Cal. 2002) (citing <u>In re Lehming</u>, 951 F. Supp. 505, 517 (D. Del. 1996)).

In 2016, the Ninth Circuit in <u>Santos v. Thomas</u>, reversed the district court's denial of habeas relief from a magistrate judge's order certifying Santos's extradition to Mexico on charges of kidnapping. 830 F.3d 987 (9th Cir. 2016)(en banc). At the extradition hearing, Santos attempted to introduce evidence that the incriminating statements made against him by his alleged co-conspirators were obtained via coercion, duress, and torture, and therefore the statements did not amount to probable cause that he committed the offense and could not support the government's request to extradite. <u>Id</u>. at 990. The magistrate judge excluded the evidence of coercion, finding that the evidence of coercion was "contradictory," and therefore inadmissible. <u>Id</u>. The district court likewise affirmed and the matter was appealed to the Ninth Circuit.

In an *en banc* opinion, the Ninth Circuit held that the evidence of coercion was explanatory and admissible. <u>Id</u>. at 1007-08. The procurement of witness statements by coercion "is essentially a second-order question—a question about questions; the allegation undermines

the process by which the evidence was obtained, not the credibility of the evidence itself." Id. at 1004. Accordingly, "the manner in which evidence used to support probable cause was obtained is relevant in determining whether the probable cause standard has indeed been satisfied" and such evidence is admissible in an extradition proceeding. Id. at 1007.

As the Ninth Circuit reiterates throughout the opinion, the judiciary has a critical role to play in the extradition process, which includes ensuring that the evidence it relies on in finding probable cause is competent and reliable. Under Santos, this means that where evidence is available that undermines the reliability of witness statements used by the government to support probable cause, such evidence would be admissible at an extradition hearing to "explain away" or otherwise "obliterate" the government's probable cause showing. Thomas, 830 F.3d at 1004 ("[S]uch statements are not 'contradictory' because the truthfulness of the statements is not the issue . . . . [rather] [t]he fact of coercion is 'explanatory' because . . . it addresses the circumstances under which the government's witnesses made inculpatory statements."). In this case, evidence that such statements were manufactured, false, coerced, or entirely fraudulent would undeniably be relevant and admissible at an extradition hearing as such evidence would explain away the government's case for probable cause or otherwise obliterate its only evidence in support of probable cause.

Neither defense counsel, nor this Court is a rubber stamp on the extradition request. The U.S. government has indicated that it started investigating Mr. Ameen in 2016, approximately two years prior to the Iraqi warrant. There is no dispute that Mr. Ameen has lived a quiet and peaceful life since arriving in the United States in late 2014. He was surveilled by U.S. law enforcement in early 2018, if not earlier, before any charges were filed in Iraq. Likewise, for reasons not explained by the government, the first statement by the purported eyewitness about the Iraqi crime was taken by the FBI in Iraq in Fall 2017, months before the witness gave an inconsistent statement to Iraqi authorities that is the basis of the warrant. Undoubtedly, Mr. Ameen's movements, cell phone use, emails, and social media have been fully investigated by U.S. law enforcement. If there was anything inculpatory therein, it surely would have been disclosed to the Court in the government's 32-page memorandum in favor of detention. Doc. 6.

Defense counsel expects that the government, which has had over two years to investigate Mr. Ameen, obtain records, and interview witnesses across the world, will suggest that defense counsel prepare its case in a matter of a few months.  Although the government had known about Mr. Ameen for years, and let him lead his life in Sacramento while it investigated him, defense counsel had never heard of Mr. Ameen prior to his first court hearing on August 15, 2018.  He was arrested that morning and brought to the courthouse for his first appearance barely fifteen minutes before court began that day.[2]  Accordingly, his first appearance had to be continued to the following Monday, August 20, 2016, simply to allow defense counsel to see him with an interpreter and attempt to discuss the case.  That day set off the intense work that defense counsel have put into this case to attempt to understand these allegations, put them into context, and prepare to address them.

A few months to prepare for an extradition hearing would be a short timeline even in a garden-variety extradition case.[3]  A few months is wholly inadequate in a death penalty case involving a murder accusation from war-torn Iraq on the day of the ISIS takeover of Anbar Province over four years ago, where explanatory and exculpatory material is to be found in Syria, Iraq, and Turkey.

//

//

---

[2]    Mr. Ameen's arrival at the courthouse for the 2:00 p.m. duty calendar was delayed for a four-hour FBI interrogation that ended at 1:15 p.m. that day.

[3]    A review of reported extradition cases supports a reasonable timeline in this case that gives defense counsel opportunity to investigate the allegations and brief the court. See e.g., In re Camelo-Grillo, 2017 U.S. Dist. LEXIS 106389 (C.D. Cal. July 10, 2017)(approximately ten months between arrest and extradition hearing on murder conviction in requesting country); In re Mathison, 974 F.Supp.2d 1296 (D. Or. 2013)(approximately nine months between arrest and extradition hearing on fraud charges); Trinidad y Garcia v. Benov, 2009 U.S. Dist. LEXIS 115843  (C.D. Cal. Nov. 17, 2009) (approximately ten months between arraignment and closing argument of the extradition hearing in a kidnapping case); In re Kyung Joon Kim, 2004 U.S. Dist. LEXIS 12244 (C.D. Cal. July 1, 2004)(approximately 15 months between arrest and extradition order of Oct. 20, 2005 in counterfeiting and forgery case); Prasoprat v. Benov, 294 F.Supp.2d 1165 (C.D. Cal. 2003)(approximately 11 months between arrest and extradition hearing in drug trafficking case).

1   While additional time is essential to a just outcome in this case, defense counsel have no
2   interest in unnecessary delay. On the contrary, the defense is mindful that Mr. Ameen, a father
3   of four who has peacefully lived in the United States since 2014, is sitting in solitary
4   confinement during the pendency of this proceeding. He is confined to his cell virtually around
5   the clock, away from his wife and children. In light of that, defense counsel will investigate and
6   prepare as quickly as this complex, multinational investigation will allow. Accordingly, defense
7   counsel respectfully requests that the Court set a status conference date in early December.

DATED: October 10, 2018    Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

*/s/ Benjamin D. Galloway*
BENJAMIN D. GALLOWAY
Chief Assistant Federal Defender

/s/ *Rachelle Barbour*

RACHELLE BARBOUR
Attorney
Attorneys for OMAR AMEEN