McGREGOR W. SCOTT
United States Attorney
AUDREY B. HEMESATH
HEIKO P. COPPOLA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700

CHRISTOPHER J. SMITH
Acting Associate Director
JOHN RIESENBERG
Trial Attorney
Office of International Affairs
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20530
Telephone: (202) 514-0000

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF<br><br>THE EXTRADITION OF OMAR AMEEN | CASE NO.  2:18-MJ-00152-EFB<br><br>RESPONSE TO FUGITIVE'S STATUS REPORT |

The United States, in fulfilling its treaty obligations with the Republic of Iraq, opposes the defense's request for an indeterminate period of time to conduct an unbounded investigation unlikely to result in admissible evidence in these extradition proceedings.  Most of what the defense seeks time to do is suited for Omar Ameen's defense at trial, overseas in Iraq.  These extradition proceedings under 18 U.S.C. § 3184 are not the forum for Ameen to present his arguments on witness credibility, potential alibi, or the equities of any punishment.  The United States presented, on behalf of the Republic of Iraq, all of the evidence it intends to submit in this case on August 14, 2018.  Ameen has conceded identity: that he is the person sought in the Iraqi arrest warrant.  CR 19 at 1.  The United States requests that the Court set this matter for the next step in the process—an extradition hearing—in December 2018.

I.        **CURRENT STATUS OF THE CASE**

It has been two months since the United States filed a complaint for the extradition of Omar Ameen at the request of the Republic of Iraq, pursuant to the Extradition Treaty Between the United States of America and Iraq, U.S.-Iraq, June 7, 1934, 49 Stat. 3380.  In support of its request for Omar Ameen's extradition, Iraq submitted the appropriate documents to the U.S. Department of State, including three sworn statements from firsthand witnesses who identified Ameen as part of the group of armed ISIS fighters in Rawah, Iraq, that brutally murdered an Iraqi police officer.

In those two months, the United States has provided to the defense materials in its possession relevant to the murder alleged in the extradition request.  There is no statutory right to discovery in extradition proceedings.  *Quinn v. Robinson*, 783 F.2d 776, 817 n. 41 (9th Cir. 1986).  Nevertheless, as a courtesy given the unique circumstances of this case involving a criminal investigation into Ameen, the United States has also provided copies of certain materials in the possession of the United States government not related to the murder, but requested by the defense.  The defense requests for such materials have been ongoing, and the United States has endeavored to be as responsive as possible.  The United States will continue to do so through the date of the extradition hearing, toward the end of avoiding the litigation of collateral matters and allowing an expeditious resolution of this certification proceeding.

While the United States intends to continue responding to defense requests for information, at the same time, the United States has been clear that it would be seeking an extradition hearing in the near future: specifically, within 30-60 days from the October 15, 2018 status conference.  None of the materials provided by the United States to the defense thus far undercut probable cause or meet the stringent standard of admissibility in extradition proceedings.  Nor has the defense alerted the United States to any evidence in its possession that would obliterate probable cause or otherwise be admissible.

The United States indicated in its memorandum opposing bail that the FBI has been investigating Ameen since 2016, and that investigation continues.  Nothing in the FBI's ongoing investigation has revealed any additional, admissible facts relating to the murder alleged in the extradition request.[1]  In

---

[1] Part of that ongoing investigation, as noted by the defense, included a post-arrest, voluntary interview with Ameen, following Ameen's written waiver of *Miranda* rights.  In this interview, Ameen made a number of admissions relating to his family ties to Al-Qaeda in Iraq and ISIS.  Ameen also

short, to the best knowledge of the government, the evidence as it relates to these extradition proceedings is as it was two months ago, notwithstanding ongoing investigation by both sides.

Nevertheless, Ameen seeks additional months to develop and introduce: (1) evidence of alibi, i.e. "that [he] was not in Iraq at the time of the alleged murder in June 2014"; (2) evidence that attacks the credibility of Iraq's witnesses, i.e., "that [Iraq's] witness's statement is not credible"; and (3) evidence relating to the quality of the Iraqi investigation and judicial system, including evidence that the witness statements "were manufactured, false, coerced, or entirely fraudulent." CR 19 at 2-3, 5. The type of evidence that Ameen seeks a delay to advance—evidence that raises affirmative defenses, contradicts the requesting country's proof, and examines its judicial process—is precisely the type of evidence that extradition case law bars him from admitting in extradition proceedings. Because an extradition hearing is not a trial, and because the rule of non-inquiry prohibits extradition magistrates from examining the procedures and punishments of the United States' treaty partners, Ameen's proposed investigation is irrelevant to the issues properly before the Court in this proceeding. The government agrees with Ameen that the Court should set a hearing date in December 2018, but that hearing should be the statutorily required extradition hearing and not another status hearing. 18 U.S.C. § 3184.

## II.      LIMITED SCOPE OF ADMISSIBILITY IN EXTRADITION PROCEEDINGS

An extradition hearing is not a criminal proceeding. *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984). In extradition hearings, magistrates do not weigh conflicting evidence and determine what or whom to credit, as they would in criminal proceedings. *Quinn*, 783 F.2d at 815 ("The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused committed the charged offense."). The factual findings that a magistrate judge makes in extradition proceedings "do not constitute true findings of fact in the sense that the court has weighed the evidence and resolved disputed

---

admitted to misrepresenting the nature of his father's death on his refugee application, toward the end of gaining admission to the United States. Ameen maintained that in spite of his brothers' and cousins' AQI and ISIS affiliations, he himself was peace-loving and unaffiliated. These admissions would not be admissible in extradition proceedings either, except to the extent Ameen testifies on his own behalf as they relate to his credibility.

RESPONSE TO FUGITIVE'S STATUS REPORT                    3

1  factual issues."  *Caplan v. Vokes*, 649 F.2d 1336, 1344 n. 10 (9th Cir. 1981).

2          **A.      Credibility**

3          The defense seeks an extended investigation toward the end of showing that "the witness's

4  statement is not credible."  CR 19 at 2.

5          Matters of witness credibility that go to disputed facts in foreign criminal cases are reserved

6  solely for the trial courts of the requesting country.  *Barapind v. Enomoto*, 400 F.3d 744, 749-50 (9th

7  Cir. 2005) (determining credibility issues "would exceed the limited mandate of an extradition court in

8  making a determination of probable cause, as opposed to ultimate guilt").

9          To that end, it is a firmly-rooted principle of extradition law that magistrate judges must treat the

10  evidence submitted in the extradition request as true for purposes of determining probable cause.[2]  *See*,

11  *e.g.*, *Matter of Extradition of Martinelli Berrocal*, No. 17-22197-Civ-TORRES, 2017 WL 3776953, at

12  *35 (S.D. Fla. Aug. 31, 2017) ("courts must accept as true all of the statements and offers of proof by

13  the demanding state") (internal quotation omitted); *accord In re Solis*, 402 F. Supp. 1128, 1132 (C.D.

14  Cal. 2005) ("Because the evidence submitted by the requesting entity has been properly authenticated,

15  the Court must consider the facts therein."); *In re Extradition of Pineda Lara*, No. 97-CR.-

16  MISC.1(THK), 1998 WL 67656, at *8 (S.D.N.Y. 1998) ("In determining whether probable cause exists,

17  the Court assumes that the evidence contained in the Request for Extradition is true."); *In re Extradition

18  of Cheung*, 968 F. Supp. 791, 794 n.6 (D. Conn. 1997) ("[T]he court must accept as true all of the

19  statements and offers of proof by the demanding state, even if they contain hearsay.") (internal quotation

20  marks omitted); *Ahmad v. Wigen*, 726 F. Supp. 389, 399-400 (E.D.N.Y. 1989) ("The primary source of

21  evidence for the probable cause determination is the extradition request, and any evidence submitted in

22  it is deemed truthful for purposes of this determination.") (citing *Collins v. Loisel*, 259 U.S. 309, 315-16

23  (1922)).

24          In that same vein, the defense is quite limited in terms of credibility evidence that may be

25

26          ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
            [2] Indeed, it is well-established in extradition case law that the statement of a single witness is
27  more than sufficient to support a finding of probable cause – even if that statement is made by a co-
    conspirator with potential motive to curry favor with governmental authorities.  *See*, *e.g.*, *Eain v. Wilkes*,
28  641 F.2d 504, 510 n.5 (7th Cir. 1981) ("The uncorroborated testimony of an accomplice has been held
    sufficient to support even the higher reasonable doubt standard necessary for a criminal conviction.").

introduced at an extradition hearing.  Evidence (or argument) regarding the credibility of the requesting country's witnesses is generally inadmissible.  *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993) (rejecting evidence that major witness lied during the investigation because "issues of credibility are to be determined at trial"); *In re Extradition of Shaw*, No. 14-cv-81475, 2015 WL 3442022, at *8 (S.D. Fla. May 28, 2015) ("Defendant has consistently attempted to contradict the case brought against him in [the requesting country]. . . . This the Defendant cannot do."); *see also Jimenez v. Aristeguieta*, 311 F.2d 547, 556 (5th Cir. 1962) ("The accused is not entitled to introduce evidence which merely goes to his defense but he may offer limited evidence to explain elements in the case against him, since the extradition proceeding is not a trial of the guilt or innocence but of the character of a preliminary examination held before a committing magistrate to determine whether the accused shall be held for trial in another tribunal.").

If the fugitive attempts to put the extradition magistrate in the position of determining disputed facts, then what the fugitive seeks to do would violate a basic tenet of extradition law.  *Quinn*, 783 F.2d at 815; *Bovio*, 989 F.2d at 259; *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973) ("The judge's refusal to examine the credibility of the testimony and statements included in the translated material was clearly proper, since the declarants were not before him.").  This prohibition on weighing evidence serves the fundamental, overarching purpose of extradition:  that a person's guilt should be determined by the courts in the place where the crime was committed.  *Collins*, 259 U.S. at 316.[3]

The Ninth Circuit's decision in *Santos v. Thomas* did not alter these hornbook fundamentals of extradition law.  830 F.3d 987 (9th Cir. 2016) (en banc).  In *Santos*, the Ninth Circuit considered the limited question of whether the fact that a statement, relied on by the government in extradition proceedings, may have been obtained through coercion could be considered by extradition magistrates as "explanatory" evidence, and held it could.  *Id.* at 1008.  However, in so doing, the *Santos* court first

---

[3] Explanatory evidence proffered by the fugitive can be admissible.  *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir.1978) (The "[a]dmission of evidence proffered by the fugitive at an extradition proceeding is left to the sound discretion of the court, guided of course by the principle" that a fugitive's right to introduce evidence rebutting probable cause is limited to introducing evidence that is "explanatory," but not "contradictory.").  Explanatory evidence "explains away" or "completely obliterates" probable cause.  *Santos*, 830 F.3d at 992.  In those circumstances, the extradition judge need not choose between conflicting evidence, and the fugitive's proffered evidence may be admissible to explain or clarify the requesting country's evidence.

expressly reaffirmed that a fugitive "may not impeach the government witnesses or produce witnesses whose testimony contradicts evidence already offered by the government," *id*. at 993, and then instructed that its "decision should not be taken as a license to engage in mini-trials on the question of coercion or torture," since "extradition courts do[] not have to determine which party's evidence represents the truth where the facts are contested." *Id*. at 107.

Contrary to the fugitive's assertion that Iraq's extradition request is based on the statement of a single eyewitness, the request actually contains three eyewitness statements identifying Ameen as a known member of the ISIS terrorist organization and placing him at the scene of the murder. Moreover, one of those eyewitness recounted in detailed and descriptive fashion the manner in which he witnessed Ameen murder the victim. Notably, despite Ameen's sweeping suggestion that Iraq's judicial system relies "heavily" on "informants who never appear in court," CR 19 at 2, in this case, Iraq's witnesses made formal and non-anonymous statements (despite the fact that the witnesses clearly knew Ameen to be a terrorist affiliated with ISIS) to Iraqi investigators accusing Ameen of murder. Unlike in *Santos*, there is not even a hint that these statements were anything other than voluntarily made by the witnesses. Nothing in the FBI investigation to date, nor anything the defense has shared with the government within the last two months, points to coercion. Mere speculation on the part of the fugitive, toward the end of attempting to develop this type of explanatory evidence, should not be the basis for an investigatory period of undetermined length.

**B.    Alibi**

The defense also seeks to introduce evidence that Ameen was not in Iraq at the time of the murder, i.e., alibi evidence. CR 19 at 2.

Alibi evidence is an affirmative defense that is inadmissible in extradition proceedings. *Hooker*, 573 F.2d at 1368 ("[T]he extraditing court properly may exclude evidence of alibi, of facts contradicting the government's proof, or of a defense such as insanity. . . . Because of the limited function of an extradition proceeding and the limited participation permitted of the fugitive, the order of the court does not reflect a consideration of all the merits of the case."); *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997) ("Affirmative defenses not specified in the treaty may not be considered.").

The reason alibi evidence is inadmissible is because it is a form of contradictory, inadmissible

evidence: "Testimony that merely gives the opposite version of the facts does not destroy the probability of guilt." *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1361 (S.D. Fla. 1999) (citing *Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976)).

### C.       Remaining Claims

Iraq has presented more than sufficient "competent evidence to support the belief that the accused committed the charged offense." *Quinn*, 783 F.2d at 815.[4]  Ameen's request to investigate the case amounts to a blank check for delay in proceedings in an attempt to develop an alibi or to undermine the credibility of Iraq's witnesses, neither which would be admissible and both which would put this Court in the improper position of having to decide disputed facts.[5]  *See, e.g.*, *Barapind*, 400 F.3d at 749-50; *Hooker*, 573 F.2d at 1368.[6]

Ameen cites the length of the FBI investigation into Ameen as requiring some parity for the defense investigation.  There is no principle in even criminal law, let alone extradition law, that would require that the defense receive equal time to conduct its investigation.  Ameen's placement into extradition proceedings significantly narrowed the scope of the issues presented.  The defense does not have to prove that Ameen "peacefully lived in the United States," nor that he has "lived a quiet and peaceful life since arriving in the United States."[7]  CR 9 at 5, 7.  The defense is limited in its role as

---

[4]  "Competent" evidence is simply evidence that has been properly certified in accordance with 18 U.S.C. § 3190.  *Manta v. Chertoff*, 518 F.3d 1134, 1146 (9th Cir. 2008).  The documents associated with Iraq's extradition request in this matter were certified in compliance with that statute.  CR 1 at 8-9 (Declaration of Tom Heinemann) & 20 (Certification of Ambassador Douglas Silliman).  Those documents will be formally admitted by the government at the extradition hearing.

[5]  Given the strength and straightforward nature of the evidence in the extradition request—the statements of three eyewitnesses putting Ameen at the scene of the crime, plus a detailed description of the murder itself by one of those witnesses—it is difficult to conceive how Ameen could develop evidence that would "explains away or completely obliterates probable cause." *Santos*, 830 F.3d at 992.  At best, he could attempt to develop inadmissible evidence that contradicts that in the request, "evidence 'the credibility of which could not be assessed without a trial.'"  *Id.* (quoting *Barapind*, 400 F.3d at 749-50).

[6]  Following well-established case law does not render this Court's function as a "rubber stamp on the extradition request," as Ameen suggests.  CR 19 at 5.  As the government has previously explained, the Court must, of course, still find that all the elements of extradition exist before certifying Ameen's case for extradition to the Secretary of State.  CR 6 at 9-12.

[7]  The United States does not concede that "Mr. Ameen has lived a quiet and peaceful life since arriving in the United States."  CR 9 at 5.  But, the nature of Ameen's life in the United States is not relevant to the charges in the extradition request from Iraq.  Ameen's background was relevant to this Court's bail determination; because the bail issue has been resolved for now, what Ameen has done since 2014 is not relevant.

1   extradition counsel.  Of course the defense may undertake any investigation it chooses; what the United

2   States opposes is delay, when the nature of the investigation appears geared toward developing evidence

3   that is inadmissible in extradition proceedings.  Because alibi evidence, attacks on the credibility of

4   witnesses, and other evidence that contradicts the extradition request submitted by Iraq are inadmissible,

5   the United States submits that the Court should not delay the setting of an extradition hearing date based

6   on a proposed lengthy investigation into these subject areas.

7   **III.      RULE OF NON-INQUIRY**

8   Much of the focus of the fugitive's status report is a criticism of the Iraqi legal system, based on

9   media coverage.  CR 9 at 2.

10   Just as the Court must accept the contents of the extradition request as true, it is also "bound by

11   the existence of an extradition treaty to assume that the [fugitive's] trial will be fair."  *Glucksman v.*

12   *Henkel*, 221 U.S. 508, 512 (1911).  Accordingly, Ameen's wholesale claims regarding the Iraqi justice

13   system are not a valid defense to a finding of extraditability and may not be considered by the Court.

14   *See, e.g.*, *In re Extradition of Cruz*, No. 16 CR 283, 2016 WL 6248184, at *6 (N.D. Ill. Oct. 26, 2016)

15   (disregarding fugitive's argument that "he will not receive a fair trial in Mexico due to corruption that he

16   says exists in the Mexican judiciary"); *In re Extradition of Knotek*, No. LACV13-9204BROJCG, 2016

17   WL 4726537, at *5 (C.D. Cal. Sept. 8, 2016) (disregarding fugitive's argument that the foreign

18   prosecution was "tainted by corruption," and noting that "[p]ursuant to the rule of non-inquiry,

19   challenges to the legal processes and penal systems of a foreign country—such as a claim that a foreign

20   country's legal proceedings are corrupt—cannot be considered by extradition courts"); *Ntakirutimana v.*

21   *Reno*, 184 F.3d 419, 430 (5th Cir. 1999) (refusing to consider fugitive's claim that the foreign tribunal

22   was unable to protect his due process rights).

23   To the contrary, the rule of non-inquiry requires that any contention that the justice system of the

24   requesting state is somehow unfair must be addressed by the Secretary of State, and not the Court.  *See,*

25   *e.g.*, *Hilton v. Kerry*, 754 F.3d 79, 84-85 (1st Cir. 2014) (stating that the rule of non-inquiry "bars courts

26   from evaluating the fairness and humaneness of another country's criminal justice system, requiring

27   deference to the Executive Branch on such matters"); *Lopez-Smith v. Hood*, 121 F.3d 1322, 1327 (9th

28   Cir. 1997) ("[U]nder what is called the 'rule of non-inquiry' in extradition law, courts in this country

refrain from examining the penal systems of requesting nations, leaving to the Secretary of State determinations of whether the defendant is likely to be treated humanely"); *Koskotas v. Roche*, 931 F.2d 169, 174 (1st Cir. 1991) ("Extradition proceedings are grounded in principles of international comity, which would be ill-served by requiring foreign governments to submit their purposes and procedures to the scrutiny of United States courts."); *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 (2d Cir. 1976) ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.").

There is a time and a place for Ameen to raise any arguments related to his concerns about the judicial system of Iraq, but that time and that place is not at the extradition hearing this Court will conduct under 18 U.S.C. § 3184. Rather, that inquiry is the sole province of the Secretary of State, only after this Court has certified the case for extradition. *Eain*, 641 F.2d at 516-17 (discussing sole discretion of Secretary of State to establish "an American position on the honesty and integrity of a requesting foreign government"); *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) ("Undergirding [the rule of non-inquiry] is the notion that courts are ill-equipped . . . and ill-advised . . . to make inquiries into and pronouncements about the workings of foreign countries' justice systems."); *Ordinola v. Hackman*, 478 F.3d 588, 607 (4th Cir. 2007) ("[q]uestions about the procedural fairness of another sovereign's justice system or whether the individual to-be-surrendered faces inhumane treatment are within the purview of the executive branch.").

## IV.       THE COURT SHOULD SET A HEARING DATE IN ITS DISCRETION

It is within the discretion of this Court to set the extradition hearing at the date and time it deems appropriate. Citing several extradition cases in a footnote, Ameen implies that extradition courts regularly allow fugitives extensive delays to develop "explanatory and exculpatory" material. CR 19 at 6 n.3. A review of those cases shows at least three were provisional arrest requests, in which the foreign government sent a provisional arrest request triggering the commencement of extradition proceedings, followed by the transmittal of the formal extradition request, and that that lag at least in part contributed to the length of the overall proceedings. *In re Camelo-Grillo*, 2017 WL 2945715 (C.D. Ca. July 10, 2017); *In re Mathison*, 974 F.Supp. 2d 1296 (D. Or. 2013); *Trinidad y Garcia v. Benov*, 683 F.3d 952

(9th Cir. 2012).  The record on the other two cases cited by the defense is less clear, but the broader point is that many factors can influence the length of time between commencement of extradition proceedings and the scheduling of the extradition hearing, including the impacted nature of the schedule of the magistrate judge, the schedules of the assigned attorneys, whether the fugitive is detained or not, and the volume of litigation preceding the hearing.  The caselaw accordingly reflects a range of scheduling possibilities, and the United States submits that the four-month range (between August 2018 when this case commenced and December 2018 when the United States is requesting a hearing) is in that mine-run of timeframes.

In sum, Ameen bases his request for delay on the flawed premise that he has a right to develop alibi or contradictory evidence, or evidence of unfairness in the Iraqi judicial system.  No such right exists, and there is no reason why the matter should not timely proceed to the section 3184 extradition hearing.  Therefore, the government respectfully requests that at the October 15, 2018, status conference, this Court set the extradition hearing for a date in December 2018.[8]

Dated:  October 11, 2018                                    McGREGOR W. SCOTT
                                                                         United States Attorney


                                                            By:   /s/ AUDREY B. HEMESATH
                                                                         AUDREY B. HEMESATH
                                                                         HEIKO P. COPPOLA
                                                                         Assistant United States Attorneys


                                                                         /s/ Christopher Smith & John Riesenberg
                                                                         CHRISTOPHER J. SMITH
                                                                         Acting Associate Director
                                                                         JOHN RIESENBERG
                                                                         Trial Attorney
                                                                         Office of International Affairs

---

[8] Nothing about this Court's setting of a hearing date would prevent the defense from moving for a continuance should they discover meritorious, admissible, concrete information.  Moreover, if Ameen's counsel were to bring any such evidence to the United States's attention, the United States would, of course, carefully evaluate it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28