KARL OLSON (SBN 104760)
AARON R. FIELD (SBN 310648)
CANNATA O'TOOLE FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Telephone:   (415) 409-8900
Facsimile:    (415) 409-8904
Email:        kolson@cofolaw.com
              afield@cofolaw.com

Attorneys for Non-Party News Media Organization
THE SACRAMENTO BEE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ | Case No. 2:18-mj-152 EFB<br><br>**NOTICE OF MOTION AND MOTION OF NON-PARTY NEWS MEDIA ORGANIZATION THE SACRAMENTO BEE TO (1) UNSEAL JUDICIAL RECORDS, (2) REQUIRE PUBLIC DOCKETING OF EVENTS AND FILINGS, AND (3) VINDICATE THE PUBLIC RIGHT OF ACCESS TO THIS PROCEEDING**<br><br>Date:       March 20, 2019<br>Time:       1:30 p.m.<br>Judge:      Hon. Edmund F. Brennan<br>Location:   Ctrm. 8, 13th Floor |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m. on March 20, 2019, in the United States District Court for the Eastern District of California, in Courtroom 8 of the Robert T. Matsui Federal Courthouse, 501 I Street, Sacramento, CA 95814, before the Honorable Edmund F. Brennan, Non-Party News Media Organization The Sacramento Bee ("*The Sacramento Bee*") will, and hereby does, move pursuant to Local Rule 141(f), the First Amendment, the common law, and the inherent supervisory authority of the Court over its own records and files for an order:

1. Permitting *The Sacramento Bee* to intervene in this proceeding for the limited purpose of enforcing its and the public's First Amendment and common law rights of access;
2. Unsealing all judicial records in this proceeding in their entirety;
3. Requiring that all events and filings in this proceeding be publicly docketed; and
4. Requiring that this proceeding be open to the public, including *The Sacramento Bee* and its journalist, Sam Stanton.

This Motion is made on the grounds that the First Amendment and common law rights of access require that this proceeding be opened to the public. *The Sacramento Bee* has standing and a First Amendment right to intervene to enforce the First Amendment and common law rights of access. L.R. 141(f); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982). The First Amendment right of access applies to proceedings and judicial records in this action. *See Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 8 (1986); ECF No. 25 at 1:25-2:23 & n.1. The common law right of access applies to judicial records in this action. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978). And the First Amendment and common law rights of access both require disclosure here. The mere possibility that disclosure would reveal "information ***potentially*** harmful to national security,"

CANNATA O'TOOLE FICKES & OLSON LLP
ATTORNEYS AT LAW
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
TEL: 415.409.8900 – FAX: 415.409.8904

ECF No. 25 at 3:14-16 (emphasis added), does not allow this Court to conduct this proceeding, which the defense argues could bring about the end of the life of a United States resident, in secrecy.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in support; the anticipated reply in support; the stipulation and order filed herewith; the Court's records and files in this action; and any other evidence and argument received by the Court prior to or at the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The public has a right to know and an interest in knowing how its government responds to allegations of murder by the Republic of Iraq against refugees and others living in the United States. *The Sacramento Bee* seeks to vindicate that right and further that interest with this motion. Specifically, *The Sacramento Bee* seeks, pursuant to the First Amendment and the common law, an order (1) unsealing all sealed judicial records in this case, (2) requiring that all events and judicial records in this case be publicly docketed, and (3) opening this proceeding to the public.

*The Sacramento Bee*'s coverage is consistent with its established constitutional role: informing the people about how the government wields the vast power they have given it. "In our society, the power resides with the People; public supervision of governmental administration through informed voting is the cornerstone of democracy." *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App. 3d 961, 974-75 (1987). By covering criminal trials, and similar proceedings like this one, the news media facilitates that kind of supervision. *See Richmond Newspapers, Inc.*, 448 U.S. at 572; *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491-92 (1975) ("With respect to judicial proceedings in particular, the function of the press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice.") Access by the public and the

news media also ensures that a proceeding satisfies "the appearance of justice." *Id.* at 571-72. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc.*, 448 U.S. at 572.

*The Sacramento Bee*'s motion should be granted for three reasons. *First*, this motion is the correct vehicle for *The Sacramento Bee* to enforce the First Amendment and common law rights of access. *Second*, the First Amendment and common law rights of access require that all filings be unsealed, and that this proceeding be conducted in public. *Third*, publicly docketing events and filings in this case is necessary to effectuate the First Amendment and common law rights of access, and is therefore required under the First Amendment and the common law as well.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case is poised to shed light on matters of public interest: how the government responds to extradition requests from foreign nations; the state of the justice system in the Republic of Iraq, a government born of our adventure abroad in search of monsters to destroy; the possibility that Mr. Ameen was able to conceal his background during the refugee vetting process; the possibility that many Sacramento area residents spent years living alongside a former member of ISIS; and the rationale for the government not providing exculpatory evidence to Mr. Ameen.

*The Sacramento Bee* has covered this proceeding since it began, and has published three articles about it: S. Stanton, D. Smith, and J. Sclafani, *"Suspected ISIS member arrested in Sacramento County, allegedly committed 'most heinous crimes' "*, Sacramento Bee, *available at* https://www.sacbee.com/news/local/crime/article216764535.html (Aug. 16, 2018); S. Stanton and D. Smith, *"Iraqi ISIS suspect ordered to remain in Sacramento jail"*, Sacramento Bee, *available at* https://www.sacbee.com/latest-news/article217018995.html (Aug. 20, 2018); and S. Stanton, *"Can feds use secret court filings to send terror suspect back to Iraq?"*,

Sacramento Bee, *available at* https://www.sacbee.com/latest-news/article223258015.html (Dec. 18, 2018).

However, *The Sacramento Bee*'s coverage has encountered two barriers. First, the government filed multiple documents under seal, *see* ECF No. 25, the public was excluded from hearings on that sealing, *see* ECF No. 45; ECF No. 49; ECF No. 56; ECF No. 58, the transcript of one hearing appears to be sealed in part, ECF No. 45, and another hearing was held "in camera" and may not have been transcribed, ECF No. 58. The government later unsealed some of the documents, ECF No. 64; ECF No. 73, but one remains redacted, ECF No. 71-1. Second, the government's filings have not all appeared on the public docket. *See id.* The Court added at least two filings to the public docket after the fact, after they were originally filed, *id*., but it is not clear whether the parties have provided other documents to the Court, and if so, how many such documents exist.

To remove these barriers to its coverage, *The Sacramento Bee* has filed this motion. *The Sacramento Bee* requests that all sealed records in this case be unsealed, all events and filings in this case be publicly docketed, and all proceedings in this case, including transcripts of the February 4, 2019 and February 12, 2019 hearings, be made open to *The Sacramento Bee* and the public.

## III.  ARGUMENT

### A.  THE SACRAMENTO BEE SHOULD BE HEARD ON ACCESS.

*The Sacramento Bee* should be permitted to enforce its and the public's First Amendment and common law rights of access. *See* L.R. 141(f); *Globe Newspaper Co.*, 457 U.S. at 609 n.25; *Phoenix Newspapers, Inc. v. U.S. District Court*, 156 F.3d 940, 949 (9th Cir. 1998); *Oregonian Publ'g Co. v. U.S. District Court*, 920 F.2d 1462, 1465 (9th Cir. 1990). Under the First Amendment, generally, "representatives of the press and the general public must be given the opportunity to be heard on the question of their exclusion." *Globe Newspaper Co.*, 457 U.S. at 609 n.25; *see also Oregonian Publ'g Co.*, 920 F.2 at 1467 ("those excluded

CANNATA O'TOOLE FICKES & OLSON LLP
ATTORNEYS AT LAW
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
TEL: 415.409.8900 – FAX: 415.409.8904

from the proceeding must be afforded a reasonable opportunity to state their objections"). *The Sacramento Bee* should be given the opportunity to be heard on the question of its exclusion from this case.

This motion is the appropriate vehicle for vindicating the *The Sacramento Bee*'s and the public's First Amendment and common law rights of access here. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006); *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1101 (9th Cir. 1999). Even if a less onerous alternative, such as filing a motion under L.R. 141(f) without formal intervention, might afford *The Sacramento Bee* partial relief, *The Sacramento Bee* should be allowed to intervene here because it seeks not only to unseal judicial records, but also to safeguard its right of access in this case moving forward.

**B.   THE SACRAMENTO BEE SHOULD BE GIVEN ACCESS UNDER THE FIRST AMENDMENT AND THE COMMON LAW.**

The First Amendment right of access applies to records and proceedings that "experience and logic" dictate it should. *Press-Enterprise II*, 478 U.S. at 8. In making the "experience and logic" assessment, courts consider (1) "whether the place and process have historically been open to the press and general public" and (2) whether the right of access plays a "significant positive role in the functioning of the particular process in question." *Id*. When the First Amendment applies, records and proceedings should be made public unless a "compelling governmental interest" supports nondisclosure and nondisclosure is "narrowly tailored to serve that interest." *Globe Newspaper Co.*, 457 U.S. at 606; *see also Press-Enterprise II*, 478 U.S. at 10. The government must show that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Phoenix Newspapers, Inc.*, 156 F.3d at 949. The Court must then make "on the record findings . . . ***demonstrating*** that 'closure is . . . narrowly tailored to serve' " the compelling interests involved. *Press-Enterprise II*, 478 U.S. at 14 (emphasis

added).

The common law right of access applies to all judicial records. *Nixon*, 435 U.S. at 597-98. There is a "strong presumption" of public access to all judicial records under the common law. *Id.*; *see also Kamakana*, 447 F.3d at 1178 ("Unless a particular court record is one 'traditionally kept secret,' " under this test, "a 'strong presumption in favor of access' is the starting point."). The government can overcome this presumption only by providing "compelling reasons" to seal. *Id.* To do so, it must "articulate[ ] compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.' " *Id*. (internal citations omitted). The common law right of access "may be overcome only 'on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture.' " *Hagestad v. Tragessser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (internal citations omitted).

These rights apply to court filings and hearing transcripts with equal force. *See Press-Enterprise II*, 478 U.S. at 13 (holding that the First Amendment right of access applied to the transcript of a 41-day preliminary hearing). "It would be an odd result indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?" *United States v. Antar*, 38 F.3d 1348, 1360 (3d Cir. 1994).

The First Amendment and the common law require that all judicial records and proceedings in this case be open to the press and the public based on the scant record provided by the government. The government has rightly conceded that the First Amendment applies to all of the sealed records and proceedings in this action. ECF No. 25 at 1:25-2:23 & n.1 (accepting that closures the government has requested must satisfy the First Amendment standard). Regardless, the government has not satisfied the standard for closure under either the First Amendment or the common law because it has presented little more than legal conclusions

and express speculation – for example, at its request, this Court held that providing public access to three documents would reveal "information *potentially* harmful to national security," ECF No. 25 at 3:14-16 (emphasis added) – to justify holding this proceeding in secret. Furthermore, the government has not established, as is its burden, that no alternative to sealing would protect the purported "national security" interests it has cited in support of sealing.

The Court should carefully scrutinize the factual basis, if any, for the government's invocation of "national security" before granting its request that this proceeding be held in secret. *The Sacramento Bee*, like all citizens of the United States, understands that national security is important. ***But the First Amendment and the strong presumption of access under the common law do not permit closure based on buzzwords; the government must make a specific factual showing to conduct this proceeding in darkness***. *See, e.g.*, *Phoenix Newspapers, Inc.*, 156 F.3d at 949 (proponent of closure must make three-pronged showing to defeat First Amendment right of access); *Hagestad*, 49 F.3d at 1434 (common law right of access may not be overcome "on the basis of unsupported hypothesis or conjecture"). The government has failed to make a non-speculative factual showing that closure is appropriate here.

As concurring opinions in *New York Times Co. v. United States*, 403 U.S. 713 (1971), the "Pentagon Papers" case, explain, talismanic invocations of "national security" are particularly problematic grounds for defeating the freedom of the press enshrined in the First Amendment:

> The word 'security' is a broad, vague generality whose contours should not be invoked to abrogate the fundamental law embodied in the First Amendment. The guarding of military and diplomatic secrets at the expense of informed representative government provides no real security for our Republic. The Framers of the First Amendment, fully aware of both the need to defend a new nation and the abuses of the English and Colonial Governments, sought to give this new society strength and security by providing that freedom of speech, press, religion, and assembly should not be abridged. This thought was eloquently expressed in 1937 by Mr. Chief Justice Hughes – great man and great Chief Justice that he was – when the Court held a man could not be punished for attending a meeting run by Communists.

> 'The greater the importance of safeguarding the community from incitements to the overthrow of our institutions by force and violence, the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means. Therein lies the security of the Republic, the very foundation of constitutional government.'

*New York Times Co.*, 403 U.S. at 719-20 (Black, J., concurring) (quoting *DeJonge v. Oregon*, 299 U.S. 353, 365 (1937)); *see also id.* at 725-726 (Brennan, J., concurring) ("The entire thrust of the Government's claim throughout these cases has been that publication of the material sought to be enjoined 'could,' or 'might,' or 'may' prejudice the national interest in various ways. But the First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result."). Just as the First Amendment tolerates no "prior judicial restraints predicated upon surmise or conjecture," even where the "surmise or conjecture" talismanically invokes "national security," *id.*, the First Amendment and the common law preclude this Court from excluding the news media from this proceeding based on merely "potential" harm that disclosing information might cause to national security.

### C. THIS COURT SHOULD RECORD ALL EVENTS AND FILINGS IN THIS PROCEEDING ON THE PUBLIC DOCKET.

The First Amendment and the common law require that *The Sacramento Bee* be given access to the docket in this case. The First Amendment and common law rights of access both apply to docket sheets. *See Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93-95 (2d Cir. 2004) ; *United States v. Valenti*, 987 F.2d 708, 714-15 (11th Cir. 1993); *see also United States v. Mendoza*, 698 F.3d 1303, 1306-07 (10th Cir. 2012) (discussing history and consensus as to rights of access to docket sheets); Meliah Thomas, *The First Amendment Right of Access to Docket Sheets*, 94 Cal. L. Rev. 1537, 1540-45 (2006) (same). Furthermore, the existence of a "dual-docketing" system contradicts the First Amendment in the absence of findings that justify using it in a particular case, because it

"effectively preclude[s] the public and the press from seeking to exercise their constitutional right of access" to matters that do not appear on the public docket. *See Valenti*, 987 F.2d at 715 (holding that maintaining a sealed docket that "completely hid from public view the occurrence of closed pretrial bench conferences and the filing of *in camera* pretrial motions" violated the First Amendment by precluding the public from effectuating its First Amendment right of access).

The Fourth Circuit explained the importance of public access to dockets in *Doe* as follows:

> The ability of the public and press to inspect docket sheets is a critical component to providing meaningful access to civil proceedings. The docket sheet provides onlookers an overview of the court proceedings and allows them to ascertain the parties to the case, the materials that have been filed, and the trial judge's decisions. *See United States v. Ochoa–Vasquez,* 428 F.3d 1015, 1029 n.15 (11th Cir.2005). Access to docket sheets therefore enhances the appearance of fairness and enlightens the public both to the procedures the district court utilized to adjudicate the claims before it and to the materials it relied upon in reaching its determinations. In this respect, "docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." *Hartford Courant Co.,* 380 F.3d at 93.

749 F.3d at 268.

Here, because the government has not provided an adequate justification for sealing anything in this case under the First Amendment or the common law, it has not provided an adequate justification for sealing the docket in this case *a fortiori*. To the extent that the Court is maintaining two dockets in this case – one that is public, but provides less information, and one that is secret, but provides more information – the secret docket should be made public in its entirety, absent findings that comply with the First Amendment and which warrant preserving its secrecy. Finally, if the Court has received other materials from either party that do not appear on the public docket, it should add references to those materials to the public docket. The First Amendment precludes the maintenance of a secret docket and failing to docket events and filings entirely.

## IV. CONCLUSION

For the foregoing reasons, *The Sacramento Bee*'s motion should be granted. All sealed records in this case should be unsealed, all events and filings in this case should be publicly docketed, and all proceedings in this case, including transcripts of the February 4, 2019 and February 12, 2019 hearings, should be made open to *The Sacramento Bee* and the public.

Respectfully submitted,

DATED: February 27, 2019     CANNATA O'TOOLE FICKES & OLSON LLP

By:  /s/ Karl Olson
     KARL OLSON

Karl Olson
Aaron R. Field

Attorneys for Non-Party News Media Organization
THE SACRAMENTO BEE