McGREGOR W. SCOTT
United States Attorney
AUDREY B. HEMESATH
HEIKO P. COPPOLA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

CHRISTOPHER J. SMITH
Associate Director
JOHN RIESENBERG
Trial Attorney
Office of International Affairs
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20530
Telephone: (202) 514-0000

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF<br><br>THE EXTRADITION OF OMAR AMEEN | CASE NO. 2:18-MJ-00152-EFB<br><br>DATE: May 28, 2019<br>TIME: 10:00 a.m.<br>Hon. EDMUND F. BRENNAN |

MEMORANDUM IN SUPPORT OF EXTRADITION

# TABLE OF CONTENTS

Page

I.  BACKGROUND ....................................................................................................1

    A.   Nature of the Charges ..............................................................................1

    B.   Factual Allegations ...................................................................................1

II.  DISCUSSION .......................................................................................................2

    A.   Form of the Extradition Hearing ..............................................................3

        1.   The Documentary Evidence Submitted by Iraq is Sufficient and Admissible ..........................................................................................3

        2.   The Fugitive's Right to Introduce Evidence at the Hearing is Limited ..................4

    B.   The Requirements for Certification are Satisfied in This Case ..........................6

        1.   This Court Has Authority Over the Proceeding ....................................7

        2.   This Court Has Jurisdiction Over Ameen ............................................7

        **3.   The Relevant Treaty is in Full Force and Effect**.....................................**7**

        4.   The Charged Crime Is Covered by the Treaty .....................................8

        5.   The Evidence in the Extradition Request Establishes Probable Cause that Ameen Committed the Charged Offense ..........................................9

    C.   The Rule of Non-Inquiry Reserves All Considerations of the Requesting Country's Penal System to the Secretary of State ..........................................12

    D.   Ameen's Immigration Status is Irrelevant to These Extradition Proceedings ..................14

III.  CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

Page

## CASES

*Ahmad v. Wigen*,
  726 F. Supp. 389 (E.D.N.Y. 1989) ................................................................. 5

*Ahmad v. Wigen*,
  910 F.2d 1063 (2d Cir. 1990) ..................................................................... 13

*Arnbjornsodottir-Mendler v. United States*,
  721 F.2d 679 (9th Cir. 1983) ...................................................................... 13

*Austin v. Healey*,
  5 F.3d 598 (2d Cir. 1993), *cert. denied*, 510 U.S. 1165 (1994) .............................. 7

*Barapind v. Enomoto*,
  400 F.3d 744 (9th Cir. 2005) .................................................................. 6, 10

*Barapind v. Reno*,
  225 F.3d 1100 (9th Cir. 2000) .................................................................... 14

*Bingham v. Bradley*,
  241 U.S. 511 (1916) .................................................................................. 3

*Blaxland v. Commonwealth Director of Public Prosecutions*,
  323 F.3d 1198 (9th Cir. 2003) ................................................................... 12

*Bovio v. United States*,
  989 F.2d 255 (7th Cir. 1993) .................................................................. 5, 6

*Castaneda-Castillo v. Holder*,
  638 F.3d 354 (1st Cir. 2011) ..................................................................... 14

*Collins v. Loisel*,
  259 U.S. 309 (1922) ............................................................................ 5, 8, 9

*Cucuzzella v. Keliikoa*,
  638 F.2d 105 (9th Cir. 1981) ...................................................................... 8

*Desmond v. Eggers*,
  18 F.2d 503 (9th Cir. 1927) ........................................................................ 6

*Eain v. Wilkes*,
  641 F.2d 504 (7th Cir. 1981) .................................................................. 5, 6

*Escobedo v. United States*,
  623 F.2d 1098 (5th Cir. 1980) .............................................................. 10, 13

*Factor v. Laubenheimer*,
  290 U.S. 276 (1933) .................................................................................. 8

*Fernandez v. Phillips*,
  268 U.S. 311 (1925) ................................................................................ 10

*Fong Yue Ting v. United States*,
   149 U.S. 698 (1893) ................................................................................................. 14

*Gerstein v. Pugh*,
   420 U.S. 103 (1975) ................................................................................................... 9

*Glucksman v. Henkel*,
   221 U.S. 508 (1911) ................................................................................................. 12

*Grin v. Shine*,
   187 U.S. 181 (1902) ............................................................................................... 7, 9

*Hooker v. Klein*,
   573 F.2d 1360 (9th Cir. 1978) ................................................................................... 6

*Hoxha v. Levi*,
   465 F.3d 554 (3rd Cir. 2006) ................................................................................... 12

*In re Extradition of Cheung*,
   968 F. Supp. 791 (D. Conn. 1997) ............................................................................. 5

*In re Extradition of Handanovic*,
   829 F. Supp. 2d 979 (D. Or. 2011) .......................................................................... 11

*In re Extradition of Howard*,
   996 F.2d 1320 (1st Cir. 1993) .................................................................................... 7

*In re Extradition of Kirby*,
   106 F.3d 855 (9th Cir. 1996) ..................................................................................... 7

*In re Extradition of Morales-Hernandez*,
   2019 WL 1230350 (E.D. Cal. Mar. 15, 2019) ........................................................... 6

*In re Extradition of Pineda Lara*,
   1998 WL 67656 (S.D.N.Y. 1998) ............................................................................... 5

*In re the Extradition of Kyung Joon Kim*,
   2005 WL 6399831 (C.D. Cal. Oct. 20, 2005) ............................................................. 5

*In re Kaine*,
   55 U.S. (14 How.) 103 (1852) .................................................................................... 7

*In re Metzger*,
   46 U.S. (5 How.) 176 (1847) ...................................................................................... 7

*In re Wadge*,
   15 F. 864 (S.D.N.Y 1883) .......................................................................................... 6

*Lopez-Smith v. Hood*,
   121 F.3d 1322 (9th Cir. 1997) ............................................................................... 2, 12

*Mainero v. Gregg*,
   164 F. 3d 1199 (9th Cir. 1999) .................................................................................. 6

*Manta v. Chertoff*,
   518 F.3d 1134 (9th Cir. 2008) ................................................................ 4, 9, 10

*Martin v. Warden, Atlanta Pen.*,
   993 F.2d 824 (11th Cir. 1993) ................................................................ 3, 13, 14

*Martinez v. United States*,
   828 F.3d 451 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 243 (2016)................ 8, 9

*Matter of Extradition of Acevedo*,
   2017 WL 3491749 (C.D. Cal. Aug. 11, 2017) .......................................... 10

*Matter of Extradition of Aquasvivas*,
   2018 WL 6416814 (D. Mass. Dec. 6, 2018) ............................................ 12

*Matter of Extradition of Mainero*,
   990 F. Supp. 1208 (S.D. Cal. 1997)........................................................ 5, 6

*Matter of Extradition of Noeller*,
   2018 WL 1027513 (N.D. Ill. Feb. 23, 2018) ........................................... 6

*Matter of Extradition of Ricardo Alberto Martinelli Berrocal*,
   2017 WL 3776953 (S.D. Fla. Aug. 31, 2017)........................................... 5

*McElvy v. Civiletti*,
   523 F. Supp. 42 (S.D. Fla. 1981) ............................................................ 9

*Mironescu v. Costner*,
   345 F. Supp. 2d 538 (M.D.N.C. 2004) ................................................... 14

*Munaf v. Green*,
   553 U.S. 674 (2008) ................................................................................ 13

*Neely v. Henkel*,
   180 U.S. 109 (1901)................................................................................ 13

*Noeller v. Wojdylo*,
   2019 WL 1893643 (7th Cir. Apr. 29, 2019) ........................................... 5, 6, 14

*Oen Yin-Choy v. Robinson*,
   858 F.2d 1400 (9th Cir. 1988) ................................................................ 4

*Omar v. McHugh*,
   646 F.3d 13 (D.C. Cir. 2011) ................................................................. 13

*Ordinola v. Hackman*,
   478 F.3d 588 (4th Cir. 2007) ................................................................. 12

*Pettit v. Walshe*,
   194 U.S. 205 (1904)................................................................................ 7

*Prasoprat v. Benov*,
   421 F.3d 1009 (9th Cir. 2005) ................................................................ 2, 3, 12, 13, 15

*Quinn v. Robinson*,
   783 F.2d 776 (9th Cir. 1986) ............................................................. 5, 6, 12, 13

*Santos v. Thomas*,
   830 F.3d 987 (9th Cir. 2016) ......................................................... 3, 5, 6, 10, 12

*Sayne v. Shipley*,
   418 F.2d 679 (5th Cir. 1969) ........................................................................... 3

*Shapiro v. Ferrandina*,
   478 F.2d 894 (2d Cir. 1973)..................................................................... 2, 3, 6

*Simmons v. Braun*,
   627 F.2d 635 (2d Cir. 1980)............................................................................. 3

*Then v. Melendez*,
   92 F.3d 851 (9th Cir. 1996) ......................................................................... 4, 8

*Trinidad y Garcia v. Thomas*,
   683 F.3d 952 (9th Cir. 2012) ......................................................................... 12

*United States v. Kin-Hong*,
   110 F.3d 103 (1st Cir. 1997) .................................................................... 12, 13

*Vo v. Benov*,
   447 F.3d 1235 (9th Cir. 2006) ....................................................................... 15

*Zanazanian v. United States*,
   729 F.2d 624 (9th Cir. 1984) ....................................................................... 3, 7

*Zelenovic v. O'Malley*,
   2010 WL 3548007 (N.D. Ill. Sept. 7, 2010) ................................................. 11

## STATUTES

18 U.S.C. § 2(a) ...................................................................................... 11, 12

18 U.S.C. § 1111 ............................................................................................ 9

18 U.S.C. § 3184 ........................................................................ 1, 2, 3, 7, 8, 9

18 U.S.C. § 3186 ............................................................................................ 3

18 U.S.C. § 3190 ............................................................................................ 4

California Penal Code § 187 ........................................................................... 9

## RULES

E.D. Cal. Local Rule 302(b)(8)....................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

The United States, in fulfilling its Treaty obligations to the Republic of Iraq ("Iraq"), requests that at the conclusion of the extradition hearing on May 28, 2019, this Court certify Omar Ameen's extradition to Iraq on the charge of murder for the Secretary of State's decision.  The United States has already submitted to this Court a copy of the extradition request transmitted by the Republic of Iraq.  At the hearing, the United States will offer the original.  The United States will not present any additional testimony or documentation as part of its initial presentation of evidence establishing the elements for certification of extradition.

For the following reasons, Iraq's extradition request and supporting documentation fulfills the requirements established by the U.S.-Iraq extradition treaty, and this Court should certify Ameen's case for extradition.

## I.     BACKGROUND

The United States filed a complaint on August 14, 2018, for the extradition of Omar Ameen ("Ameen") at Iraq's request, pursuant to the Extradition Treaty Between the United States of America and Iraq, U.S.-Iraq, June 7, 1934, 49 Stat. 3380 (the "Treaty").  CR 1.  In support of its request for Ameen's extradition, Iraq has submitted the appropriate documents to the U.S. Department of State.  This Court must hold a hearing to consider the evidence of criminality presented by Iraq and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.  If the Court finds that the evidence submitted by Iraq fulfills the relevant Treaty requirements, the Court "shall certify the same" to the Secretary of State, who will decide whether to surrender Ameen "according to the stipulations of the treaty."  *Id.*

### A.     Nature of the Charges

Iraq seeks Ameen's extradition to stand trial on the charge of premeditated murder, in violation of Article 406 of Iraq's penal code.  CR 137-1 at 4, 15-19.  Judge Deaa Jaafar, President of Baghdad Al-Karkh Inquiry Court, issued a warrant for Ameen's arrest on May 16, 2018.  *Id*. at 20.  The Government of Iraq subsequently submitted a request to the United States for his extradition.

### B.     Factual Allegations

As of June 2014, Ihsan Abdulhafiz Jasim ("Ihsan") was a resident of Rawah, Iraq, and

maintained a home in that district.  *Id*. at 99.  Ihsan was an Iraqi police officer who had previously

engaged in anti-terrorism efforts in support of Iraqi security forces.  *Id*. at 43, 70.

On June 22, 2014, a convoy of pickup trucks carrying men armed with automatic weapons drove

toward Ihsan's house.  *Id*. at 23.  Ameen was in the convoy, along with other men known to be

associated with the terrorist organization, the Islamic State of Iraq and ash-Sham ("ISIS").  *Id*. at 23, 38-

44.  At approximately 7 p.m., the members of the convoy opened fire on Ihsan's house.  *Id.* at 43.

Ameen then shot Ihsan after accusing Ihsan of being an agent of the Americans and an apostate.  *Id.*

Ihsan was brought to a Rawah hospital, where a death certificate was issued on June 23, 2014.

*Id*. at 102.  Ihsan's death certificate listed his cause of death as by "[g]unshot in the chest area."  *Id*. at

102.  Social media sympathetic to ISIS celebrated Ihsan's death, stating "Now in Rawah, the criminal

Ihsan Al-Hafiz has been eliminated at the hands of the Mujahidin."  *Id*. at 101.

On July 6, 2018, Iraq formally requested that the United States extradite Ameen to stand trial for

the murder of Ihsan.  *Id*. at 4.  In the documents submitted in support of the formal extradition request,

Iraq submitted three sworn statements made to the Iraqi investigating judge by persons present at the

June 22, 2014, attack.  *Id*. at 38-44.  These three sworn statements described the witnesses' personal

observations at the time of the attack, including one witness who saw Ameen standing over Ihsan,

holding a gun and firing at him while he was on the ground.  *Id.*

## II.    DISCUSSION

The evidence submitted by Iraq satisfies the requirements of the Treaty, is "sufficient to sustain

the charge," and otherwise supports a finding that Ameen's case is extraditable on the murder offense.

18 U.S.C. § 3184.  "[I]f the evidence is sufficient to sustain the charge, the inquiring magistrate judge is

required to certify the individual as extraditable to the Secretary of State[.]"  *Prasoprat v. Benov*, 421

F.3d 1009, 1012 (9th Cir. 2005) ("The magistrate judge 'has no discretionary decision to make.'")

(quoting *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997)).

The Court must make this certification determination through the extradition hearing

contemplated by 18 U.S.C. § 3184.  If any evidence is offered by Ameen at the hearing, the Court

should rule on its admissibility.  Once the evidentiary record is complete, the Court should make written

findings of fact and conclusions of law as to each of the elements for certification.  *Shapiro v.*

*Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973).  If the Court finds that the requirements for certification have been met, then it must provide the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and commit Ameen to the custody of the United States Marshal to await the Secretary's final determination regarding surrender.  18 U.S.C. § 3184; *see Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 828-29 (11th Cir. 1993).  The Secretary of State will then decide whether to surrender him to Iraq.  18 U.S.C. § 3186; *Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (en banc); *Prasoprat*, 421 F.3d at 1012.

### A.    Form of the Extradition Hearing

An extradition hearing is not a criminal proceeding, and "unique rules of wide latitude govern reception of evidence" that "give[] to the demanding country advantages most uncommon to ordinary civil and criminal litigation."  *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969) (citation and internal quotation marks omitted).

At the extradition hearing, the United States will submit only the written documentation provided by Iraq, in its original form, as part of its initial presentation of evidence establishing probable cause and the other elements for certification.  The United States reserves the right to provide any documentary or testimonial evidence in response to evidence offered by the defense that may be admitted by this Court at the extradition hearing.

### 1.    The Documentary Evidence Submitted by Iraq is Sufficient and Admissible

Extradition treaties do not contemplate the introduction of live witness testimony at extradition proceedings because to do so "would defeat the whole object of the treaty."  *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).  Thus, hearsay written statements submitted in extradition requests are admissible at extradition hearings and may properly support a finding of probable cause.  *See id.* (rejecting fugitive's claim that *ex parte* witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses); *see also, e.g.*, *Zanazanian v. United States*, 729 F.2d 624, 626-27 (9th Cir. 1984) (unsworn written statements may properly form the basis for extradition); *Simmons v. Braun*, 627 F.2d 635, 636 (2d Cir. 1980) (same).  Accordingly, a finding of extraditability may be, and typically is, based entirely on the authenticated

documentary evidence and information provided by the requesting government.  *See, e.g.*, *Manta v. Chertoff*, 518 F.3d 1134, 1139-40, 1145-47 (9th Cir. 2008) (upholding probable cause determination based on investigation report written by prosecutor).

The admissibility of documents introduced during an extradition hearing is governed by the Treaty and by 18 U.S.C. § 3190.  Article XI of the Treaty lists the documents that Iraq is required to submit when it makes a request for the extradition of a fugitive charged with a crime.  Specifically, "[a] duly authenticated copy of the warrant of arrest in the country where the crime has been committed, and copies of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in this case."  CR 137-1 at 10; *Manta*, 518 F.3d at 1146 (examining identical language in the U.S.-Greek extradition treaty and holding "the usual rules of evidence do not apply in extradition hearings and, unless the relevant treaty provides otherwise, the only requirement for evidence is that it has been authenticated") (citing *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1406 (9th Cir. 1988) and *Then v. Melendez*, 92 F.3d 851, 855 (9th Cir. 1996)).

Section 3190 provides that "properly and legally authenticated" documentary evidence including "depositions, warrants, or other papers or copies thereof . . . shall be received and admitted."  18 U.S.C. § 3190; *see also Manta*, 518 F.3d at 1146; *Oen Yin-Choy*, 858 F.2d at 1406.  Proof that the authentication is proper exists if the documents are accompanied by the certificate of an appropriate U.S. diplomatic or consular officer in the requesting country attesting that the documents would be admissible for similar purposes in that country.  18 U.S.C. § 3190.  The documents filed in this case are accompanied by such a certification executed by Douglas A. Silliman, United States Ambassador to Iraq, attesting that the documents are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Iraq.  CR 137-1 at 14.  Accordingly, the documents are thereby admissible in this proceeding.  18 U.S.C. § 3190; *see also* Declaration of Tom Heinemann, CR 137-1 at 3 ("The documents submitted by the Government of the Republic of Iraq in support of its extradition request were certified . . . in accordance with Title 18, United States Code, Section 3190.").

### 2.    **The Fugitive's Right to Introduce Evidence at the Hearing is Limited**

Ameen's opportunity to challenge the evidence introduced against him is heavily circumscribed.

"An accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof." *Eain v. Wilkes*, 641 F.2d 504, 511 (7ᵗʰ Cir. 1981); *Quinn v. Robinson*, 783 F.2d 776, 815 (9ᵗʰ Cir. 1986). This principle guiding the admission of evidence at extradition proceedings ensures that "[f]oreign states requesting extradition are not required to litigate their criminal cases in American courts," *Santos*, 830 F.3d at 991, and dictates that "the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing." *Eain*, 641 F.2d at 508.

In accordance with this bedrock principle underpinning extradition, case law further establishes:

- That extradition courts treat the evidence submitted in support of the requesting country's extradition request as true for purposes of determining probable cause;[1]

- That extradition courts reject fugitives' efforts to present evidence (or argument) designed to undermine the credibility of the requesting country's witnesses;[2]

---

[1] *See, e.g.*, *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, No. 17-22197-Civ-TORRES, 2017 WL 3776953, at *35 (S.D. Fla. Aug. 31, 2017) ("courts must accept as true all of the statements and offers of proof by the demanding state") (internal quotations and citations omitted); *In re Extradition of Pineda Lara*, No. 97-CR.-MISC.1(THK), 1998 WL 67656, at *8 (S.D.N.Y. 1998) ("In determining whether probable cause exists, the Court assumes that the evidence contained in the Request for Extradition is true."); *In re Extradition of Cheung*, 968 F. Supp. 791, 794 n.6 (D. Conn. 1997) ("[T]he court must accept as true all of the statements and offers of proof by the demanding state, even if they contain hearsay.") (internal quotations and citations omitted); *Ahmad v. Wigen*, 726 F. Supp. 389, 399-400 (E.D.N.Y. 1989) ("The primary source of evidence for the probable cause determination is the extradition request, and any evidence submitted in it is deemed truthful for purposes of this determination.") (citing *Collins v. Loisel*, 259 U.S. 309, 315-16 (1922)); *In re the Extradition of Kyung Joon Kim*, No. CV 04-3886-ABC (PLA), 2005 WL 6399831, at *11 (C.D. Cal. Oct. 20, 2005) ("For purposes of extradition proceedings, the extradition magistrate properly accepts as true the offers of proof from the demanding state.").

[2] *See, e.g.*, *Santos*, 830 F.3d at 993 ("an individual contesting extradition may not . . . call into question the credibility of the government's offer of proof"); *Noeller v. Wojdylo*, No. 18-2723, 2019 WL 1893643, at *7 (7ᵗʰ Cir. Apr. 29, 2019) ("Evidence that contradicts the demanding country's proof or poses questions of credibility – i.e., contradictory evidence – is off limits."); *Bovio v. United States*, 989 F.2d 255, 259 (7ᵗʰ Cir. 1993) ("issues of credibility are to be determined at trial"); *Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1218 (S.D. Cal. 1997) ("Evidence that conflicts with that submitted on behalf of the demanding party is not permitted, nor is impeachment of the credibility of the demanding country's witnesses.").

- That extradition courts reject fugitives' efforts to present evidence of alibi or other affirmative defenses appropriately reserved for trial on the merits in the requesting country;[3]

- That extradition courts restrict the admission of evidence fugitives seek to admit to that which "explains away" or "completely obliterates" probable cause;[4] and

- That evidence offered by fugitives can only be admissible if it does not place the extradition court in the improper position of determining disputed facts. [5]

In essence, an extradition court considers the evidence a fugitive offers with the understanding that "[i]t is not for [an extradition court] to assess the probability that the requesting party will be able to secure a conviction" or "to weigh conflicting evidence in determining if probable cause exists." *In re Extradition of Morales-Hernandez*, Case No. 1:13-mc-00017-SAB, 2019 WL 1230350, at *7-8 (E.D. Cal. Mar. 15, 2019) (Boone, MJ) (citing *Barapind v. Enomoto*, 400 F.3d 744, 750 (9th Cir. 2005) and *Matter of Extradition of Mainero*, 990 F. Supp. at 1216). "[A]s has been said time and again, an extradition hearing must not allow to become a trial on the merits." *Matter of Extradition of Noeller*, No. 17-CR-664, 2018 WL 1027513, at *8 (N.D. Ill. Feb. 23, 2018), *aff'd*, *Noeller*, 2019 WL 1893643.

Therefore, as the government has made clear throughout this case,[6] it will oppose Ameen's attempt to offer any evidence, originating from outside those materials submitted by Iraq in support of extradition, intended to (1) contradict the evidence contained within the extradition request; (2) attack the credibility of any of Iraq's witnesses, including on grounds of bias, motive to fabricate, or inconsistent statements; or (3) attempt to establish the defense of alibi or any other affirmative defense.

## B.   The Requirements for Certification are Satisfied in This Case

The Court must certify a fugitive as extraditable where: (1) the judicial officer is authorized to

---

[3] *See, e.g.*, *Santos*, 830 F.3d at 993; *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978) (alibi evidence properly excluded); *Desmond v. Eggers*, 18 F.2d 503, 505-06 (9th Cir. 1927) (same); *Eain*, 641 F.2d at 512 (same); *Shapiro*, 478 F.2d at 901 (same); *In re Wadge*, 15 F. 864, 866 (S.D.N.Y 1883) (same).

[4] *See, e.g.*, *Santos*, 830 F.3d at 992-93; *Mainero v. Gregg*, 164 F. 3d 1199, 1207 n. 7 (9th Cir. 1999), superseded by statute on other grounds.

[5] *See*, *e.g.*, *Quinn*, 783 F.2d at 815; *Bovio*, 989 F.2d at 259; *Shapiro*, 478 F.2d at 905.

[6] *See*, *e.g.*, CR 21 at 4-7; CR 32 at 2-3; CR 94 at 3-4; CR 102 at 5-6; CR 120 at 10-11.

conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable

treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the

applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each

charge for which extradition is sought.  *See*, *e.g.*, *Zanazanian*, 729 F.2d at 625-26.  With the submission

of the original extradition request at the extradition hearing, each of these elements will have been met

in this case.

### 1.     **This Court Has Authority Over the Proceeding**

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the

United States, or any magistrate judge authorized so to do by a court of the United States, or any judge

of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  As such, the judicial officer

conducting the extradition hearing prescribed by Section 3184 does not exercise "any part of the judicial

power of the United States," *In re Extradition of Kirby*, 106 F.3d 855, 866 (9th Cir. 1996) (Noonan, J.,

dissenting from the assumption of jurisdiction) (quoting *In re Kaine*, 55 U.S. (14 How.) 103, 120

(1852)), but is rather acting in a "non-institutional capacity by virtue of a special authority."  *In re

Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (quoting *In re Metzger*, 46 U.S. (5 How.)

176, 191 (1847)).  It is well settled that both magistrate judges and district judges may render a

certification under Section 3184.  *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993), *cert. denied*,

510 U.S. 1165 (1994).  This Court is therefore authorized to conduct the hearing in this case.  *See id.*;

*see* Local Rule 302(b)(8).

### 2.     **This Court Has Jurisdiction Over Ameen**

It is also well settled that the Court has jurisdiction over a fugitive found within its jurisdictional

boundaries.  18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person

found within his jurisdiction . . . issue [its] warrant for the apprehension of the person so charged.");

*Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin v. Shine*, 187 U.S. 181, 185-86 (1902).  Ameen was

arrested in Sacramento, California, in the Eastern District of California.  CR 13.  Accordingly, this Court

has jurisdiction over him.

### 3.     **The Relevant Treaty is in Full Force and Effect**

Section 3184 provides for extradition in instances in which a treaty or convention is in force

between the requesting state and the United States.  18 U.S.C. § 3184.  In this case, Tom Heinemann,

Assistant Legal Adviser for Law Enforcement and Intelligence in the Office of the Legal Adviser for the

Department of State, has provided a declaration attesting that the Treaty in full force and effect between

Iraq and the United States.  CR 137-1 at 2-3.  The Court must defer to the Department of State's

determination in these regards.  *See, e.g.*, *Then*, 92 F.3d at 854 (deferring to the "intentions of the State

Departments of the two countries" in determining whether the U.S.-Singapore extradition treaty

remained in effect following Singapore's independence from the United Kingdom).

### 4.    **The Charged Crime Is Covered by the Treaty**

Article I of the Treaty provides for the return of fugitives "charged with, or convicted of, any of

the crimes specified in Article II of the Treaty."  CR 137-1 at 6.  Offenses are "extraditable" under the

Treaty (1) if they are encompassed by the list set forth in Article II of the Treaty and (2) if they are

"punishable by the laws of both countries," as also required by Article II.  CR 137-1 at 7.  The dual

criminality requirement is met where the description of criminal conduct provided by Iraq in support of

its charge would be criminal under U.S. federal law, the law of the state in which the hearing is held, or

the law of a preponderance of the states, if it had been committed here – regardless of whether the Iraqi

and U.S. crimes are identical.  *See, e.g.*, *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981) (dual

criminality analysis permits courts to "look to the proscription by similar criminal provisions of federal

law or, if none, the law of the place where the fugitive is found, or, if none, the law of the perponderance

of the states").

Indeed, "[t]he law does not require that the name by which the crime is described in the two

countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects,

the same in the two countries.  It is enough if the particular act charged is criminal in both jurisdictions."

*Collins v. Loisel*, 259 U.S. 309, 312 (1922).  Moreover, even if there were some ambiguity as to whether

the Iraqi offense was covered under the Treaty – which there is not – the Court should find that the

offense is extraditable because in interpreting the Treaty, "a narrow and restricted construction is to be

avoided . . . [and] if a treaty fairly admits of two constructions, one restricting the rights which may be

claimed under it, and the other enlarging it, the more liberal construction is to be preferred."  *Factor v.*

*Laubenheimer*, 290 U.S. 276, 293-94 (1933); *see also, e.g.*, *Martinez v. United States*, 828 F.3d 451, 463

(6th Cir. 2016) (en banc) ("default rule" is that any ambiguity in extradition treaty must be construed in favor of "facilitat[ing] extradition"), *cert. denied*, 137 S. Ct. 243 (2016).  Accordingly, because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers[,]" *Grin*, 187 U.S. at 184, the Court should "approach challenges to extradition with a view towards finding the offenses within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

Here, Ameen's murder charge is an extraditable offense because:  (1) the offense is specifically enumerated in Article II.1 of the Treaty, which provides that fugitives "shall be delivered up" who are charged with "[m]urder, including parricide, assassination, willful murder with premeditation, manslaughter when committed voluntarily by the perpetrator, and also the crimes of poisoning or infanticide"; and (2) murder is punishable by the laws of both countries.  CR 137-1 at 7.

Article 406(1)(a) of the Iraqi Legal Code provides:  "Any person who willfully kills another is punishable by death in the following circumstances . . . [i]f such killing is premeditated."  CR 137-1 at 25.  If Ameen had committed his offense in the United States, his conduct would be criminal under U.S. law, including, for example, as a violation of 18 U.S.C. § 1111[7] and California Penal Code § 187.[8]

### 5.   The Evidence in the Extradition Request Establishes Probable Cause that Ameen Committed the Charged Offense

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause.  18 U.S.C. § 3184.  The Court must assess whether there is probable cause to believe that the crime charged by Iraq was committed and that the person before the Court committed it.  *Manta*, 518 F.3d at 1143-47.  The evidence is sufficient, and probable cause is established, if it would cause a "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotation marks and citation omitted); *see also Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.");

---

[7] "Murder is the unlawful killing of a human being with malice aforethought.  Every murder perpetrated by . . . premeditated killing . . . is murder in the first degree."

[8] "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought."

*Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("Competent evidence to establish reasonable grounds

is not necessarily competent evidence to convict.").

Ameen has long conceded that he is the person identified in the Iraqi arrest warrant.  CR 19.  The

remaining inquiry, then, is whether the facts alleged in support of the extradition request establish

probable cause of Ameen's willful and premeditated killing of Ihsan.

The allegations in the extradition request are straightforward:  Three eyewitnesses, present at the

time the terrorists started shooting at Ihsan's home, gave sworn statements identifying Ameen as a

known member of the ISIS terrorist organization and part of the convoy of fighters who attacked Ihsan

with deadly force on the evening of June 22, 2014.[9]  CR 137-1 at 38-44.  One of these three

eyewitnesses personally observed Ameen shoot Ihsan at close range.  *Id.* at 43.  That witness

unequivocally identified Ameen as the person the witness saw stand over and shoot Ihsan as Ihsan was

lying on the ground.  *Id.* at 43, 61.  Iraqi authorities showed this witness several photographs, including

that of Ameen, after which the eyewitness identified Omar Ameen by his photograph as "one of the

militants who killed the victim."  CR 137-1 at 61-67.  *Cf. Manta*, 518 F.3d at 1144-45 ("An

identification based on a single photograph may be competent evidence of identity in an extradition

proceeding."); *Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir. 1980) (single photograph

identified by witness sufficient to support probable cause finding).  That photograph is included in the

extradition request, *see* CR 137-1 at 62-63, and the Court can observe Ameen and conclude that he is the

same person depicted in the photograph.  *See Manta*, 518 F.3d at 1143 ("The magistrate judge observed

that the person in court appeared to be the same person that [the witness] had identified in the passport

photo [in the extradition request].").  Accordingly, there is probable cause that the person before the

Court is the person alleged to have committed murder in Iraq.

---

[9]  To the extent that Ameen attempts to admit evidence of "recantation" by any of Iraq's
witnesses, such evidence would be inadmissible in the absence of other information explicitly
contending that those witnesses' prior statements providing testimony against Ameen were made under
coercion or torture.  *Santos*, 830 F.3d 1002-07; *Barapind*, 400 F.3d at 752; *Matter of Extradition of
Acevedo*, No. ED-CV-16-1766-R (KS), 2017 WL 3491749, at *9 (C.D. Cal. Aug. 11, 2017) (explaining
that in *Santos*, the "Ninth Circuit distinguished the recantation statements from those alleging coercion
[by] reason[ing] that the co-conspirators' recantations of their previous admissions were contradictory,
because such statements challenge the *credibility* of the original statements, presenting a different
version of the facts or offering reasons why the government's evidence should not be believed")
(emphasis in original).

The facts contained in the witness statements further establish probable cause that Ameen willfully murdered Ihsan with premeditation.  *See* CR 137-1 at 25 (Article 406(1)(a) of the Iraqi Penal Code).  First, the fact that Ameen and a well-armed convoy of ISIS fighters executed a targeted attack on Ihsan's home is strongly indicative of their deliberate and premeditated intent to kill Ihsan in retaliation for his anti-ISIS work for the Iraqi government as a police officer.  CR 137-1 at 23; *see*, *e.g.*, *In re Extradition of Handanovic*, 829 F. Supp. 2d 979, 997 (D. Or. 2011) (probable cause that fugitive committed premeditated murder shown where attack on Croatian village was "well-coordinated and intended to kill persons living there," where "witnesses have provided a motive for [the killings]," thereby providing evidence of premeditation," and where "[the fugitive] personally shot three civilians . . . for apparently no reason and afterward shot in the head any victims who still showed signs of life").  Indeed, the social media post about Ihsan's murder made clear that Ihsan was one of the "rotten heads" whom terrorists had targeted to be "eliminated at the hands of the Mujahidin."  CR 137-1 at 101.

Second, the fact that Ameen verbally articulated his motive to murder Ihsan immediately before shooting him at close range with a firearm – because Ihsan was an "agent for the Americans" and "an apostate" – further demonstrates Ameen's considered and premeditated plan to murder Ihsan.  CR 137-1 at 43; *see*, *e.g.*, *Handanovic*, 829 F. Supp. 2d at 997 (fugitive's co-conspirators made statements prior to attacking Croatian village about "leav[ing] not even a sigle 'hen' alive" and that "not a single ear must stay there," thereby demonstrating premeditation and malice aforethought); *Zelenovic v. O'Malley*, No. 10-C-3768, 2010 WL 3548007, at *6 (N.D. Ill. Sept. 7, 2010) (fugitive's statement "I will kill you and then the two of them" made prior to murder evidence of premeditation).

Third, the fact that Ihsan's death certificate lists his cause of death as "gunshot in the chest area" makes it highly likely that Ameen executed Ihsan with the premeditated intent to kill.[10]  CR 137-1 at

---

[10] Even if Ameen's shot was not *the* shot that caused Ihsan's death, Iraqi law would treat him no differently.  First, Iraqi law considers all persons who commit offenses jointly to be principals for purposes of punishment.  *See* CR 137-1 at 34 (Article 47:  "The following are considered to be principals to an offence:  [] Any person who commits an offence by himself or with others.").

Second, even if Ameen were considered an "accessory" under Iraqi law, "any person who participates in the commission of an offence as a principal or accessory is punishable by the penalty prescribed for that offence unless otherwise stipulated by law."  *See id.* (Article 50).  The Treaty would still countenance his extradition.  Treaty, art. II.25 ("Extradition shall also take place for participation in any of the aforesaid offences as an accessory before or after the fact, provided such participation be punishable by imprisonment by the laws of both High Contracting Parties[.]").  *Id.* at 8; *see also* 18

102; *see*, *e.g.*, *Matter of Extradition of Aguasvivas*, No. 17-mj-4218-DHH, 2018 WL 6416814, at \*10

(D. Mass. Dec. 6, 2018) (extradition court examining the fugitive's state of mind found that "[t]hree

bullets fired at short range to the area of the heart are sufficient to establish probable cause that [the

fugitive] shot [the victim] with an intent to kill him").

### C. The Rule of Non-Inquiry Reserves All Considerations of the Requesting Country's Penal System to the Secretary of State

Any challenge to Iraq's penal system is exclusively reserved for the consideration of the

Secretary of State.[11]   "[A]n extradition magistrate lacks discretion to inquire into the conditions that

might await a fugitive upon return to the requesting country" and "the extradition magistrate simply

does not have the authority to consider foreign policy concerns and other issues that may affect the

executive branch's decision whether to extradite." *Prasoprat*, 421 F.3d at 1016-17.  After the Court has

completed its review, which "is limited to a narrow set of issues concerning the existence of a treaty, the

offense charged, and the quantum of evidence offered," the "larger assessment of extradition and its

consequences is committed to the Secretary of State." *Santos*, 830 F.3d at 991 (quoting *United States v.

Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997)).

This precedent reflects the long-standing tenet of extradition law known as the "rule of non-

inquiry." *See*, *e.g.*, *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012); *Blaxland v.

Commonwealth Director of Public Prosecutions*, 323 F.3d 1198, 1207-08 (9th Cir. 2003); *Lopez-Smith*,

121 F.3d at 1327; *Quinn*, 783 F.2d at 789-90.  "The rule of non-inquiry . . . 'serves interests of

international comity by relegating to political actors the sensitive foreign policy judgments that are often

involved in the question of whether to refuse an extradition request.'" *Ordinola v. Hackman*, 478 F.3d

588, 607 (4th Cir. 2007) (quoting *Hoxha v. Levi*, 465 F.3d 554, 563 (3rd Cir. 2006)).  Accordingly, the

Ninth Circuit, and all other federal circuits, have "long adhered to the rule of non-inquiry—that it is the

U.S.C. § 2(a) ("Whoever commits and offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

[11]   At various times in this extradition process, defense has made reference to its opinion of Iraq's legal system. *See*, *e.g.*, CR 123 at 6 (making assertions regarding "Iraq's negative treatment of human rights and lack of due progress [sic]").  The consideration of such allegations is squarely the province of the Secretary of State, not the extradition court. *See Glucksman v. Henkel*, 221 U.S. 508, 512 (1911) ("We are bound by the existence of an extradition treaty to assume that the trial [in the foreign country] will be fair.").

role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state." *Prasoprat*, 421 F.3d at 1016.

In 2008, the Supreme Court forcefully reaffirmed the rule of non-inquiry in *Munaf v. Geren*, a case involving the government of the same country that now seeks Ameen's extradition:  the Republic of Iraq.  553 U.S. 674 (2008).  *Munaf* concerned the transfer of prisoners, who were "American citizens who voluntarily traveled to Iraq and [were] alleged to have committed crimes there," from the custody of the Multinational Force-Iraq, operating under U.S. command, to the Iraqi government for trial in Iraqi courts.  *Id*. at 679-80.  Relying on U.S. extradition law to reject the prisoners' claims that they should not be transferred to Iraqi custody because such transfer was "likely to result in torture," the Court explained that "[s]uch allegations are of course a matter of serious concern, but in the present context that concern is to be addressed by the political branches, not the Judiciary."  *Id*. at 700-01.  The Court reviewed the Executive Branch's assessment of Iraq's legal and penal system and held:

> The Judiciary is not suited to second-guess such determinations— determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in the area . . . In contrast, the political branches are well situated to consider sensitive foreign policy issues, such as whether there is serious prospect of torture at the hands of an ally, and what to do about it if there is . . . Indeed, the other branches possess significant diplomatic tools and leverage the judiciary lacks.

*Id*. at 702-03 (internal citations and quotation marks omitted). In so holding, *Munaf* endorsed the long line of cases faithfully applying the rule of non-inquiry for well more than a century in this Circuit and throughout the federal courts of appeals.  *See, e.g.*, *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Omar v. McHugh*, 646 F.3d 13, 19 (D.C. Cir. 2011); *Kin-Hong*, 110 F.3d at 110-11; *Martin*, 993 F.2d at 829-30; *Ahmad v. Wigen*, 910 F.2d 1063, 1067 (2d Cir. 1990); *Quinn*, 783 F.2d at 789-90; *Arnbjornsodottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983) (superseded by statute on other grounds); *Escobedo*, 623 F.2d at 1107.

The rule of non-inquiry requires that Ameen "should direct [any] argument that extradition is unjust in this case . . . or on humanitarian grounds to the Executive Branch.  The Secretary of State will,

ultimately, determine whether [he] should be surrendered pursuant to the Extradition Treaty." *Martin*, 993 F.2d at 830.

**D.      Ameen's Immigration Status is Irrelevant to These Extradition Proceedings**

Ameen's application to adjust status to that of lawful permanent resident has been denied, and Ameen, who previously obtained refugee status by misrepresenting his past and his associations, is in removal proceedings.  CR 6 at 22-26.  These removal proceedings are currently being continued pending the outcome of these extradition proceedings.

It is appropriate that extradition and removal proceed independently.  *See*, *e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 708-09 (1893) (recognizing that extradition and deportation "must not be confounded" because "although each has the effect of removing a person from the country, [they] are different things, and have different purposes") (internal quotations and citation omitted); *Barapind v. Reno*, 225 F.3d 1100, 1104–05 (9th Cir. 2000) ("Extradition from the United States is governed by 18 U.S.C. § 3184[] and provides a separate and independent procedure from exclusion or removal proceedings initiated under the INA for the removal of an alien from the United States."); *Castaneda-Castillo v. Holder*, 638 F.3d 354, 361 (1st Cir. 2011) ("[A]lthough asylum and extradition proceedings are related insofar as they both bear on whether [a person] will ultimately be forced to return to [his or her home country], they are rooted in distinct sources of law, governed by procedures specified in distinct statutory regimes, and responsive to different sets of policy concerns."); *Mironescu v. Costner*, 345 F. Supp. 2d 538, 546 (M.D.N.C. 2004) ("Individuals who have been granted asylum are still eligible for extradition for non-political crimes, just as even United States citizens may be extradited for crimes committed in other countries with whom we have extradition treaties."); *Noeller*, 2019 WL 1893643, at *9 ("extradition proceedings are separate and independent proceedings governed by different legal standards and procedures") (citing *Barapind*, 225 F.3d at 1104).

Consequently, any claim by Ameen that his immigration status should interfere with this extradition matter is meritless.

**III.      CONCLUSION**

Iraq has provided the United States with an extradition request that satisfies its obligation pursuant to the Treaty.  It has done so by submitting evidence establishing that the crime alleged against

1    Ameen "is extraditable under the relevant treaty and [that] probable cause exists to sustain the charge."

2    *Vo v. Benov*, 447 F.3d 1235, 1245 (9th Cir. 2006).  Having made that showing, "the judicial officer *must*

3    certify the individual as extraditable to the Secretary of State" so that Ameen, if the Secretary of State so

4    decides, may stand trial in Iraq.  *Id*. (quoting *Prasoprat*, 421 F.3d at 1014) (emphasis in original).

5        Therefore, the United States requests that, at the conclusion of the extradition hearing, the Court

6    certify to the Secretary of State that Ameen's case is extraditable to Iraq on the charge of murder.

7

8    Dated:  May 14, 2019

                                 McGREGOR W. SCOTT
                                 United States Attorney

10                  By:   /s/ *AUDREY B. HEMESATH*

11                        AUDREY B. HEMESATH
                     HEIKO P. COPPOLA

12                        Assistant United States Attorney

14

15                        CHRISTOPHER J. SMITH
                     Acting Associate Director

16                        JOHN RIESENBERG
                     Trial Attorney

17                        Office of International Affairs