HEATHER E. WILLIAMS, #122664
Federal Defender
BENJAMIN D. GALLOWAY, #214897
Chief Assistant Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
OFFICE OF THE FEDERAL DEFENDER
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax: 916-498-5710

Attorneys for
OMAR AMEEN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ, | Case No. 2:18-mj-152 EFB<br><br>DECLARATION OF LAYTH ADNAN MADAB<br><br>Judge: Hon. Edmund F. Brennan |

I, Layth Adnan Madab, hereby declare as follows:

1. I am an attorney in Baghdad, Iraq. I handle cases in the criminal courts. Mr. Ameen's family has hired me to represent him here.

2. I have been given power of attorney in Iraq to represent Mr. Omar Abdulsattar Ameen who resides in the United States of America. The Los Angeles Consulate of the Republic of Iraq notarized the power of attorney attached to this Declaration as Exhibit 65. I was required to have it notarized by the Iraqi Foreign Ministry in Baghdad as well.

3. On April 6, 2019, I travelled from Baghdad to the city of Rawah, which lies in the west of Al-Anbar province, to the family home of the victim, Ihsan Abd El-Hafiz Jasim Ali El-Rawi, and I met with his family.

4. I talked to the victim's ▮▮▮ on that date. He is Mr. ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮.

5. The victim's ▮▮▮▮ and I took a photograph together to document our meeting. (Exh.

Declaration

1

EXHIBIT 64

66.) ▓▓▓▓▓▓▓▓▓▓ lso allowed me to take photographs of the personal IDs of the members of the victim's family. This includes ▓▓▓▓▓▓▓▓▓▓ identification and that of ▓▓▓▓ Exh. 67), along with that of ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ ictim (Exh. 68), and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the witness against Mr. Ameen, ▓▓▓▓▓▓▓▓▓▓▓▓ Exh. 69).

6. The victim's ▓▓▓ signed the attached handwritten statement dated April 6, 2019, ruling out that Omar Abdulsattar Ameen committed or took part in the murder of his son, and stating that he did not request to file a complaint against Omar, and that he requests the charge against Omar be dropped. (Exh. 35.)

7. The victim's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was not home that day because she was at the hospital with a sick grandchild.

8. The victim's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ lives with her brother in the Kurdistan region, Erbil province.

9. I talked to both the victim's ▓▓▓▓▓▓▓▓▓▓ n the phone in the presence of ▓▓▓▓▓▓▓▓▓▓▓▓ and the tribal leader, Mr. Yasir Ahmed Abdulrazzaq, that day. Both the victim's ▓▓▓▓▓▓▓▓▓▓ old me that they did not request a complaint against Mr. Omar Abdulsattar Ameen and they do not have any suspicion that he is the one who killed the victim or participated in his killing. The family members were very motivated to attempt to withdraw complaints that they believed were made against Omar Ameen in their names, without their assent. The parents both told me that they believed that ▓▓▓▓▓▓▓▓▓▓▓▓ as behind this, and that ▓ must have tricked them into signing a declaration that contained Omar's name without their knowledge, perhaps due to ▓ personal jealousy against Omar, since Omar was in the USA, or for other reasons. They believed that their ▓▓▓▓▓▓▓▓ was behind the court case against Omar because they saw ▓ at Al-Karkh Inquiry Court in connection with the case.

10. On May 13, 2019, I received an image of the attached note handwritten and signed by the victim's ▓▓▓▓▓ Like the ▓▓▓▓ rior statement, it states that she did not request to file a complaint against Omar, and that she requests the charge against Omar be dropped.

(Exh. 34.)

11. On May 19, 2019, I met the victim's ▮▮▮▮ at Al-Anbar Central Inquiry Court Specialized in Terrorism Cases, where they went through the process to file official sworn testimonies relinquishing any complaint against Omar Ameen. There they appeared in front of the Investigative Judge, Fat-hallah Dawood Mihaidi. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ both explained that Omar Ameen was not involved in the murder of their son, and that they never accused him of being involved nor do they now. ▮▮▮▮▮▮▮▮▮▮▮▮ presented a signed document to the Court, which is attached as Exhibit 70. That document bears a stamp on it indicating that the judge accepted it. The document was signed by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ my presence.

12. Both ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were present and sworn as witnesses by the judge. They were questioned by the Investigative Judge, a Judicial Investigator, and a Prosecutor, for over two hours. The judge prepared multiple drafts of their statements. I was able to obtain the first drafts by the Court, which had the witnesses sign and fingerprint them. At Exhibit 71, is the first draft for Mr. ▮▮▮▮▮▮▮▮. The Court allowed me to take a picture with my cell phone. Exhibit 71 bears a handwritten notation by the Investigative Judge that the name of the victim's ▮▮▮▮ should be inserted. At Exhibit 72, is the first draft for ▮▮▮▮▮▮▮▮▮▮. Each of these was signed and fingerprinted by them in my presence and the presence of the Court, the Judicial Investigator, and the Prosecutor. The questioning continued afterwards and at least two other drafts were prepared by the Court prior to the final draft that got notarized. I was not able to obtain or take pictures of these intermediate drafts.

13. I sat in on the testimony of the witnesses, but had a very minimal role in that proceeding, interjecting sometimes only to request the Judge, the Judicial Investigator, and the Prosecutor not be too tough on the aging ▮▮▮▮. The Investigative Judge, the Judicial Investigator, and the Prosecutor grilled the victim' ▮▮▮▮ very harshly at times, challenging many aspects of their testimony, including their motivation for filing these

statements. It is common for Investigative Judges here to use intimidating and harsh interrogation methods to get to the truth and ensure the accuracy of statements made. The witnesses explained the loss they suffered when their ▉ was murdered, and explained that they did not believe that Omar Ameen had any responsibility, and that they never knowingly filed any sort of complaint against him, nor wished to now.

14. The final draft for ▉▉▉▉▉▉▉ that got notarized by the Court is at Exhibit 73. The final draft for ▉▉▉▉▉▉▉ got notarized by the Court is at Exhibit 74. Both drafts were written by the Court on official government letterhead and notarized by the receiving Judge. Each is fingerprinted. In Iraq, judges can decide if they want documents signed, fingerprinted, or both. These fingerprinted statements were officially submitted by the witnesses to the Court at the end of the proceeding. There was then a 24-hour waiting period before they could be released with the Court's notarization.

15. Each parent provided an identification document to the Court. The number of that identification document is on each final statement, as proof that the witness properly identified himself and herself to the judge.

16. After we were done with the Court, I typed up an additional statement for each witness based on my memory of what they had said in Court, and had them sign/fingerprint those documents to memorialize their statements to the Court. I am attaching them here. (Exh. 75 ▉▉▉▉▉▉, Exh. 76 ▉▉▉▉▉▉▉▉▉)

17. The next day I returned to the Court, and obtained physical copies of the Court's notarized documents attached as Exhibits 73 and 74.

18. Under Iraqi law, only first-degree relatives can pursue a complaint. In Iraq, the complainant has the right to withdraw a prior statement and request that the charges and case be dismissed. This is what the witnesses wanted to do. They went to the Court at Al-Anbar because that is the Court that has proper jurisdiction over an offense in Rawah. The Al-Karkh Court is not the proper court for a matter regarding the victim's death in Rawah, and the case against Omar Ameen being initiated in Al-Karkh court in April 2018 was very unusual.

19. I have gone to the Al-Karkh Court in Baghdad and requested a copy of Mr. Ameen's charges and other documents regarding this matter. No one there was willing to cooperate with me, and no one would confirm or deny there was a case against Omar Ameen there. I was also told by some clerks there that the inquiry documents may be held by the intelligence services. I have been unable to obtain any of the documents in the case against Mr. Ameen from Al-Karkh court or any other place in Iraq.

20. The U.S. defense team has never been able to provide me any of the Iraqi documents in this matter. They have notified me that they are prohibited by the Court from providing me these documents. Accordingly, I have been unable to see the witness statements from the Iraqi court case. I have also been unable to read or show the victim's parents their alleged statements, to see if they recognize them, and to ask them if they in fact signed those statements. I have not been allowed to have the signatures from those statements, to ask the witnesses whether those are their actual signatures.

21. I understand from the U.S. defense team that differing signatures were provided in the statements to the Iraqi Court from April 2018. Accordingly, I asked ▇ to provide to me samples of ▇ signatures and fingerprints, which I was able to obtain from ▇, attached here also. (Exh. 77.) These were done in my presence.

22. At every stage of my interaction with them, the victim's parents have been very courteous, welcoming, and of the utmost integrity. They wanted the opportunity to clear up the allegations that they understand have been made in their name. They have never expressed any fear of Mr. Ameen, his family, or anyone else involved in defending or helping Mr. Ameen. Rather, they are worried about retribution from the Iraqi security services for their most recent statements. That being the case, they believe strongly that Mr. Ameen should not be charged in their son's murder because he had nothing to do with it and want to take steps to fix the situation. They are older people who have suffered much from ISIS, losing th▇ ▇ who were kidnapped in 2016 and have never been seen since. They want to see justice in this case, and want to see the real perpetrators of these crimes be investigated and punished.

23. Both Mr. [redacted] and Mrs [redacted] were questioned very firmly by the Al-Anbar Court, the Judicial Investigator there, and the Prosecutor there. Mrs. [redacted], in particular, became emotional when talking about [redacted]'s death. Each was adamant that they had no reason to think that Omar Ameen had anything to do with this crime, and that they did not want any complaint to be pursued against him for it because of that. The U.S. defense team asked me if this type of proceeding is recorded in any way. It is not.

24. [redacted] told me that she was previously approached by an investigator in Rawah who wanted her to file a complaint regarding her son's death against someone named Naseer Hamid Mohammed and another man from the Dannoon family. She and [redacted] were told that Naseer was arrested and admitted to taking part in their son's murder with that other man from the Dannoon family, but then after being detained in prison for about a year, was released about three weeks ago by the Iraqi authorities. I am going to try to find the documents related to this arrest and release, as they may be publicly available. [redacted] did not want to pursue a complaint against Naseer, as she had no reason to think he was involved in the crime.

//

//

25. At the request of the defense team, I contacted a clerk at the Hit Court and requested that he search those court records for the arrest warrant and any case from that court against Omar Ameen from December 2017. The clerk searched the records and notified me that the court had no documentation of any such case against Mr. Ameen, or any arrest warrant against him.

My native language is Arabic. I have signed this declaration after having it translated into my native language by the interpreter who has signed below.

I declare under penalty of perjury that the foregoing is true and correct. I swear by God Almighty that this statement is the truth and nothing but the truth.

I know that this sworn declaration could be used in court and that any false declaration on my part exposes me to criminal sanction.

Executed this 23rd day of May, 2019, at Baghdad, Iraq.

X /s/ Layth Madab

I declare under penalty of perjury: I am an Arabic language interpreter. I have read this declaration to the witness in his native language of Arabic and have confirmed with him the electronic signature on this document. The witness has provided me a photograph of his identification prior to signing this declaration.

Dated: 5/22/2019 at Sacramento, California, USA.

_Ahmed Gawish_