UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATAR AMEEN TO THE REPUBLIC OF IRAQ

No. 2:18-mj-152-EFB

ORDER

Pending before the court is the government's opposition to modification of the protective order and request for limited reconsideration. ECF No. 185. Therein the government opposes counsel for Ameen's request to modify the protective order (detailed *infra*) and seeks reconsideration of the court's order directing that the names of FBI Special Agents 1 and 2 be provided to counsel for Ameen. In the alternative, the government requests that the court defer ruling on both issues until the supplemental extradition submission from the Republic of Iraq has cleared diplomatic channels. For the reasons stated hereafter, the court orders that: (1) the protective order be modified; and (2) the government's request for reconsideration be denied.

## Background

I. Protective Order

The proposed modifications to the protective order (ECF No. 12) are limited in scope to the statements of Witnesses A and B and are expressed as follows:

> Regarding statements by Witnesses A and B that have been provided to the Defense by the Government, the Court permits the Defense to provide copies of those statements directly to Iraqi Attorney Layth Madab, so that Mr. Madab may provide copies of the statements directly to Witnesses A and B for their review. Mr. Madab may not provide the statements to any other person.

1

ECF No. 183 at 1. Mr. Layth Adnan Madab ("Madab") is an attorney in Baghdad, Iraq and has been hired by Ameen's family to represent him there. ECF No. 161-1 at 7, ¶ 1. He met with Witnesses A and B earlier this year, but was unable, due to the current protective order, to obtain the relevant statements attributed to these witnesses from the defense.[1] *Id.* at 5, ¶ 20.

The government opposes modification of the protective order for several reasons. First, it argues that Madab's recent contact with Witnesses A and B ran afoul of Iraqi criminal procedure,[2] which requires all witness contact to occur in court and in the presence of the investigating judge. ECF No. 185 at 2. The government avers that "the purpose of [this] rule is to prevent the obtainment of statements pursuant to intimidation or coercion." *Id.* It goes on to note that Madab is not a neutral party and does not have an interest in representing or safeguarding the interests of Witnesses A and B. *Id.*

Next, the government states that Madab is associated with the tribal leader Yasir Ahmed Abdulrazzaq ("Abdulrazzaq"). *Id.* The government previously raised concerns about Abdulrazzaq vis-a-vis Witnesses A and B because the former is allegedly a relative of Ameen and was, at some unspecified time, detained by U.S. forces for "known or suspected connections to terrorism." ECF No. 173 at 7. Abdulrazzaq has provided a declaration in support of Ameen in this case, wherein he identifies himself as "the tribal leader and Mayor of the Military District in Rawah." ECF No. 159-11 at 3, ¶ 2. He states that his father was a cousin of Ameen's father. *Id.* at 3, ¶ 1. Abdulrazzaq also states, however, that he was threatened and jailed by the Islamic State
/////

---

[1] Madab also states that he requested documentation relating to this case from the Al-Karkh Court in Baghdad, but found that no one there was willing to cooperate with him or to confirm or deny the existence of an active case against Ameen. ECF No. 161-1 at 5, ¶ 19.

[2] The government does not cite any Iraqi law and states that its summation of Iraqi criminal procedure is "to the best knowledge of the United States." ECF No. 1 at 2. However, the defense has provided a more in-depth analysis, with citation to Iraq's Criminal Procedure Code and Iraqi Bar Association Code of Conduct, indicating that Madab's actions did not violate Iraqi law or procedure. *See* ECF No. 186 at 1-5. In any event, as discussed *infra*, this court's authority extends only to the conduct of defense counsel in this extradition proceeding. This court does not purport to assert any authority over the conduct of Iraqi attorneys practicing in Iraq or over the Iraqi proceedings.

when they controlled Rawah. *Id.* at 4, ¶ 6. At the last hearing in this case, the defense called the government's concerns about Abdulrazzaq "baseless." ECF No. 184 at 5.

Finally, the government states that this court is without any mechanism for enforcing the terms of the protective order if it were violated by individuals in Iraq. ECF No. 185 at 3. It states that Witness A and B will be permitted to view their statements by the investigating judge and through official channels. *Id.*

## Analysis

The court, as it indicated at the last hearing, intends to facilitate presentation of the relevant prior written statements to Witnesses A and B for their review. ECF No. 184 at 4. As addressed in the prior hearing, the defense has challenged the authenticity of those written statements and asked that the witnesses be provided copies for their review. The government has indicated (as noted *supra*) that the investigating judge will make these statements available to Witnesses A and B by way of official channels. ECF No. 185 at 3. Unfortunately, there is no indication as to when that presentation will occur. Nor is it clear whether any statements made to the investigating judge by Witnesses A and B would, in turn, be made available to the defense (in their original form or at all).[3] Thus, the court will not reject modification of the protective order on that basis.

The pertinent question is whether the government has offered a sufficient basis for rejecting the proposed modification based on concerns about either compliance with Iraqi criminal procedure or witness safety. The concerns about Iraqi procedure are inapposite because it goes without saying that this court has no authority to interpret[4] or enforce Iraqi procedure. The court is tasked only with deciding whether counsel for Ameen may turn over copies of the witness statements to Ameen's Iraqi counsel, Madab. As noted before, the issue before this court

---

[3] Those statements could, the court presumes, be included in the supplemental extradition packet from Republic of Iraq. Nothing in the record indicates, however, that they would *necessarily* be. The Republic of Iraq has complete control of the form and content of that supplement.

[4] And, even if the court were inclined to determine whether Madab had violated that procedure, it could not do so from the vague assertions in the government's opposition.

3

is whether those documents can be properly authenticated as evidence in support of probable cause for the alleged extraditable offense. Thus, there are important reasons for permitting counsel for Ameen to provide the witnesses with copies of statements they are alleged to have signed. Obviously, Ameen's counsel in this proceeding are in California and the witnesses are in Iraq. Modifying the protective order to permit counsel here to deliver copies to Ameen's Iraqi counsel is a reasonable means of providing them to the witnesses. If, after those statements are made available to Madab, there is some question of whether he is, under Iraqi law, permitted to present those statements to the witnesses that question will lie within the purview of the Iraqi judiciary.

The concerns regarding witness safety and coercion are less straightforward. The court itself previously expressed some concern over Abdulrazzaq's meeting with Witnesses A and B at the last hearing. ECF No. 184 at 4-5. But counsel for Ameen clarified that Abdulrazzaq did not have to be involved in any future presentation of witness statements and that Madab would be the solitary conduit for presenting the statements to the witnesses. *Id.* at 3. Unsatisfied, the government now argues that Madab is "[f]rom the perspective of Witnesses A and B, . . . already associated with the "tribal leader" Abulrazzaq, who brought [Madab] to their house to ask questions on behalf of Ameen." ECF No. 185 at 2. Clearly, Madab has been retained to represent the interest of Ameen. But the government has not provided any evidence that Madab's representation of Ameen's interest has been concealed or that Witnesses A and B view Madab as being associated, in any pernicious way, with Abdulrazzaq. Nor is there any evidence that Madab has himself engaged in coercive activity with respect to either witness. While it is true, as the government notes, that Madab is representing Ameen and, thus, not a neutral party, that fact alone does not automatically render his contact with Witnesses A and B coercive or threatening such that this court should reject modification of the protective order. Absent some affirmative evidence that Madab has dealt (or will likely deal) inappropriately with Witnesses A and B, the court is inclined to grant the modification.

Accordingly, the protective order in this case will be modified to allow Madab to be provided with the relevant statements for the purpose of providing them to Witnesses A and B for

their review.  The modification forbids using the statements for any other purpose or providing them to any other person(s).

II. <u>Names of FBI Special Agents</u>

On May 22, 2019, the court directed the government to provide counsel for Ameen with the names of three FBI Special Agents (referenced numerically as 1, 2, & 3) who were involved in interviewing the witness known as "Person 5" and in investigating a possibly forged official document.  ECF No. 160 at 9, 25.  In a previous filing, the government stated that it has already provided the defense with the name of FBI Special Agent 3.  ECF No. 178 at 2.  Thus, only the names of FBI Special Agents 1 and 2 remain at issue.

In its motion for reconsideration, the government argues that new evidence supports reconsideration of the court's order to provide these names.  First, it avers that neither agent: (1) was present when Witness A or B signed any document; (2) ever met Witness A or B; or (3) had any involvement in the Republic of Iraq's extradition request.  ECF No. 185 at 3.  Second, the government states that the supplemental extradition submission that is forthcoming from the Republic of Iraq will constitute new evidence that will render the testimony of the Special Agents less relevant.  *Id.* at 3-4.  The government contends that the supplemental submission "is expected to establish that Judge Dhiya received the testimony of all three witnesses, presided over the photo identifications, and saw the witnesses sign their statements."  *Id.* at 4.

<u>Analysis</u>

The court, after considering the government's argument for reconsideration, declines to reverse its previous decision that the names be provided.  It may be, as the government argues, that the agents will have little or nothing of substance to say regarding the possibility of forged signatures.  It may also be that the supplemental extradition materials from the Republic of Iraq will render any testimony by the agents less probative.  These contentions remain hypothetical at this juncture: the agents have not yet testified, nor have the supplemental extradition materials been submitted.  More importantly, the government has yet to articulate any specific burden – related to either logistics or national security – which militates in favor of withholding the names of the agents from Ameen's counsel.  If the agents have nothing valuable to add to these

proceedings, then their testimony is likely to be short and neither counsel for Ameen, the court, nor any future court sitting in review will be left to speculate whether important evidence was excluded. On the other hand, in light of the questions that have arisen over authentication of witnesses' statements, whatever information the agents have will be helpful to the court.

III. <u>Request to Defer</u>

Finally, the government asks that, in the alternative, the court defer ruling on these issues until after the Republic of Iraq's supplemental filing is submitted. At the time of filing, however, the court has not been provided with a definitive date when that submission will occur. The court is inclined to lay these issues – especially the provision of the agents' names – to rest. Thus, it declines to defer its ruling.

<u>Conclusion</u>

It is ORDERED that:

1. The protective order be modified to include the following language:
Regarding statements by Witnesses A and B that have been provided to the Defense by the Government, the Court permits the Defense to provide copies of those statements directly to Iraqi Attorney Layth Madab, so that Mr. Madab may provide copies of the statements directly to Witnesses A and B for their review. The Defense shall, prior to providing the statements, obtain Mr. Madab's agreement that the statements shall not be provided to any other person(s) or used for any other purpose.

2. Counsel for Ameen shall convey to Madab a copy of this order, translated into Arabic, to ensure that he understands its contents;

3. The government's motion for limited reconsideration (ECF No. 185) is DENIED and;

4. Within seven days from the date of service of this order, the government shall provide Ameen's counsel with the names of FBI Special Agents 1 and 2.

DATED: July 3, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

6