HEATHER E. WILLIAMS, State Bar #122664
Federal Defender
BENJAMIN D. GALLOWAY, #214897
Chief Assistant Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
OFFICE OF THE FEDERAL DEFENDER
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax 916-498-5710
rachelle.barbour@fd.org

Attorneys for Defendant
OMAR ABDULSATTAR AMEEN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ, _____/ | Case No.  2:18-mj-152 EFB<br><br>RESPONSE TO UNITED STATES' REQUEST TO ADD FILING DEADLINE<br><br>Judge:  Hon. Edmund F. Brennan |

I.   INTRODUCTION

The United States has filed a Request with the Court to add an October 22, 2019 deadline for submission of exhibit lists, witness lists, and proposed exhibits for the continued extradition hearing on December 4, 2019.  The Government's filing appears to be a vehicle for the recitation of false accusations against the defense team made by the only probable cause witness in this case, Person 5.

At the October 7, 2019, status conference, where the Government first raised these accusations at sidebar, the Court indicated it would provide the defense an opportunity to review Person 5's statements prior to responding.  These statements have not yet been provided.[1]  The

---

[1] The Government indicated on October 7, 2019 that it would provide the statements to the defense. The defense has followed up by email to the U.S. Attorney's Office today and just received a response that the Government was preparing to provide redacted versions of the translations.

defense requests these statements, as they further erode Person 5's veracity, the critical issue in the upcoming extradition hearing. In re Sandhu, 1997 U.S. Dist. LEXIS 7314, at *30 (S.D.N.Y. May 23, 1997), cited in Doc. 160, p. 19 ("Courts have held that '[t]he statement of a single witness may be sufficient to establish probable cause, *provided that there is some corroboration and no basis for doubting the witness's veracity*." [emphasis by the Court].)

The Government asks the Court for a deadline for witness and exhibit lists. The defense proposes an exhibit and witness list deadline on November 18, 2019, the same date as its supplemental brief. The Government should likewise file its lists on the due date for its brief, October 29, 2019. This is consistent with the filing deadlines imposed by the Court for the initial extradition hearing in May. (Doc. 108 (trial briefs and exhibit/witness lists due May 14, 2019).)

II.     DEFENSE RESPONSE TO FALSE ACCUSATIONS OF MISCONDUCT

Notwithstanding the Court's desire that the defense see Person 5's accusations before responding, the defense simply cannot leave the record as it is. The only truth in Person 5's allegations is that a defense investigator did speak with him[2] at length in a telephonic conversation from the United States using the Arabic translator's phone number. Accordingly, the defense is in the position to categorically deny every allegation of misconduct raised by Person 5 to the U.S. Government.

The defense has strictly complied with the Protective Order. Undersigned attorneys have walled their investigators off from protected information, and asked them to investigate the case based on the extremely limited information they have been given, which did not include any

---

[2]     The Government's filing repeatedly discloses the gender of Person 5. (Doc. 198, pp. 2-3.) Accordingly, the defense will follow suit.

names protected under the Protective Order.³  Early on, in early November 2018, the Government provided sanitized versions of the three witness statements from the Extradition Packet to the defense, precisely so that defense counsel could provide those non-identifying versions to investigators.⁴

This means that defense investigators have been on a parallel track, investigating the case virtually from scratch, with the natural result that they got in touch with the victim's family, who openly shared who Person 5 was and various troubling facts about that person.  In scrupulous compliance with the Protective Order, defense counsel did not even ask or suggest that investigators contact the victim's family, for fear of being accused of sharing protected information.  Of course, any decent investigator would have realized that since the murder occurred at the victim's home, the investigator should attempt to interview family members and any potential eye witnesses about what happened.  Wiggins v. Smith, 539 U.S. 510, 521 (2003) (reasonable investigation is necessary to give counsel sufficient information with which to make informed decisions).  Those family members spoke repeatedly and openly with the defense investigators, providing statements about what occurred, explaining what they saw or did not see, and providing bases for independent investigation of Person 5, who the family witnesses said was a "troublemaker" who they believed was behind these false allegations.  To avoid claims of disclosing protected information, defense attorneys did not get involved in those interviews.

In Document 142, filed on May 14, 2019, the defense told the Government and the Court that its investigators had independently found Person 5 and even viewed his Facebook page.

---

³ It should be noted that other than Witnesses A and B, and Person 5, and (much later) Person 1, the Government has kept the identities of all other witnesses secret even from defense counsel.

⁴ Of course, when the Government filed a new, less-redacted, version of the Extradition Packet in the public record in ECF at Document 137-1, the Protective Order did not apply to that version and the investigators could read and possess it.

(Doc. 142, p. 47.) Through Facebook, the defense verified Person 5's connection with AJB, a person who had openly bragged (in 2018, prior to Omar's arrest) that he was going to "bring Omar back from the United States."[5] (Doc. 142, p. 48.) Given the Government's prior accusations against the defense, the defense intentionally did not request help from any Iraqis to find or contact Person 5 or other witnesses in Iraq. Rather it reached out to Person 5 directly through his Facebook page. The defense sought to interview Person 5 from the United States, and did so, on his timeline and with his consent, only after he responded to a four-month-old defense inquiry with a big thumbs up emoji and his phone number.[6] He spoke with the defense investigator for approximately an hour. Probing questions were not necessary, as the witness was extremely open. The defense did not even ask where he was currently living. And of course, the defense did not offer him money.[7] The rest of the accusations are equally spurious,

---

[5] The Court has already noted in connection with sealing litigation that information the defense obtains independently is not subject to the Protective Order. (Doc. 68, Transcript (2/4/2019) at 42 [unsealed by Doc. 96].) The defense has obtained enough independent evidence from its investigation to establish that AJB is one of the secret Government witnesses who is a central figure in this case. AJB has been quite open with the defense regarding his desire to ensure that Omar Ameen is executed upon his return to Iraq, stating that he would see to it himself if he had the opportunity.

[6] Substantive information obliterating probable cause that was obtained during this interview of Person 5 will be discussed in full in future pleadings.

[7] Interestingly, the defense's conversation with Person 5 firmly established that he is receiving money, shelter, a job, and protection from AJB, the same person who bragged about bringing Omar Ameen back to Iraq in the summer of 2018 before his arrest. (Exh. 39.) The Government's concerns about untoward influence on Person 5 are reflected back on the Iraqi authorities in this case. AJB is a member of an Iraqi paramilitary group. As the U.S. Department of State noted in its 2018 Country Report on Human Rights Practices, every level of Iraqi Government Forces, including Iraqi Security Forces, the Federal Police, the National Security Service, and the para-military Popular Mobilization Front units "frequently ignored the law" with respect to investigations, arresting detainees without cause, and subjecting them to abuse. (Doc. 45-B, p. 12, 13-16.) The PMFs especially have been implicated with threatening, intimidation, and abusing civilian members of the community. The Report also documents endemic corruption among police forces and the judiciary. (Id., at pp. 7, 9, 12, 15, 16, 17, 18, 19, 21, 38, 43-45.) An entire section of the report is dedicated to corrupt government practices that Iraqi officials "frequently engaged in . . . with impunity." (Id, at p. 43.)

as is the allegation that defense counsel will turn around and provide Person 5's information to "the defendant's agents and associates overseas."

The defense has steadily put the Government on notice that it would investigate every aspect of this case, including the murder, because Mr. Ameen is innocent and thus investigation would obliterate probable cause.  (See e.g., Doc. 103, pp. 2-3 (discussing motivations of Person 5 and others); p. 39 (connection between Person 5 and others suspected to be involved in making false accusations against Omar)).  The defense investigation has already proven, through documentary evidence obtained from the U.S. Government, the UNHCR and other refugee agencies, and the Turkish Government, that Mr. Ameen was in Mersin, Turkey, throughout the relevant time period, and irrefutably within just days of the murder.  The defense has also obtained witness statements proving that Mr. Ameen was in Mersin, Turkey at the time, and that he was not in Rawah, Iraq, at the time that ISIS took over and the victim was killed.  The Court has already admitted these documents on the issue of whether probable cause is obliterated.  (Doc. 160, p. 15.)  The Court has also seen numerous statements and other evidence that Omar Ameen has nothing to do with Al Qaeda or ISIS.  Even though the Court excluded this evidence from the extradition hearing, it is relevant to rebut the Government's repeated claims of intimidation and retaliation.

The defense has complied and will continue to strictly comply with the Protective Order.  However, it will not sabotage its own investigation by failing to follow through with the opportunity to interview the only witness who has been offered to establish probable cause.

III. WITNESS AND EXHIBIT LISTS SHOULD BE DUE ON THE SAME DAY AS THE SUPPLEMENTAL BRIEFING OF EACH PARTY

Prior to the October 7, 2019 hearing, the Government requested a date for witness and exhibit lists of October 28, 2019.  The defense opposed this, and the Court did not order such a date at the hearing.  The Government now requests one for October 22, 2019.

The Court ordered the defense to submit its supplemental extradition hearing brief on November 18, 2019, and the defense proposes that the Court require the defense to provide its witness and exhibits lists and exhibits on that date. This is consistent with the Court's orders regarding the initial extradition hearing, where the Court ordered trial briefs and witness/exhibit lists all due on the same day. (Doc. 108, p. 6.) The Government has given no reason why the lists should be filed almost a month prior to the due date for the defense brief. It proposes a date less than two weeks from now. Any list provided so early would need multiple updates to take into consideration evidence received from now until the hearing. Further, such a list would be confusing and likely inconsistent with the supplemental brief to be filed nearly a month later.

The defense urges the Court to follow its previous practice in this case and require the parties to file their lists on the same dates that they file their briefs: October 29, 2019 for the Government, and November 18, 2019 for the defense.

Dated:  October 9, 2019

    Respectfully submitted,

    HEATHER E. WILLIAMS
    Federal Defender

    /s/ Benjamin D. Galloway
    BENJAMIN D. GALLOWAY
    Chief Assistant Federal Defender

    /s/ Rachelle Barbour
    RACHELLE BARBOUR
    Assistant Federal Defender
    Attorneys for Defendant
    OMAR ABDULSATTAR AMEEN