HEATHER E. WILLIAMS, #122664
Federal Defender
BENJAMIN D. GALLOWAY, #214897
Chief Assistant Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Tel: 916-498-5700/Fax: 916-498-5710

Attorneys for
OMAR AMEEN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ, | Case No. 2:18-mj-152 EFB<br><br>Judge: Hon. Edmund F. Brennan |

I, Zeyad Tarek Sadallah, declare as follows:

1. I have known Omar all of my life because we are from the same tribe.

2. I lived in Rawah all my life until 2016. When Omar was living in Rawah until 2012, I saw him once a month. In 2012, Omar traveled to Turkey and never returned to Rawah or Iraq after that year. Omar was not in Rawah in June 2014. I moved to Turkey in 2016, and then returned to Iraq in 2017.

3. When Omar was in Turkey, I was not able to contact him because ISIS cut off communications at that time. I called him for the first time in 2015 when he was in the United States.

4. Between 2012 and 2014, security conditions in Rawah were good, but after ISIS entered in mid-2014 the situation became completely unstable. I learned then about the killing of officer Ihsan Jasim several days after his murder and I heard from a close friend of the family, whose name I can not remember now, that the father of the victim said he knew who had killed his son, and that it was someone who had a

EXHIBIT 85 (CORRECTED)

Case 2:18-mj-00152-EFB   Document 213   Filed 11/05/19   Page 2 of 5

personal dispute with the victim Ihsan Jasim because Ihsan had killed his brother, I think, or something like that.

5. It is impossible that Omar would have committed this murder because there was no personal dispute between him and the victim, or between their two families. Also, Omar was in Turkey at that time and I knew he was signing in every week with the police in Turkey and could not leave Turkey because he was registered with the United Nations and they retain his passport until it's time for his departure from Turkey to the country where he will settle as a refugee. It is impossible that Omar would have thought of taking the risk of crossing the border from Turkey to Iraq and then from Iraq to Turkey again - a difficult task requiring a very long time - to commit such a crime and risk losing his chance of him and his family receiving asylum and travelling to America, or (risk) getting injured or dying while crossing the border at that very dangerous time.

6. I learned from social media of Omar's arrest and was shocked by the accusations made against him. The Iraqi government claims he had a history of terrorism for years, but he would travel from Iraq to Syria and vice versa and then traveled to Turkey using his passport and was never arrested while travelling, as far as I know. I do not think that the Iraqi government is behind those accusations against him, but perhaps someone complained about him because of personal disputes and brought false witnesses against Omar, and so the Iraqi government took official actions against him based on that.

7. Omar was never in Al-Qaeda in Iraq or ISIS. I have never seen him with any militia members. I have never seen Omar with long hair or wearing Afghani clothes.

I declare under penalty of perjury that the foregoing is true and correct. I swear by God Almighty that this statement is the truth and nothing but the truth.

I know that this sworn declaration could be used in court and that any false declaration on my part exposes me to criminal sanction.

Executed 9 June 2019, at Baghdad, Iraq.

Declaration

2

EXHIBIT 85 (CORRECTED)

[Signature]

**TRANSLATOR CERTIFICATION:**

I declare under penalty of perjury: I am a proficient professional Arabic-English translator. On 7/19/19, I translated the entire contents of this document from its original Arabic to English, and I certify that all of the above translation is complete and accurate.

Dated: 7/19/19   at Sacramento, California, USA.

Translator name: AHMED GAWISH

Translator signature: Ahmed Gawish

EXHIBIT 85 (CORRECTED)

| | |
|---|---|
| ١ | **هيذر إي. ويليامز**، رقم ١٢٢٦٦٤<br>المدافعة الفيدرالية |
| ٢ | **بنيامين د. جالاويه**، رقم ٢١٤٨٩٧<br>المدافع الفيدرالي المساعد الرئيسي |
| ٣ | **راشيل باربر**، رقم ١٨٥٣٩٥<br>المدافعة الفيدرالية المساعدة |
| ٤ | ٨٠١ شارع آي، الطابق الثالث |
| ٥ | ساكرامنتو، كاليفورنيا ٩٥٨١٤ |
| | رقم الهاتف: ٥٧٠٠-٤٩٨ (٩١٦) / رقم الفاكس: ٥٧١٠-٤٩٨ (٩١٦) |
| ٦ | |
| ٧ | محامون لـ<br>**عمر أمين** |

**في محكمة المنطقة بالولايات المتحدة**

**للمنطقة الشرقية بكاليفورنيا**

| | | |
|---|---|---|
| في مسألة تسليم عمر عبدالستار أمين كمتهم لجمهورية العراق، | ) ) ) ) ) ) ) | القضية رقم ٢: ١٨-EFB ١٥٢-mj |
| القاضي: الجليل إدموند ف. برينان | | |

أقر أنا، زياد طارق سعد الله، بما يلي:

١. عرفت عمر طوال حياتي لأننا من نفس القبيلة.

٢. عشت في راوة طوال حياتي حتى عام ٢٠١٦. عندما كان عمر يعيش في راوة حتى عام ٢٠١٢ كنت أراه مرة في الشهر. في عام ٢٠١٢ سافر عمر إلى تركيا ولم يعد إلي راوة أو العراق أبداً بعد ذلك العام. لم يكن عمر في راوة في يونيو ٢٠١٤. إنتقلت أنا إلى تركيا عام ٢٠١٦، ثم عدت مرة أخرى إلى العراق في عام ٢٠١٧.

٣. حين كان عمر في تركيا لم أتمكن من الإتصال به لأن داعش قطعت الإتصالات في تلك الفترة. إتصلت به لأول مرة في عام ٢٠١٥ حين كان في الولايات المتحدة.

٤. بين عامي ٢٠١٢ و ٢٠١٤ كانت الأحوال الأمنية في راوة جيدة ولكن بعد دخول داعش في منتصف ٢٠١٤ أصبح الوضع غير مستقر تماماً. علمت حينها بمقتل الضابط إحسان جاسم بعد مقتله بعدة أيام وسمعت من صديق مقرب للأسرة لا أتذكر إسمه الآن أن والد الضحية قال أنه يعلم من قتل إبنه وهو شخص كان بينه وبين الضحية إحسان جاسم خلاف شخصي لأن إحسان كان قد قتل أخاه تقريباً او شيء مثل ذلك.

٥. من المستحيل أن يكون عمر قد قام بعملية القتل هذه لأنه لم يكن هناك أي خلاف شخصي بينه وبين الضحيه ولا بين

إقرار ١

EXHIBIT 85 (CORRECTED)

أسرتيهما ، كما أن عمر كان في تركيا في ذلك الوقت وكنت أعلم أنه يوقع كل أسبوع مع الشرطة بتركيا ولا يستطيع مغادرة تركيا لأنه مسجل مع الأمم المتحدة ويحتفظون بجواز سفره حتى يأتي موعد سفره من تركيا إلى الدولة التي سيستقر بها كلاجئ. لا يمكن أن يكون قد فكر عمر في المخاطرة بعبور الحدود من تركيا إلى العراق ثم من العراق إلى تركيا مرة أخرى - وهو أمر شاق يحتاج إلى زمن طويل جداً - من أجل القيام بجريمة مثل تلك ويخاطر بضياع فرصته في اللجوء والسفر لأمريكا هو وأسرته أو يصاب أو يموت وهو يعبر الحدود في ذلك الوقت الشديد الخطورة.

٦. علمت من وسائل التواصل الاجتماعي بإلقاء القبض على عمر وصُدمت من الإتهامات الموجهة ضده. الحكومة العراقية تدعي أنه كان له تاريخ في الإرهاب منذ سنوات ولكنه كان يسافر من العراق إلى سوريا والعكس ثم سفر إلى تركيا مستخدماً جواز سفره ولم يتم إلقاء القبض عليه وهو يسافر أبداً على حد علمي. لا أظن أن الحكومة العراقية وراء تلك الإتهامات ضده ولكن ربما هناك شخص إشتكاه بسبب خلافات شخصية وأتى بشهود زور ضد عمر فقامت الحكومة العراقية بإتخاذ الإجراءات الرسمية ضده بناء على ذلك.

٧. لم ينتمي عمر أبداً إلى القاعدة في العراق أو داعش. لم أراه أبداً مع أية أعضاء في جماعات مسلحة. لم أرى عمر أبداً بشعر طويل أو يرتدي ملابس افغانية.

أقر تحت طائلة عقوبة الحنث باليمين أن كل ما تقدم صادق وصحيح. أقسم بالله العظيم أن هذا الإقرار هو الحقيقة ولا شيء غير الحقيقة.

أعلم أنه يمكن إستخدام هذا الإقرار تحت القسم في المحكمة وأن أي إقرار كاذب من جانبي يعرضني للعقوبة الجنائية.

تحريراً في يوم ٩ يونيو ٢٠١٩ في بغداد بالعراق.

التوقيع 

EXHIBIT 85 (CORRECTED)