McGREGOR W. SCOTT
United States Attorney
AUDREY B. HEMESATH
HEIKO P. COPPOLA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

CHRISTOPHER J. SMITH
Associate Director
REBECCA A. HACISKI
Trial Attorney
Office of International Affairs
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20530
Telephone: (202) 514-0000

Attorneys for Plaintiff
United States of America

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ | CASE NO.  2:18-MJ-152 EFB<br><br>Date:  December 4, 2019<br>Time:  10:00 a.m.<br>Hon. Edmund F. Brennan |

OBJECTIONS TO DEFENSE EXHIBITS AND WITNESSES

# <u>TABLE OF CONTENTS</u>

I.    MOST OF THE DEFENSE EXHIBITS ARE INADMISSIBLE..................................1

    A.    Alibi Evidence ...........................................................................................3

    B.    Different Accounts of the Murder.............................................................6

    C.    Forgery Evidence ......................................................................................7

    D.    Recantation Evidence................................................................................8

    E.    Credibility Evidence ...............................................................................10

    F.    No Probative Value.................................................................................16

    G.    No Objection ...........................................................................................18

II.   THE COURT SHOULD EXCLUDE THE PROPOSED DEFENSE WITNESSES....................19

    A.    Handwriting Expert.................................................................................19

    B.    Cell Phone Forensics Expert ..................................................................20

    C.    TMF-1 .....................................................................................................20

    D.    FBI Special Agents .................................................................................21

i

# TABLE OF AUTHORITIES

## CASES

*Austin v. Healey*,
  5 F.3d 598 (2d Cir. 1993) .................................................................................. 10

*Collins v. Loisel*,
  259 U.S. 309 (1922) ............................................................................................ 2

*Eain v. Wilkes*,
  641 F.2d 504 (7th Cir. 1981) ......................................................................... 7, 10

*Extradition of Garcia*,
  825 F. Supp. 810 (S.D. Tex. 2011) ................................................................. 4, 6

*Extradition of Mainero*,
  990 F. Supp. 1208 (S.D. Cal. 1997) .................................................................. 10

*Garcia v. Thomas*,
  683 F.3d 952 (9th Cir. 2012) ............................................................................. 18

*Gill v. Imundi*,
  747 F. Supp. 1028 (S.D.N.Y. 1990) .................................................................... 3

*Hooker v. Klein*,
  573 F.2d 1360 (9th Cir. 1978) ............................................................................. 2

*Hoxha v. Levi*,
  371 F. Supp. 2d 651 (E.D. Pa. 2005) ................................................................. 10

*Hoxha v. Levi*,
  465 F.3d 554 (3d Cir. 2006) .............................................................................. 10

*In re Extradition of Ramos Herrera*,
  268 F. Supp. 2d 688 (W.D. Tex. 2003) ............................................................... 5

*In re Extradition of Singh*,
  170 F. Supp. 2d 982 (E.D. Cal. 2001) ................................................................. 8

*In re Rodriguez Ortiz*,
  444 F. Supp. 2d 876 (N.D. Ill. 2006) ........................................................... 10,11

*In re the Extradition of Solis*,
  402 F. Supp. 2d 1128 (C.D. Cal. 2005) ..................................................... 8, 10, 16

*Matter of Sindona*,
  450 F. Supp. 672 (D.C.N.Y. 1978) ...................................................................... 1

*Ntakirutimana v. Reno*,
  184 F.3d 419 (5th Cir. 1999) ............................................................................. 16

*Prushinowski v. Samples*,
  734 F.2d 1016 (4th Cir. 1984) ............................................................................. 1

*Santos v. Thomas*,
    830 F.3d 987 (9th Cir. 2016) ............................................................................ 1, 2, 7, 10

*United States ex rel. Sakaguchi v. Kaulukukui*,
    520 F.2d 726 (9th Cir. 1975) ................................................................................ 11

*United States v. Filippi*,
    918 F.2d 244 (1st Cir. 1990) ................................................................................ 20

*United States v. Moussaoui*,
    382 F.3d 453 (4th Cir. 2004) ................................................................................ 20

*United States v. Pemkova*,
    731 F. App'x 620 (9th Cir. 2018) ......................................................................... 20

*United States v. Peterka*,
    307 F. Supp. 2d 1344 (M.D. Fla.2003) ................................................................ 10

*United States v. Sedaghaty*,
    728 F.3d 885 (9th Cir. 2013) ................................................................................ 20

**STATUTES**

18 U.S.C. § 3190 ........................................................................................................... 1

28 U.S.C. § 1783(a) ..................................................................................................... 20

This Court should exclude most of the proffered defense exhibits as irrelevant or inadmissible contradictory evidence in these extradition hearings.  And, because the defense has not presented reasonably clear-cut proof that obliterates the probable cause established in the extradition request, the Court should certify Omar Ameen for extradition at the conclusion of the continued extradition hearing on December 4, 2019.

## I.   MOST OF THE DEFENSE EXHIBITS ARE INADMISSIBLE

The requirements for the admissibility of evidence in extradition proceedings, other than that certified pursuant to 18 U.S.C. § 3190 or the applicable treaty, are two-fold:  (1) the evidence must be explanatory, not contradictory, and (2) the evidence must be relevant to an issue within the purview the Court's certification decision.

> In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause.  The scope of this evidence is restricted to what is appropriate to an extradition hearing.  The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.

*Matter of Sindona*, 450 F. Supp. 672, 685 (D.C.N.Y. 1978).  The Ninth Circuit has rearticulated this limitation on the admissibility of evidence:  "[A] preliminary hearing is not a minitrial of the issue of guilt; rather, its function is the more limited one of determining whether probable cause exists to hold the accused for trial.  An extradition hearing similarly involves a preliminary examination of the evidence and is not a trial."  *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (en banc).

The defense seeks to admit exhibits that would turn these proceedings into a mini-trial and require this Court to resolve allegations of credibility, bias, and motive, as well as a defense of an incomplete alibi, that far exceed the scope of the evidence that is presented in the four corners of the extradition request and supplement thereto.  *See Prushinowski v. Samples*, 734 F.2d 1016, 1018 (4th Cir. 1984) ("It is not [this Court's] function to afford a trial on the merits," and it should defer to the courts of the requesting country, "which are far better qualified . . . to assess the merits of [Ameen's] defenses.").

None of the evidence proffered by the defense is explanatory.  In *Santos*, the government offered the following example of what would be admissible, obliterating explanatory evidence in an eyewitness

1

case, an example which was cited favorably in Judge Callahan's dissenting opinion:

> A requesting country seeks extradition based solely on an eyewitness account of an apparent homicide at a train station. The requesting country proffers an eyewitness account, in which the witness reported standing near the train tracks and seeing two men farther down the train platform arguing with one another, and heard one man threaten to harm the other. As the train approached the platform, the witness turned away from the men for a moment, and when he turned back, he saw the man who had been threatened on the train tracks, where he was immediately struck by the train and killed. The requesting country inferred from the eyewitness account that the second man had pushed the victim onto the train tracks and charged the second man with murder. The accused man located security video footage of the train tracks (the authenticity of which was not disputed by the requesting country) and the video clearly showed that in the moment the witness looked away, the victim jumped onto the train tracks without any contact from the accused. Critically, the introduction of the uncontested security video would require no fact-finding, would not invite weighing of evidence, and would negate the only evidence of probable cause.

830 F.3d at 1044-45. There is no evidence like this proffered among the defense's 124 exhibits. The evidence from the Republic of Iraq is that Person 5 saw Ameen shoot Ihsan. This is not circumstantial evidence, capable of alternative benign explanation. What the defense offers are competing pieces of evidence.

"The Supreme Court has drawn a distinction between evidence 'properly admitted in behalf of the [accused] and that improperly admitted." *Santos*, 830 F.3d at 992 (quoting *Collins v. Loisel*, 259 U.S. 309, 316 (1922)). Ameen has no right to introduce evidence that attempts to establish an alibi defense, no right to impeach the witnesses, and no right to contradict the signatures included in the extradition request and supplement thereto. "The accused, however, does not have the right to introduce evidence in defense because that would require the government seeking his extradition 'to go into a full trial on the merits in a foreign country.'" *Id.*; *see Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978) (fugitive is "not permitted to introduce evidence on the issue of guilt or innocence").

Ameen has not uncovered any obliterating evidence in the six months that have passed since the first extradition hearing. His "alibi" evidence is the same as it was then: an incomplete alibi that places him in Turkey before and after the murder. Any assessment that he was also in Turkey at the time of the murder requires this Court to assess the basis of knowledge of the declarant, or provides an entirely different account of how Ihsan was murdered than that set forth in the extradition request. The

remainder of Ameen's proffered evidence contradicts the evidence in the extradition request and its supplement demonstrating that the witness statements included therein are not forged, provides contradictory recantations, questions the credibility of Person 5 and other evidence procured by TMF-1, or lacks probative value.  None of these avenues of inquiry relates to the narrow issues before the Court in the continued extradition hearing, and they should be rejected.

### A.   Alibi Evidence

As the Court previously found, "alibi evidence should be excluded from an extradition hearing insofar as it contradicts the government's evidence of probable cause."  CR 160 pg. 13-14.  While the Court found that "[i]t would be manifestly unjust to prohibit a fugitive from presenting evidence that *conclusively* establishes that he could not have committed the crime he is charged with," *id.* pg. 14 (emphasis added), Ameen has presented no such evidence.  Although courts have remarked in some cases that the line between explanatory and contradictory evidence can be gray, it "becomes less wooden when its purpose of preventing a full-scale trial, involving witnesses telling competing stories, is contemplated." *Gill v. Imundi*, 747 F. Supp. 1028, 1040 (S.D.N.Y. 1990).  The evidence Ameen has presented at most only raises a question as to whether he was in Rawah at the time of Ihsan's murder, and thus should be excluded, as follows:

- **Defense Exhibit 21** (Facebook "like" from June 22, 2014).  The Court has not yet ruled on the admissibility of another version of this same exhibit, Defense Exhibit 20.  The Court should now exclude both exhibits as inadmissible contradictory evidence.  The purpose for which the defense proffers the exhibits is to create an inference that he was not in Rawah on the day of Ihsan's murder because there was activity on his Facebook account that day.  To reach this conclusion, the Court would have to deduce that internet service was not available in Rawah on the day of the Facebook activity, and that because there was activity on the Ameen Facebook account, Ameen was not in Rawah.  Such evidence contradicts the eyewitness account that Ameen was in Rawah that day, shooting Ihsan, and is, therefore, inadmissible.

The Facebook "like" does not rise to the level of obliterating probable cause.  The factual record before this Court is insufficient to address whether internet users could circumvent the blackout (or even to hold that there was, in fact, a blackout at the time in question), whether

internet users in the five affected Iraqi provinces were occasionally able to access Facebook and for which dates and times, or whether the user of the Facebook account on the day in question was Ameen himself or another person who had access to his account, for example, his wife. These unanswerable questions mean that the Facebook "like" is of limited probative value and is at most contradictory, not obliterating evidence. It is not "definitive evidence of an alibi conclusively placing [the fugitive] in a location other than" Rawah. *In re Extradition of Garcia*, 825 F. Supp. 810, 831 (S.D. Tex. 2011). It should be excluded.

- **Defense Exhibit 82** (results of Facebook subpoena). This exhibit confirms that there is no Facebook IP login information for the relevant timeframe. In other words, it is not possible to geolocate the user of the Ameen Facebook account for June 22, 2014, the day of the murder. There is IP login information in Turkey before the timeframe of the murder, and there is IP login information that resumes again in Turkey after the murder, but there is no login information associated with the Facebook activity during the timeframe of the murder. This information is consistent with what the government has previously represented and does not advance Ameen's defense that he was not in Rawah on the day of Ihsan's murder.

- **Defense Exhibit 81** (UNHCR records). The UNHCR records are irrelevant because they set forth dates that are not at issue in this case: the date of Ameen's refugee application (May 22, 2014), the date of his medical appointment in Turkey (July 7, 2014), and the date of his flight to the United States (November 4, 2014). None of these establishes an alibi for the date of the murder (June 22, 2014), as it would have been possible for Ameen to travel the distance between Rawah and Turkey in the approximately six week period between the known dates when he was in Turkey. To the extent the records are offered to contest Person 5's credibility, they should be excluded as either irrelevant or inadmissible contradictory evidence.

      To the extent Ameen would use this collection of documents to contest Person 5's statement that he saw Ameen again within the six months after the murder, this argument is inadmissible contradictory evidence impeaching Person 5's eyewitness identification of Ameen. The Court would have to engage in fact-finding to reach the conclusion the defense posits. It would have to decide among several possibilities, including: (1) Person 5 did see Ameen but was

4

mistaken about the six-month timeframe and it was actually a shorter timeframe (for Person 5 is now recalling an event that took place over five years ago, after Person 5 suffered a significant amount of trauma, as described throughout the conversation); (2) Person 5 thought he saw Ameen six months later but he did not; or (3) there is a possibility of a misunderstanding or a mistranslation in the phone call between Person 5, who speaks an Iraqi dialect, and the retired FBI Special Agent or defense translator, who are not native speakers of Iraqi dialect Arabic.  The conversation does not give details about the later identification, so the circumstances of the later identification are unknown.  Even if Person 5 misidentified Ameen six months later, there are abundant indicia of reliability on the first identification, the identification in the extradition request—Person 5's familiarity with Ameen, his opportunity to observe the scene, his definitive identification of Ameen, confirmed via photo identification, and his contemporaneous identification of Ameen to Witnesses A and B.  The statement that Person 5 also saw Ameen six months later may raise a questions about the later identification, but these questions do not rise to the level of obliterating probable cause because to answer those questions would require fact-finding.  Therefore, this exhibit is inadmissible contradictory evidence if offered for that purpose.

- **Defense Exhibit 114** (letter from AUSA regarding potential defense witness for trial).  This proposed exhibit relates to what Ameen has previously marked as Defense Exhibit 4, which the Court has previously admitted.  But the government requests reconsideration of that ruling, as both exhibits are contradictory alibi evidence that do not obliterate probable cause, and therefore, should be excluded.  The witness in these exhibits does not establish a concrete alibi for Ameen, but rather blanketly states that Ameen never left Turkey, without providing a basis for his knowledge or any means of testing the veracity of the assertion.  As this is not obliterating evidence, it should be excluded as inadmissible contradictory evidence.

All of Ameen's alibi evidence raises more questions than it provides answers.  "Extradition judges are not expected to decide conflicting factual claims between the Government and the accused." *In re Extradition of Ramos Herrera*, 268 F. Supp. 2d 688, 696 (W.D. Tex. 2003).  To respond to the claimed alibi would require the Republic of Iraq to produce more evidence.  "[W]hen alibi evidence would raise more questions than answers and turn the probable cause determination into a full trial on

5

the merits, it does not obliterate probable cause." *Garcia*, 825 F. Supp. 2d at 830.  The alibi evidence should be excluded, including that which was previously admitted by the Court, given the current state of the record in this case.

### B.   Different Accounts of the Murder

The Court previously excluded a statement that was "purely contradictory" because it "offere[ed] only a different account of how the killing occurred."  CR 160 pg. 17.  It should likewise exclude the following defense exhibits for the same reason:

- **Defense Exhibit 84** (declaration of the victim's widow).  This exhibit is a new version of a previous exhibit this Court has already ordered excluded (Defense Exhibit 37).  CR 160 pg. 17, 24.  In this declaration, the victim's wife gives an account of the murder that contradicts the one set forth in the extradition request.  She states that Person 5 was not inside Ihsan's house, but rather was "at his uncle's house across the street," at the time of the murder.  ¶ 11.  She also indicates that none of Ihsan's family saw "any of the people who killed Ihsan," though she speculates that Ahmed Shebab Ahmed Badr may have killed Ihsan.  ¶¶ 10, 19.  Further, her account contradicts the timing set forth in the extradition request (claiming that the murder occurred at 8:30pm, when it was "very dark," as opposed to 7 p.m. as indicated in the eyewitness statement in the extradition request).  ¶ 8.  Thus, her contradictory evidence should be excluded.  The witness indicates she saw no one ("None of us had seen any of the people who killed Ihsan.").  ¶ 10.  She then characterizes Person 5 as a liar. ¶ 12. This statement should also be excluded as improper impeachment evidence, as further discussed below.  ¶ 12.  This exhibit is inadmissible contradictory evidence, offered for the purpose of impeaching Person 5.  It should be excluded, along with Defense Exhibit 37.

- **Defense Exhibit 85** (declaration of Ameen's fellow tribe member).  This exhibit is a new version of an exhibit this Court has already ordered excluded (Defense Exhibit 62).  CR 171:93-96.  The witness has no first-hand knowledge of Ameen's whereabouts (no contact with Ameen between 2012 and 2015) and no first-hand knowledge of the murder (he heard several days after the murder that the killer was someone with a personal dispute with the victim).  ¶¶ 3, 4.  The declarant then goes on to conclude that Ameen was not the murderer because Ameen had no

dispute with the victim or his family.  ¶ 5.  This account is contradictory of the account set forth in the extradition request, which establishes an ISIS murder seeking vengeance on an Iraqi police officer, and should remain excluded.

- **Defense Exhibit 102** (Iraqi Al Anbar court document).  This document, dated April 23, 2019, describes the release from custody of a defendant who may have been charged by a different court—the Al-Anbar Central Court—with the murder of Ihsan.  It states that that defendant was released after a finding of insufficient evidence.  It is unclear to what extent, if any, this evidence overlaps with that presented in the Al Karkh Central Inquiry Court against Ameen.  However, it is clear from the supplement to the extradition request that the Al Karkh court remains very much committed to the prosecution of Ameen.  Defense Exhibit 102 does not exonerate Ameen of Ihsan's murder, nor is it probative of anything in this extradition proceeding.  It may actually corroborate Person 5's account of multiple assailants involved in the murder.  Accordingly, to the extent it suggests that someone other than Ameen murdered Ihsan, it should be excluded as contradictory, and it should otherwise be excluded as irrelevant.

Consideration of these alternative accounts of the murder would require fact-finding that this Court should decline to undertake in these extradition proceedings.  "It is fundamental that the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing." *Santos*, 830 F.3d at 991-92 (quoting *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981)).

## C.   Forgery Evidence

While the Court previously did not exclude evidence offered by Ameen in support of his claim that witness statements in the extradition request were forged, CR 160 pg. 19, the United States has since offered conclusive evidence—via Judge Dhiya's statement in the supplement to the extradition request that the witnesses personally appeared and signed their statements before him, CR 194-1, as corroborated by the observations of the FBI Special Agent Butsch, CR 206-1—that there was no such forgery.  Because of this conclusive evidence that there was no forgery, the United States requests that the Court now also exclude Defense Exhibits 42.1, 43, 43.1, and 64-77.  Any evidence, including the following defense exhibits, suggesting that the witnesses did not sign their statements contradicts the information provided in the supplement to the extradition request and should, therefore, be excluded:

- **Defense Exhibit 87** (signature exemplars).  This exhibit should be excluded, as it is offered in support of Ameen's claim that Person 5's signature does not appear on the statement by Person 5 included in the extradition request, contrary to the information made clear in the supplement to the extradition request.

- **Defense Exhibit 88** (additional signature exemplars).  This exhibit should be excluded, as it is offered in support of Ameen's claim that Witness A's signature does not appear on the statement by Witness A included in the extradition request, contrary to the information made clear in the supplement to the extradition request.  *See, e.g.*, *In re the Extradition of Solis*, 402 F. Supp. 2d 1128 (C.D. Cal. 2005) (declining to consider evidence that a witness claimed that he had no idea what he was signing and was forced to sign a statement).

- **Defense Exhibit 91** (identification card, containing signature, of Person 5).  Same response as Defense Exhibit 87.

- **Defense Exhibit 116** (handwriting enlarged from extradition request).  This exhibit is extracted from the extradition request, and is thus not needed as a separate exhibit.

- **Defense Exhibit 124** (Ameen's handwriting expert's report).  This exhibit was not included on the defense's exhibit list, and no good cause has been demonstrated for its late submission.  In any event, it should be excluded, as it appears to be offered in support of Ameen's claim that Witness A and Person's 5 signatures are forged, and for the additional reasons discussed below.

### D.   Recantation Evidence

The Court has found that evidence constituting "a later statement that directly contradicts an earlier incriminating statement" should be excluded.  CR 160 pg. 15 (quotations marks and citation omitted).  This case presents a clear situation where "the credibility of [the witness's] recantation cannot be determined without a trial."  *In re Extradition of Singh*, 170 F. Supp. 2d 982, 1025 (E.D. Cal. 2001), *aff'd in part sub nom. Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005).  That finding applies the following defense exhibits:

- **Defense Exhibit 79** (declaration of defense Iraqi lawyer).  In his declaration dated July 2, 2019, the defense lawyer states that Witnesses A and B testified in the Al-Anbar Inquiry Court (*i.e.*, a different court than that which has charged Ameen) in May 2019 that they did not previously

name or identify Ameen as the murderer of Ihsan and that they did not give the statements against Ameen included in the extradition request.  ¶ 9.  Not only does this evidence directly contradict the statements of Witnesses A and B contained in the extradition request, but it also cannot be reconciled with the supplement to the extradition request, which makes clear that Witnesses A and B appeared personally before Judge Dhiya, testified that Person 5 told them at the time of the shooting that Ameen was the shooter, and identified Ameen in a photograph.  CR 194-1.  Accordingly, the defense exhibit is impermissible recantation evidence and should be excluded.

- **Defense Exhibit 89** (declaration of retired FBI Special Agent).  In his declaration dated November 4, 2019, a defense investigator states that Witnesses A and B told him that Ihsan was "killed by a sniper's first shot and then by the opening of heavy fire on him from a distance," that the attackers "fled without being identified," and that Ameen was not one of the attackers.[1]  ¶¶ 5, 6.  Also according to the defense investigator, Witnesses A and B claimed they did not accuse Ameen "of anything" when they testified in court, ¶ 9; Witness A claimed that the signature on the statement included in the extradition request is not hers, ¶¶ 9-10; and Witness B claimed he is not sure if the signature on the statement included in the extradition request is his, ¶ 11.  However, as set forth in the extradition request and supplement thereto, Witnesses A and B both provided sworn, signed statements against Ameen in court, relating that Person 5 told them that he had seen Ameen shoot Ihsan.  CR 194-1 pg. 12 ¶ 8.  Thus, Defense Exhibit 89 describes an additional recantation by Witnesses A and B, and the Court should exclude it.

    The indicia of reliability are on the original statements of Witnesses A and B, which were provided under oath, in court, signed by them, and made before the witnesses were contacted by any representative of Ameen.  There is no way to reconcile the various accounts that have been given by Witnesses A and B.  All of their statements subsequent to the sworn testimony they gave should be excluded (CR 171, 83-96).  The Court did not have the benefit of the supplement

---

[1] The introduction of a sniper as the assailant is entirely consistent with two witnesses who have been under heavy pressure by ISIS to recant and want to avoid at all costs implicating anyone in the murder.  If a sniper was the assailant, then the conclusion would be that no one at the house could see him.

to the extradition request at the time it initially ruled that these are explanatory exhibits; the explanation of Judge Dhiya that he personally took the statements of Witnesses A and B makes clear that all of the defense-procured subsequent statement of Witnesses A and B are contradictory.  CR 194-1.[2]  *Hoxha v. Levi*, 371 F. Supp. 2d 651, 658 n.2 (E.D. Pa. 2005) (concluding that "the recantations raise credibility issues best left to the Albanian judicial system"), *aff'd*, *Hoxha v. Levi*, 465 F.3d 554 (3d Cir. 2006).

## E.    Credibility Evidence

As this Court has recognized, "[t]he Ninth Circuit has held that evidence attacking the credibility of government witnesses should be excluded."  CR 160 pg. 17; *see also Santos*, 830 F.3d at 993 (the defense "may not impeach government witnesses or produce witnesses whose testimony contradicts evidence already offered by the government."); *Eain*, 641 F.2d at 511 ("an accused in an extradition hearing has no right . . . to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof."); *Austin v. Healey*, 5 F.3d 598, 605 (2d Cir. 1993) (challenge to "the reliability and credibility of the evidence is misdirected"); *Solis*, 402 F. Supp. 2d at 1131 (holding that respondent could not challenge the veracity or validity of a witness's statement because "a fugitive in international extradition proceedings is not permitted to introduce evidence that contradicts the evidence submitted by the requesting country"); *United States v. Peterka*, 307 F. Supp. 2d 1344, 1349 (M.D. Fla.2003) ("the court shall exclude evidence that is proffered to . . . challenge the credibility of witnesses"); *In re Extradition of Mainero*, 990 F. Supp. 1208, 1218 (S.D. Cal. 1997) ("Evidence that conflicts with that submitted on behalf of the demanding party is not permitted, nor is impeachment of the credibility of the demanding country's witnesses."); *In re Rodriguez Ortiz*, 444 F. Supp. 2d 876, 891-93 (N.D. Ill. 2006) (issue of inconsistencies in witness statements are "properly reserved for the eventual trial in Mexico").  For that reason, the Court excluded certain exhibits to the extent they were "offered to attack Person 5's credibility," *id.* pg. 18,[3] and it should likewise exclude the following defense exhibits:

---

[2] Moreover, Witness A and B's statement that Person 5 is a liar and conman impermissibly impugns Peron 5's credibility and should be excluded for that additional reason.

[3] While the Court admitted the exhibits "for the purpose of demonstrating that Person 5's statement in the extradition request is forged or inauthentic," that purpose is no longer applicable in light of the supplement to the extradition request, as discussed above.

- **Defense Exhibit 83** (defense summary of FBI 302 of Person 5).  The court previously excluded Exhibit 38 (FBI 302 of Person 5) in part as related to Person 5's credibility, so should thus exclude the defense attempt to summarize that same exhibit.  The Court previously prohibited Ameen from challenging Person 5's credibility based on prior statements he made containing some details that are inconsistent with those contained in the statement given under oath in the Al Karkh court, CR 160 pg. 18 (Defense Exhibits 38 and 42); it should likewise exclude Defense Exhibit 83.  The United States has never disputed that there are some inconsistencies in the account given by Person 5 to the FBI, as compared to the account in the extradition request.  But such inconsistencies are not so material as to obliterate probable cause.  Person 5 has consistently identified Ameen as a participant in the murder of Ihsan, and has always given the same general description of the ISIS caravan that descended upon the house at the time of the murder.  While any further differences between accounts may be fair grounds for cross-examination at trial, they do not negate probable cause.  *See, e.g.*, *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 728 (9th Cir. 1975) (probable cause exists even when the requesting country's documents contain alleged "inconsistencies and discrepancies" because this fact is "of no consequence if there exists in those documents 'any' other sufficient competent evidence" to establish probable cause); *Ortiz*, 444 F. Supp. 2d at 893 ("[P]roviding an air-tight narrative of the events surrounding a crime is not a precondition for granting extradition," and issues regarding alleged inconsistencies in the evidence "are all properly reserved for the eventual trial in [the requesting country].").  This exhibit should remain excluded as contradictory impeachment evidence.

- **Defense Exhibit 90** (transcript of telephone call with Person 5).  The Court should exclude this transcript, as the defense purpose in offering it is to impeach Person 5's credibility both by pointing out inconsistencies or by attempting to show bias.  Neither is a permissible purpose in these extradition proceedings.[4]

---

[4] The United States remains concerned about the circumstances of the call.  The transcript does not contain the introductory portion of the call, so it is not known how the retired FBI Special Agent introduced himself, nor the extent to which Person 5 understood that he was speaking to a member of the defense team, and not to the FBI.  Moreover, it is now clear that Person 5 did perceive the phone call as offering him money.  Pg. 8.  Indeed, he is so relieved at the offer of money that he apparently began crying.

It is worth noting that the overwhelming majority of the transcript is consistent with the testimony in the extradition request.  Person 5 consistently describes the threatening phone call the day before, the ISIS convoy, and the shootout, and identifies Ameen as the shooter.  Person 5 is also adamant that his identification of Ameen as the shooter was not influenced by TMF-1. ("[TMF-1] says, "[Ameen] lives over [in the United States].  What do you know about him?'  I say, 'What do I know about him?  He's the one who killed my [family member] Ihsan.'  He says, 'Review it.  If that's correct, I will notify the Americans now . . . .'  And I worked with him on that.  If I didn't love America and the United States, I would not have reported him, correct?").

As well, the call confirms a critical point: the origin of Person 5's identification of Ameen as the murderer is Person 5 himself.  The defense asked Person 5 whether Person 5 told TMF-1 that Ameen had killed Ihsan or whether TMF-1 was the source of knowledge on that point.  Pg. 16.  Person 5 appears to have been emphatic on the point that the knowledge was his own: "I say, 'What do you know about him?  He's the one who killed my [family member] Ihsan.'" *Id.*

The call is therefore the type of extrinsic evidence that raises as many questions as it does answers.  There are many confirming aspects to the call, even if the call also reveals inconsistencies.  The use for which the defense proffers the call is to impeach Person 5.  That is a prohibited use, and the exhibit should be excluded.

- **Defense Exhibit 92** (Transcript of Telephone Call with TMF-1).[5]  This interview of TMF-1 is irrelevant because TMF-1 has no personal knowledge of the murder and is not a part of the extradition request or supplemental extradition request.  The apparent purpose of the exhibit is improperly to impeach the testimony of Person 5 by arguing bias, and using allegations relating to TMF-1 to prop up that argument.  TMF-1 may have been highly motivated to find evidence against Ameen—motivated by hubris, or compensation, or spite, but none of those motives for TMF-1 renders the account given by Person 5 untrue.  There is nothing inconsistent about a

---

[5] Underscoring the concerns with the circumstances of the defense call to Person 5, the nuance that he was speaking with a *retired* FBI Special Agent was apparently lost on TMF-1, and it is unclear whether any real attempt was made to be forthcoming about the fact that the call was coming from Ameen's defense team.

person who has reliably given the United States government counterterrorism information in the past identifying a source of information (Person 5) and boasting passionately about his role in finding a key witness.

As with the call with Person 5, this call also contains information that is highly corroborative of the allegations in the extradition request. For example, the defense asks TMF-1 whether he talked to Person 5 about Ameen first or vice versa. Pg. 11. TMF-1 responds that he has known about Ameen's involvement in the murder since 2014, when Person 1 told him that Ameen killed Ihsan. TMF-1's account also corroborates Person 5's account on the most significant point: Person 5's identification of Ameen as the murderer originated with Person 5. Pg. 11.

The evidence in this series of calls is not reasonably clear-cut, does not obliterate probable cause, nor does it explain anything in Iraq's evidence without requiring the Court to engage in extensive fact-finding. The exhibit should, therefore, be excluded.

- **Defense Exhibit 95** (Facebook post by TMF-1). This proposed exhibit is a Facebook profile picture by TMF-1, showing him in front of the Enola Gay, with an American flag background. This exhibit should be excluded as irrelevant. While it may establish some motive by TMF-1 to help the Americans, it does not clarify the motivation of Person 5, and even if it did, it would constitute only inadmissible impeachment evidence.

- **Defense Exhibit 99** (Facebook post by Person 5). This proposed exhibit is a post on the Person 5 Facebook account approximately a month after Ameen's arrest in the United States. The post does not contain information about the murder itself, but rather is about vengeance for the death of Ihsan. Being vengeful for the death of a loved one does not negate the fact that Person 5 witnessed Ameen's murder of Ihsan. If anything, the sense of retribution contained in the post corroborates that Person 5 saw Ameen commit the crime, and is now satisfied that justice is being served. The purpose for which Ameen seeks admission, however, is to impeach the testimony of Person 5, by arguing that he is biased, which is impermissible. Therefore, the exhibit should be excluded.

- **Defense Exhibit 100** (Bulletin on Omar Ameen transmitted to the defense by TMF-1). This

exhibit is an undated bulletin that was sent by TMF-1 to the defense team.  It describes Ameen and his 10 brothers and 10 cousins as members of Al Qaeda and then ISIS.  It describes Ameen's work against U.S. forces, including IEDs, explosive belts, and booby-trapped explosive cars. While this exhibit corroborates Ameen's background as a member of Al Qaeda and ISIS, it has no other relevance here because it does not discuss the murder at all.  The purported defense purpose in introducing this document is to establish zeal by TMF-1 in assisting the United States in gathering information about Ameen.  But any zeal by TMF-1 is not inconsistent with his having come upon witnesses with knowledge of the murder.  The exhibit should be excluded as irrelevant, or alternatively, as contradictory impeachment.

- **Defense Exhibit 103** (membership card and application of Badr El-Mousawi in the TMF). Ameen offers this exhibit for the contradictory purpose of impeaching Person 5.  The documents pertain to a person not named or discussed in the extradition request or supplement thereto. According to the defense, this person may have played a role in the imprisonment of Person 5's father.  The documents are very tangential to the assertion that Person 5 had a motive to provide evidence in order to gain favorable treatment for his father.  There is nothing in the extradition record that would support a finding that the Republic of Iraq in fact offered any kind of incentive for Person 5's testimony.  To the contrary, the record indicates that Person 5 was brought for testimony after the United States made Iraq aware of the presence of a witness with first-hand knowledge of Ameen's participation in a murder.  CR 206-2 (Affidavit of Special Agent Coonfield).  It is not at all clear that Person 5 would have been able to predict that his handwritten statement would result in his being interviewed by FBI Special Agents in Anbar, Iraq and ultimately referred to the Al Karkh court as a witness for trial.  Yet his allegation remained consistent throughout each of these stages.  Even if the Court were to assume that Person 5 did have such a motive, his eyewitness identification of Ameen still bears indicia of reliability.  Person 5 was personally present at the scene of the crime, confirmed that Ameen was the killer at the time of the crime, and gave under-oath testimony setting forth the details of the attack.  That he may also have been motivated to testify to seek a benefit does not obliterate the truthfulness of the testimony.  It is contradictory, impeaching evidence that is properly saved for

14

trial in Iraq, rather than in these extradition proceedings.

- **Defense Exhibit 104** (photographs of Ameen sent by TMF-1 to the defense). Same response as Defense Exhibit 100.

- **Defense Exhibit 113** (Whatsapp messages between TMF-1 and the defense interpreter). Same response as Defense Exhibit 100. To the extent the purpose of this exhibit is to impeach TMF-1 for his failure to send other inculpating documents, the impeachment of TMF-1 is irrelevant to these extradition proceedings, as well as constituting inadmissible contradictory evidence.

- **Defense Exhibit 115** (Whatsapp messages between Person 5 and defense interpreter). These text messages are a follow-on to the phone call documented in Defense Exhibit 90. In the texts, Person 5 asks about the money that he thought he had been offered in the previous call. These texts corroborate what Person 5 asserted happened in the defense contact—he perceived that he was offered money. The circumstances of the call are therefore suspect.

   The defense proffer of this exhibit is in support of an attempt to impeach Person 5 by arguing that his request for money shows bias or a propensity for fabrication. This allegation may be fodder for cross-examination in trial in Iraq—or Person 5 may simply be a young person in a war-torn region who needs funds, was offered money from what he perceived to be a viable source, and is now following up on that offer. Either way, the exhibit should be excluded because it constitutes inadmissible contradictory impeachment evidence.

- **Defense Exhibit 118** (FBI 302). This exhibit was not listed before the evidence cut-off date, and good cause has not been established for its late submission. The government provided this FBI 302 to the defense at the outset of the case. Nothing in this 302 obliterates probable cause as to the murder; it is simply one individual's opinion that Ameen does not have terrorist ties. It is contradictory of the allegation in the extradition request that Ameen is a known member of Al Qaeda and ISIS, and should therefore be excluded as impermissible impeachment evidence.

- **Defense Exhibit 119** (FBI 302). Same response as to Defense Exhibit 118.

- **Defense Exhibit 120** (FBI 302). Same response as to Defense Exhibit 118.

- **Defense Exhibit 121** (FBI 302). Same response as to Defense Exhibit 118.

   Because Ameen's proffered evidence "does not accept [Iraq's] evidence as true, it is

contradictory rather than explanatory within the meaning of extradition law."  *Solis*, 402 F. Supp. 2d at 1131.  This contradictory impeachment evidence should be excluded.

### F.     No Probative Value

The following exhibits should be excluded because they lack any meaningful probative value and/or relevance:

- **Defense Exhibit 86** (Defense Intelligence Agency FOIA response).  This exhibit establishes that the agency had no information responsive to the FOIA request sent by the defense.

- **Defense Exhibit 93** (Facebook messenger contact with Person 5).  Over Facebook messenger, the defense interpreter introduces himself to Person 5 only as "the interpreter for the legal team working on the Omar Ameen case here in America."  Pg. 2.  This introduction in no way lets Person 5 know that he is communicating with a member of the defense team and appears to be intentionally vague.  The interpreter then informs Person 5 that "one of the investigation experts who is working with us" would be calling, again failing to clarify that this is Ameen's defense team making contact.  In any event, the exhibit involves only the interpreter's attempts to arrange to speak with Person 5, and not any substantive discussion.

- **Defense Exhibit 94** (Whatsapp messages between Person 5 and defense interpreter).  Same response as Defense Exhibit 93.

- **Defense Exhibit 101** (Ameen California driver's license).  This exhibit contains a picture of Ameen that does not explain any of the evidence in the request.

- **Defense Exhibit 106** (alternative translation of the statement of Witness A in the extradition request).  The defense offers this alternative translation of Witness A's statement to raise questions about the authenticity of the statements in the extradition request.  However, the supplement to the extradition request makes very clear that the witness statements were taken personally by Judge Dhiya, under oath, the witnesses reviewed the statements, and then signed and imprinted.  There is no forgery or doctoring of the witness statements in the extradition request.  Furthermore, translations in extradition requests are presumed to be reliable.  *Ntakirutimana v. Reno*, 184 F.3d 419, 429-30 (5th Cir. 1999).  The Court should exclude this alternative translation.

16

- **Defense Exhibit 107** (alternative translation of the statement of Witness B in the extradition request).  Same response as to Defense Exhibit 106.

- **Defense Exhibit 108** (alternative translation of the statement of Person 5 in the extradition request).  Same response as to Defense Exhibit 106.

- **Defense Exhibit 112** (United States' search warrant application and affidavit).  The parties have previously litigated whether the United States' criminal search warrant materials should be part of these extradition proceedings.  CR 107, 135 and CR 136.  The United States maintains its position that the criminal and extradition cases are separate proceedings, designed for separate purposes, and the documents filed in each should be kept separate.[6]

- **Defense Exhibit 117** (remarks about the admission of refugees).  This exhibit was not included on the defense's exhibit list, and no good cause has been demonstrated for its late submission.  It should be excluded.  Alternatively, the defense proffers this exhibit for the purpose of advancing an argument that because Ameen was vetted as a refugee, he could not be a member of Al Qaeda or ISIS as alleged in the extradition request.  Nothing in these remarks mentions Ameen, though, nor are the remarks conclusive proof that Ameen did not slip through the vetting system—in large part by lying about and concealing his background.

- **Defense Exhibit 118** (FBI 302 of witness stating only Ghassan Amin was Al Qaeda affiliated).  This exhibit was not included on the defense's exhibit list, and no good cause has been demonstrated for its late submission.  This exhibit is irrelevant because it does not pertain to the crime charged.  Ameen's only point in offering it is as positive character evidence.  That this witness, who has not seen Ameen since the year 2000, and has no knowledge of his affiliations is not probative.  It is also contradictory of the evidence in the extradition request that Ameen was affiliated with Al Qaeda and ISIS.

- **Defense Exhibit 119** (FBI 302 of Ameen's relative who states he has no derogatory information about Ameen).  See response to Defense Exhibit 118.

- **Defense Exhibit 120** (FBI 302 of witness stating only Ghassan Amin was Al Qaeda affiliated).

---

[6] Furthermore, the defense now has access to Special Agent Buckmiller, the affiant on the search warrant, who has been noticed as a witness at the extradition hearing.

See response to Defense Exhibit 118.

- **Defense Exhibit 121** (FBI 302 of witness who only met Ameen after he moved to the United States).  This exhibit is irrelevant because this witness only has knowledge of Ameen from late 2014, after the allegations in the extradition request and after Ameen moved to the United States. See also response to Defense Exhibit 118.

- **Defense Exhibit 122** (photograph of Ameen and his family).  This exhibit was not included on the defense's exhibit list, and no good cause has been demonstrated for its late submission.  This photograph contains a date stamp of March 23, 2014, which is three months before the allegations in the extradition request and thus contains no probative value.  It should be excluded as irrelevant.

- **Defense Exhibit 123** (opinion relating to Iraqi law).  This exhibit was not included on the defense's exhibit list, and no good cause has been demonstrated for its late submission.  It should also be excluded as it is only appropriately directed to the Department of State, and not to the Court in these extradition proceedings.  *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc).

### G.     No Objection

The United States does not object to the admission of the following exhibits:

- **Defense Exhibit 78** (signatures from the extradition request).  This exhibit is selected pages from the extradition request that are already in evidence.

- **Defense Exhibit 80** (renumbered unredacted extradition request)  This document was already received into evidence at the extradition hearing.  The version of the extradition request contains new page numbers.  The United States has no objection to this document, but has already filed pleadings that use the numbering system on the original extradition request.  CR 137-1.

- **Defense Exhibit 105** (photograph of Omar Ameen from refugee application).  These documents each have already been filed before this Court in other places and are thus already part of the record.

- **Defense Exhibit 109** (affidavit of Special Agent J.P. Butsch).  This exhibit has already been filed by the United States and is already part of the record before the Court.

- **Defense Exhibit 110** (affidavit of Special Agent Phillip Coonfield).  Same response as Defense Exhibit 109.

- **Defense Exhibit 111** (affidavit of Special Agent Emerson Lopez-Fuentes).  Same response as Defense Exhibit 109.

- **Defense Exhibit 116** (selected signatures).  Same response as Defense Exhibit 98.

## II.   <u>THE COURT SHOULD EXCLUDE THE PROPOSED DEFENSE WITNESSES</u>

The defense has listed six potential defense witnesses.  At the recent status conference, the defense indicated that the hearing will not involve live testimony, but in an abundance of caution, the government briefly sets out its position regarding the testimony of the proposed witnesses.

### A.   <u>Handwriting Expert</u>

Either in the form of live testimony or in written form, handwriting expert evidence is inadmissible contradictory evidence and has no probative value for this Court.  The supplement to the extradition request (as corroborated by FBI Special Agent Butsch's affidavit) conclusively establishes that there are no forgeries in the extradition request.  *See* CR 194-1.  The recanting claims of Witnesses A and B that they did not sign the statements in the extradition request do not bear indicia of reliability and directly contradict the statement by Judge Dhiya that he witnessed them sign the statements they gave under oath before him.  It appears from the handwriting examiner's report that he made comparisons only related to Witness A and Person 5's signatures. Accordingly, any testimony by the handwriting expert suggesting that the signatures on certain  statements are, in his opinion, not those of Witnesses A or Person 5 would be contradictory and thus inadmissible.

The defense has indicated that the handwriting expert does not even know the true name of Person 5 (which the government appreciates was done out of respect for the Protective Order).  Notwithstanding his assertion that handwriting analysis, irrespective of a language difference, contains "many similar factors to consider," the handwriting expert cannot meaningfully analyze the signature markings in a language he likely does not speak.  Moreover, a review of the expert's qualifications reveals no readily identifiable training or experience related to the identification or analysis of foreign handwriting exemplars.  There may be legal or cultural reasons why a witness would sign his name differently in different places.  The handwriting expert cannot and does not provide an opinion in this

1   respect.  Person 5 may have evolved his signature over time, or may sign legal documents differently

2   than other documents—the handwriting expert would not be able to opine as to this issue either.  There

3   may be different people who have signed on to a document—for example, a judicial investigator—and

4   the handwriting expert would not be able to opine on that.

5          This Court is perfectly competent to visually compare whatever signatures the defense wishes to

6   highlight without the aid of expert testimony.  For this reason, and the reason that the attempt to bolster

7   a forgery argument flatly contradicts the supplement to the extradition request, the Court should exclude

8   the proposed testimony, in written or verbal form.

9          **B.**    **Cell Phone Forensics Expert**

10         The United States has not received any report or information about a potential defense cell phone

11  forensics expert to date.  Such an expert would testify about the contents of the victim's cell phone, the

12  relevance of which the defense has not established.

13         **C.**    **TMF-1**

14         The defense did not bring up the proposed testimony of TMF-1 at the status conference.  TMF-1

15  is an alien located outside the United States and, therefore, cannot be subpoenaed to appear at the

16  continued extradition hearing.  *United States v. Pemkova*, 731 F. App'x 620, 623 n.3 (9th Cir. 2018)

17  ("The district court's subpoena power over witnesses located outside the country extends only to

18  potential witnesses who are United States nationals or residents."); *United States v. Moussaoui*, 382 F.3d

19  453, 463-64 (4th Cir. 2004) (noting "the well established and undisputed principle that the process

20  power of the district court does not extend to foreign nationals abroad"); *United States v. Filippi*, 918

21  F.2d 244, 246 (1st Cir. 1990) ("The United States has no subpoena power over a foreign national in a

22  foreign country."); *cf.* 28 U.S.C. § 1783(a) (allowing for extraterritorial service of witness subpoenas

23  only on "a national or resident of the United States").  Nor can the government be required to produce

24  him.  *United States v. Sedaghaty*, 728 F.3d 885, 917 (9th Cir. 2013) ("[T]he district court had no

25  authority to order the Executive Branch to invoke the treaty process to obtain evidence abroad for a

26  private citizen.").

27         Moreover, TMF-1's testimony at the hearing is unnecessary.  Ameen has already had an

28  opportunity to question TMF-1.  Defense Exhibit 92.  He has also posed additional written questions to

20

the FBI Special Agents about TMF-1.  To the extent the Court is inclined to admit any evidence by or about TMF-1, these two avenues—the previous phone contact with the witness and the questions to the FBI Special Agents—are evidence already available to Ameen and an adequate substitute for live testimony.

**D.      FBI Special Agents**

Given the Court's Order (CR 160 pg. 22), the United States is prepared to present the testimony of the FBI Special Agents at the extradition hearing; the agents have booked travel.  However, as an alternative, the defense has sent the government 52 written questions for four FBI Special Agents.  The government objects to the substance of these questions, as they are an effort to obtain discovery in this case that has not been ordered.  The government intends to respond to the questions not out of any obligation to divulge any additional information in its possession, but in an effort to bring the factual record in this case to a close and proceed to the continued extradition hearing as expeditiously as possible.

Dated:  November 25, 2019

McGREGOR W. SCOTT
United States Attorney

By:   */s/ Audrey B. Hemesath*
AUDREY B. HEMESATH
HEIKO P. COPPOLA
Assistant United States Attorneys

CHRISTOPHER J. SMITH
Associate Director
REBECCA A. HACISKI
Trial Attorney
Office of International Affairs

21