UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATAR AMEEN TO THE REPUBLIC OF IRAQ | No.  2:18-mj-152-EFB<br><br>ORDER |

### **The Current Status Report**

Previously, on April 30, 2020, the court entered an order setting a deadline of June 29, 2020 for a status update regarding the defense's outstanding request, via letters rogatory, to the government of Turkey for Mr. Ameen's cellular data, including cellular location data. ECF No. 268. On June 29, 2020, the defense filed a status report indicating that its request for the data was still pending before the relevant Turkish authorities. ECF No. 269 at 1. That report also stated that the defense had been in contact with the Department of State and received assurances therefrom that the Turkish officials had "received and [are] working on the request." *Id.* In light of the foregoing, the defense requests that the court set a new status report deadline of August 28, 2020. *Id.* at 2.

### **The Government's Response**

The government has filed an opposition to the defense request wherein it states that it opposes any further delay in the issuance of a certification decision. ECF No. 270. It does so on two grounds.

/////

First, it argues that the cell data, even if received, would amount only to contradictory evidence which would not obliterate probable cause. *Id.* at 2. The government states that, assuming cell data shows Ameen's phone was in Turkey on the date of the murder, it would not prove that Ameen himself was in Turkey. *Id.* at 4-5. It notes the possibility that some other person might have been using the phone at that time and contends that resolution of that issue is reserved for trial. *Id.* at 5.

Second, it argues that there is no guarantee that the Turkish government will provide the data insofar as letters rogatory are based on comity and the government cannot compel when or whether the Turkish authorities provide a final response to the defense request. *Id.* at 3. In so doing, it quotes the most recent defense status report and takes it to task for suggesting that the records would "immediately be provided upon a request from the United States government." *Id.* (quoting ECF No. 269 at 1-2). It notes that the Turkish letter which stated that any request for the records should be made by letters rogatory (ECF No. 255-2) never actually confirmed that the records were available at all, much less immediately. ECF No. 270 at 3. The government argues that the uncertainty as to when or whether a Turkish response will be forthcoming militates against any further delay – lest the delay become "indefinite." *Id.* at 5-6. The government cites three cases – (1) *United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 213 (S.D.N.Y. 2015); (2) *United States v. Bastanipour*, 697 F.2d 170, 178 (7th Cir. 1982); and (3) *United States v. Croft*, 124 F.3d 1109 (9th Cir. 1997) – in which other courts declined to allow other, similar delays to reach "indefinite" status.

## **Defense Reply**

In its reply, the defense emphasizes that the single greatest contributor to the delay in these proceedings is the government's own bureaucratic mishandling of the Turkish letter. ECF No. 271 at 1-3. It argues that since the mishandling resulted in an eight-month delay in being apprised of the Turkish letter, at least that amount of time should be afforded the defense to procure the cell data. *Id.* at 7. It also points out that federal courts, including the United States Supreme Court have recognized that cell phone location data is a reliable method of tracking an individual. *See Carpenter v. United States*, 138 S.Ct. 2206, 2218 (2018). Finally, it correctly

argues that the status report never suggested – as the government contends it did - that the records would be provided "immediately."  *See* ECF No. 269 at 1-2.  The report does note that, once the mishandling of the Turkish letter was made known to the defense and the court, the letters rogatory were "*immediately conveyed*" to the Turkish authorities.  *Id.* at 2 (emphasis added).  The government's insertion of "immediately" into a different sentence in the status report is clearly erroneous.

## **Analysis**

The defense request to set a new status report deadline of August 28, 2020 is granted.

First, the court has already rejected the government's argument that the cell data – no matter what it shows – would amount only to contradictory or non-obliterative evidence.  *See* ECF No. 257 at 2.

Second, the court is aware that the holding pattern in this case cannot persist indefinitely.  It is not convinced, however, that granting the defense request for additional time is impractical or inequitable.  Much of the delay in this admittedly long-lived case is attributable to either the government or the Iraqi authorities.  The parties and the court, at the government's behest, previously spent a great deal of time litigating issues of redaction.  Then, the proceedings were delayed while awaiting submission of a supplemental extradition packet by the Iraqi government.  Finally, the issue at hand could likely have been resolved long ago if the government had not mishandled the Turkish letter.

Third, the cases cited by the government in support of moving immediately to the issuance of a certification decision are, in light of the circumstances of this case, unconvincing.  In *Bastanipour*, the foreign government at issue was Iran and there was substantial reason to believe that, given the adversarial relationship between the two nations, Iran would not respond to a letter rogatory.  697 F.2d 170, 178 (7th Cir. 1982) ("Given the strained relations between Iran and the United States, the likelihood of a reasonably prompt response was never very good.").  The same strain is not present between the United States and Turkey.  In *Al Fawwaz*, the court stated that one of its rationales for declining al Fawwaz's request for postponement was that he had been slow to seek the letters rogatory at issue.  116 F. Supp. 3d 194, 213 (S.D.N.Y Feb. 19, 2015)

("Thus, al Fawwaz did not even seek letters rogatory— the only even potentially viable means of obtaining what he seeks, assuming it exists — until at least nine months after he was presented to this Court.  His delay weighed against a further postponement.").  Here the opposite is true – the defense was diligent in seeking the cellular data and the government's bureaucratic mismanagement confounded those efforts.  Similarly, in *Croft*, the U.S. Court of Appeals for the Ninth Circuit noted that the defendants had made their motion to depose a witness located in Germany only five weeks before trial.  124 F.3d 1109, 1118 (9th Cir. 1997) ("The first factor does not favor Croft and Hagan; they made their motion for deposition only five weeks before trial. It is true that the district court held the motion four weeks before denying and then reconsidering it, but it is not clear from the record that the deposition could have been arranged within five weeks.").  Again, the defense efforts in this case were substantially impeded by the government's failure to timely produce the Turkish letter.

Accordingly, it is ORDERED that on or before August 28, 2020 the defense shall file an updated status report apprising the court of its ongoing attempts to obtain Mr. Ameen's Turkcell records.

DATED:  July 15, 2020.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE