HEATHER E. WILLIAMS, State Bar #122664
Federal Defender
BENJAMIN D. GALLOWAY, #214897
Chief Assistant Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
OFFICE OF THE FEDERAL DEFENDER
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax 916-498-5710
rachelle.barbour@fd.org

Attorneys for Defendant
OMAR ABDULSATTAR AMEEN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ, | Case No.  2:18-mj-152 EFB |
| | THIRD SUPPLEMENTAL EXTRADITION HEARING BRIEF; EXHIBITS 160 TO 166 |
| | Judge:  Hon. Edmund F. Brennan |

TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    EXPLANATION OF RECORDS OBTAINED FROM THE TURKISH GOVERNMENT
       PURSUANT TO LETTER ROGATORY .......................................... 2

III.   THE CELL PHONE RECORDS PROVE THAT MR. AMEEN DID NOT KILL MR.
       JASIM ............................................................................................. 3

       A.    MR. AMEEN WAS IN MERSIN, TURKEY – NOT RAWA, IRAQ – ON THE
             DAY OF MR. JASIM'S MURDER ....................................... 3

       B.    THE CELL PHONE RECORDS PROVE THAT MR. AMEEN WAS EXACTLY
             WHERE HE WAS SUPPOSED TO BE – IN TURKEY – THROUGHOUT
             SUMMER 2014 ............................................................... 11

             1.    Omar Ameen Was Clearly in Mersin, Turkey the Day Before Mr. Jasim's Murder in
                   Iraq ............................................................................ 12

             2.    The Cell Phone Records Corroborate Omar Hamid's Sworn Declaration that Mr.
                   Ameen was in Turkey all of June 2014 with Mr. Hamid ......................................... 12

             3.    The Cell Phone Records Corroborate the Sign-in Sheets from the Mersin
                   Immigration Office ............................................... 14

             4.    The Cell Phone Records Corroborate the Sworn Declaration from Hudhayfah
                   Ameen that He Spoke with Omar in Turkey in Late June 2014 ............................. 14

             5.    The Cell Phone Records Show that Omar Was in Turkey When He Spoke with the
                   UNHCR in Late June 2014 ................................... 15

             6.    The Cell Phone Records Allowed the Defense to Contact Mr. Ameen's Turkish
                   Employers and Confirm that He Worked for Them in Late June 2014 ................. 16

             7.    The Patterns in the Phone Records Prove that Mr. Ameen Used His Cell Phone in
                   Turkey Throughout Summer 2014, Including Close to the Date of the Murder ..... 18

IV.    THE CELL PHONE LOCATION RECORDS OBLITERATE PROBABLE CAUSE... 22

V.     CONCLUSION ............................................................................. 25

TABLE OF AUTHORITIES

*ACLU v. Clapper*,
   785 F.3d 787, 824 (2d Cir. 2015) ....................................................... 9, 10

*Carpenter v. United States*,
   138 S.Ct. 2206 (2018) ...................................................................... 9, 26

*In re Extradition of Paberalius, No. 10M275*,
   2011 U.S. Dist. LEXIS 57907 (N.D. Ill. May 31, 2011)........................ 23

*In re Extradition of Singh*,
   170 F. Supp. 2d 982 (E.D. Cal. 2001) ............................................... 24

*In re Extradition of Strunk*,
   293 F. Supp. 2d 1117 (E.D. Cal. 2003) ............................................. 24

*In re Gonzalez*,
   52 F.Supp.2d 725 (W.D. La. 1999) .................................................. 25

*In re Mazur*,
   2007 U.S. Dist. LEXIS 52551 (N.D. Ill. July 20, 2007) ...................... 23

*In re Monroy, No. 1:06-CV-00418 OWW*,
   2006 U.S. Dist. LEXIS 65815 (E.D. Cal. Aug. 30, 2006) .................... 24

*In re Muñoz Santos*,
   228 F.Supp.3d 1034 (C.D. Cal. Jan. 9, 2017) ................................... 24

*In re Rodriguez Ortiz*,
   444 F.Supp.2d 876 (N.D. Ill. 2006) ................................................. 24

*In re Tel. Info. Needed for a Criminal Investigation*,
   119 F. Supp. 3d 1011 (N.D. Cal. 2015) ........................................ 4, 10

*Mainero v. Gregg*,
   164 F.3d 1199 (9th Cir. 1999) ........................................................ 24

*Quinn v. Robinson*,
   783 F.2d 776 (9th Cir. 1986) .......................................................... 24

*Republic of France v. Moghadam*,
   617 F. Supp. 777 (N.D. Cal. 1985) .............................................. 24, 25

*Riley v. California*,
   134 S. Ct. 2473 (2014) .................................................................. 10

*Riley." United States v. Ellis*,
   270 F. Supp. 3d 1134 (N.D. Cal. 2017) ........................................... 10

*United States v. Cooper*,
   2015 U.S. Dist. LEXIS 25935 (N.D. Cal. Mar. 2, 2015) ................ 10-11

*United States v. Graham*,

1

824 F.3d 421 (4th Cir. 2016) ................................................................... 10

2

*United States v. Moalin*,
973 F.3d 977 (9th Cir. 2020) ................................................................... 9

3

*United States v. Thomas*
2015 U.S.Dist. LEXIS 139722 (E.D.Va. Oct. 13, 2015) ........................ 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HEATHER E. WILLIAMS, State Bar #122664
Federal Defender
BENJAMIN D. GALLOWAY, #214897
Chief Assistant Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
OFFICE OF THE FEDERAL DEFENDER
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700/Fax 916-498-5710
rachelle.barbour@fd.org

Attorneys for Defendant
OMAR ABDULSATTAR AMEEN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF OMAR ABDULSATTAR AMEEN TO THE REPUBLIC OF IRAQ, _____/ | Case No.  2:18-mj-152 EFB<br><br>THIRD SUPPLEMENTAL EXTRADITION HEARING BRIEF; EXHIBITS 160 TO 166<br><br>Judge:  Hon. Edmund F. Brennan |

## I.    INTRODUCTION

Omar Ameen has been in custody since August 15, 2018, held on an extradition warrant from Iraq for a murder that he did not commit.  The Defense has produced overwhelming evidence of his innocence.  Mr. Ameen was in Mersin, Turkey at the time of the killing of Ihsan Jasim in Rawah, Iraq.  Mr. Ameen lawfully entered Turkey in Spring 2012 and never left until he flew to the United States with his family as a refugee in November 2014.  Witness statements, social media records, refugee records, immigration records, and now, phone records prove that Mr. Ameen was in Turkey at the time of the murder.

Moreover, investigation of the Iraqi murder shows that Mr. Ameen simply was not involved: The Government's own witness has stated that the murder was committed by an ISIS commander with long hair whom he saw in Iraq well before and after the murder.  Meanwhile Mr. Ameen – who is not an ISIS commander and has nothing to do with the Islamic State – lived his life in Turkey.  Whatever the motives for trying to identify the murderer as Mr. Ameen, it is

clear that he is innocent.

The Turkish cell phone records that the Court has anticipated for almost two years prove Omar's innocence.  Omar Ameen's very detailed cell phone records, produced by the Information and Communications Technology Ministry of the Turkish Government pursuant to the Court's letter rogatory, document his life in Turkey and prove that he was at his home in Mersin the day of the murder, within an hour of the tragic event.  The patterns presented by the records, in the form of repeated calls with friends, family, and coworkers, contact with refugee agencies, and location data at Mr. Ameen's Mersin home, his route to work, and other Mersin locations, prove beyond dispute that Mr. Ameen was in Mersin and had nothing to do with Mr. Jasim's murder.  Mr. Ameen is innocent.  He asks the Court to deny certification and order his release.

## II.   EXPLANATION OF RECORDS OBTAINED FROM THE TURKISH GOVERNMENT PURSUANT TO LETTER ROGATORY

To facilitate the Court's review of the cell phone records, the Defense will take a moment to explain exactly what was received from the Turkish Government.  First, it is important to note that these records were obtained directly from the Turkish BTK, the Turkish Information and Communications Technology Ministry to which the Court addressed a prior letter rogatory.  (Docs. 99, 100.)  In Turkey, cell phone service providers must send this data to the BTK for preservation.  The BTK provided the records in two forms: PDF and Excel.  In total, four files were received from the Turkish Government: two PDFs and two Excel spreadsheets.

Each PDF received from the Turkish Government matches to an Excel file.  One PDF/Excel contains a list of calls with <u>Omar's</u> cell tower location.  (Exh. 160 [PDF], 161 [Excel].)  The other PDF/Excel contains a list of the same calls with the cell tower location of the other party.  (Exh. 162 [PDF], 163 [Excel].). The PDFs are being filed in Pacer with English translations.  The Excel versions will be emailed to the Court and submitted on a CD for the record.  Exhibits 160 and 161 demonstrate Omar's locations from May 1 to August 30, 2014.  Exhibits 162 and 163 demonstrate the locations of Omar's friends, family, acquaintances, and employers during their calls with him.  They are helpful for providing context and corroborating that Omar's phone was in his hand when he was on these calls.

Because of the detail and density of this data, the Defense also attaches, at Exhibit 164, summaries of the records showing the timing, frequency, and location of calls during this critical time.  Exhibits 165 and 166 are statements by Mr. Ameen's employers, who verified to Turkish counsel that Mr. Ameen was answering his phone and available for work during the relevant period.

The Court has repeatedly and emphatically stated that these records matter to its analysis of whether to certify Mr. Ameen's extradition to Iraq.  (Court Orders at Doc. 257, p. 2 ["The court thought the Turkcell records worthy of investigation when it issued the Letter Rogatory in February 2019. It has not been given cause to re-think that assessment in the intervening months."], Doc. 273, p. 3 ["The court has already rejected the government's argument that the cell data – no matter what it shows – would amount only to contradictory or non-obliterative evidence."], Docs. 276, 279, 282 [reiterating rationale in prior Orders]).  The voluminous information in these records validates the Court's patience and obliterates probable cause.

## III.   THE CELL PHONE RECORDS PROVE THAT MR. AMEEN DID NOT KILL MR. JASIM

### A.   MR. AMEEN WAS IN MERSIN, TURKEY – NOT RAWA, IRAQ – ON THE DAY OF MR. JASIM'S MURDER

On the very day of Mr. Jasim's murder in Iraq, Omar Ameen was in Mersin, Turkey.  He received two phone calls on that day, both of which connected to his phone through the cell tower closest to his home.  One phone call was received at 2:23 p.m., and the second at 8:37 p.m., within an hour of Mr. Jasim's murder.  (Exh. 164, Fig. A.)

| Date/Time | Duration | Other Party | Cell Tower – Omar's Phone |
|---|---|---|---|
| 22.06.2014 14:23:37 | 31 sn. | AHMED HUSSEIN | 6043328427 - opr:Turkcell(DETAS11) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 22.06.2014 20:37:15 | 43 sn. | FALAH MAHDİ AHMED AHMED | 4203343474 - opr:Turkcell(DETAS1) - 77030 SOK NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |

1    As previously established through official Turkish and United States Government

2    records, Mr. Ameen's family lived at 78057 Sokok Turunçlu, 33090 Toroslar, Mersin, Turkey.

3    (Exh. 11-I [official Turkish residency permit], Exh. 11-M, p. 19 [U.S. State Dept. record]).  The

4    cell tower at 77030 Sokok No. 61 in Toroslar, Mersin, is about 350 meters away from the Ameen

5    home.[1]  (Exh. 164, Fig. B.)



**Distance Between 77030 Sokok Cell Tower and Ameen Home**

---

[1]    In In re Tel. Info. Needed for a Criminal Investigation, 119 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015), the District Court for the Northern District of California explains cell site location information (CSLI).  The court discusses how a single tower at a particular location can have more than one site to which a cell phone can connect.  Accordingly, the tower at 77030 Sokok No. 61, includes the sites listed in the records as DETAS1, DETAS11, DETAS12, all at that address.

Ameen – Third Supp. Brief                    4

The 77030 Sokok tower was used by Omar Ameen for 153 calls during the 4-month period encompassed by the records, far more than any other cell tower in Mersin.  (Exh. 164, Fig. C.)



**Number of Calls at 77030 Sokok Cell Tower**

The 77030 Sokok tower was used by Omar late at night and first thing in the morning, again reflecting his home location.  (Exh. 164, Fig. D.)   As the chart below shows, Omar's peak phone times at home were at lunch and in the evenings, including after 11:00 p.m.



**TIME DISTRIBUTION, LENGTH, AND NUMBER OF OMAR'S CALLS AT HOME FROM 06:00h TO 24:00h**

The tower was also used consistently by the cell phone belonging to Omar's wife, Khansaa Sabri, for her phone calls with Omar when he was out of the house.  Of Ms. Sabri's 27 calls with Omar during Summer 2014, she used the home cell tower at 77037 Sokok for 19 of them.  (Exh. 164, Fig. E.)



**Cell Tower Use by Khansaa Sabri**

Moreover, most of Omar's longest phone calls involved this home cell tower, consistent with him catching up with friends and relatives while at home, while using his phone away from home for shorter calls and more practical purposes.  Of the 70 phone calls in Mersin over 5 minutes long, 45 used Omar's home cell tower. (Exh. 164, Fig. F.)



Ameen – Third Supp. Brief                    6

The 77030 Sokok tower was used for many of Omar's important calls, including the calls with the UNHCR and the ICMC regarding his refugee application.  (Exh. 164, Fig. G.)

| | | |
|---|---|---|
| 21.05.2014 12:19:13 | BİRLEŞMİŞ MİLLETLER MÜLTECİLER YÜK. KOMS **[UNHCR]** | 4203343474 - opr:Turkcell(DETAS1) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 21.05.2014 12:37:15 | ULUSLARARASI KATOLİK MUHACERAT KOMİSY ONU. **[ICMC]** | 4203343474 - opr:Turkcell(DETAS1) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 21.05.2014 12:38:21 | ULUSLARARASI KATOLİK MUHACERAT KOMİSY ONU. **[ICMC]** | 6013328427 - opr:Turkcell(DETAS11) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 21.05.2014 12:39:32 | ULUSLARARASI KATOLİK MUHACERAT KOMİSY ONU. **[ICMC]** | 6013328427 - opr:Turkcell(DETAS11) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 21.05.2014 12:40:38 | ULUSLARARASI KATOLİK MUHACERAT KOMİSY ONU. **[ICMC]** | 6013328427 - opr:Turkcell(DETAS11) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 26.06.2014 10:24:24 | BİRLEŞMİŞ MİLLETLER MÜLTECİLER YÜK. KOMS **[UNHCR]** | 6043328427 - opr:Turkcell(DETAS11) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |

Turning again to June 22, 2014, the day of Mr. Jasim's murder in Iraq, Omar participated in a phone call in Mersin, Turkey at 20:37:15, or in other words, 8:37 p.m.[2]  The victim's last text in Iraq was at 8:03 p.m.  (Exh. 149.)  That outgoing text to a known acquaintance is the last sign on Mr. Jasim's cellphone that he was alive – after that, the only texts are incoming and unread.  Accordingly, the victim's cell phone indicates that he was murdered soon after 8:00 p.m. in Iraq.  Omar Ameen was talking on the phone in Mersin, Turkey through the 77030 Sokok tower within an hour of Jasim's murder in Iraq.  (Exh. 164, Fig. A.)

Further, as discussed in the Defense's Extradition Brief at Docket 142, Mr. Ameen was on Facebook almost daily in June 2014, including on the day of the crime. (Exh. 20.) Facebook data indicates that Mr. Ameen used Facebook on June 22, 2014, at 14:03:19 in Turkey.[3]  This

---

[2]    Turkey and Iraq share a time zone.

[3]    The time stamp of 4:03 a.m. on this image occurred because the download of the information in Sacramento converted the information to California time, ten hours before Turkish time.

interaction on Facebook is very close in time to the phone call Mr. Ameen received twenty

minutes later at 14:23 on the day of the murder.



This gives the Court an additional datapoint for Mr. Ameen in Turkey on the day of Mr.

Jasim's murder in Rawah.  Facebook had been blocked in Anbar province that weekend by the

Iraqi Government.  (Exh. 22.). The Facebook post confirms that Omar's phone was being used

by him in Mersin, Turkey the day of Jasim's murder.

The cell site location records provide overwhelming proof of Mr. Ameen's innocence.

No less an authority than the U.S. Supreme Court has called this type of historical cell phone data, "near perfect surveillance." Carpenter v. United States, 138 S.Ct. 2206, 2210 (2018). These "deeply revealing" records, provide Mr. Ameen's location, habits, and associations in Turkey during this time. Carpenter, 138 S.Ct. at 2223. This data provides "an all-encompassing record of the holder's whereabouts" over a significant period of time. Carpenter, 138 S.Ct. at 2217; see also United States v. Moalin, 973 F.3d 977, 991 (9th Cir. 2020). Telephone metadata "as applied to individual telephone subscribers, particularly with relation to mobile phone services and when collected on an ongoing basis with respect to all of an individual's calls . . . permit something akin to . . . 24-hour surveillance . . . ." Moalin, 973 F.3d at 991 quoting ACLU v. Clapper, 785 F.3d 787, 824 (2d Cir. 2015).

The cell phone records document Omar's life in Turkey during the Summer of 2014. (Exh. 164, Fig. H.)



**Omar Ameen's Cell Phone Locations May through August 2014**

"CSLI, like GPS, can provide the government with a 'comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations.'" Riley v. California, 134 S. Ct. 2473, 2490 (2014) quoting Jones, 132 S. Ct. at 955 (Sotomayor, J., concurring) ("[h]istoric location information . . . can

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

reconstruct someone's specific movements down to the minute").  Omar's cell phone records document his closest associations with his wife Khansaa, and friends in Mersin and Istanbul. They show that Omar was pursuing his refugee application and had calls with the UNHCR and ICMC.  They correctly track Omar's location between Mersin and Istanbul on exactly the dates the Government agrees he was there in connection with his refugee application.  They completely align with Omar's employers and his route to work.  Omar's cell phone records give us a day-by-day accounting of his movements in Turkey because they "act as a close proxy to one's actual physical location because most cell phone users keep their phones on their person or within reach, as the Supreme Court recognized in Riley." United States v. Ellis, 270 F. Supp. 3d 1134, 1145 (N.D. Cal. 2017).

Cell tower location information is powerful evidence used by the U.S. Government extensively against criminal suspects.  According to U.S. DOJ Cybercrime Coordinator and National Security Cyber Specialist Edward J. McAndrew, "Cell site information is … one of the building blocks to establish probable cause and support obtaining things like search warrants and, eventually, charges."  "Location data generated by cell phones, which are ubiquitous in this day and age, can reveal a wealth of private information about an individual." In re Tel. Info. Needed for a Criminal Investigation, 119 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015).  The U.S. Government has time and time again obtained and introduced cell phone records just like these against criminal defendants. See e.g., United States v. Graham, 824 F.3d 421, 424 (4th Cir. 2016) (Government used CSLI to place defendants in the vicinity of the armed robberies when the robberies occurred); United States v. Thomas 2015 U.S.Dist. LEXIS 139722, at *10 (E.D.Va. Oct. 13, 2015) ("The CSLI demonstrated that Thomas's phone had been in the vicinity of the same cellular tower as Walker's cell phone on the morning of the November 11, 2014 robbery.")

Mr. Ameen's phone transmitted "enormous amounts of data, detailing the phone-owner's physical location any time he . . . places or receives a call." United States v. Cooper, 2015 U.S. Dist. LEXIS 25935, at *23 (N.D. Cal. Mar. 2, 2015).  The data provided by the Turkish Government for Mr. Ameen's cell phone is extensive and detailed.  Clapper, 785 F.3d at 797.

These Turkish cell phone records would be enough to obliterate probable cause even without the dozens of alibi exhibits already admitted by the Court. However, taken together, the prior exhibits and cell phone records conclusively corroborate each other. The context of the call records, their regularity in place and association, and their consistency with important, undisputed details of Omar's life, render them definitive.

As of a few weeks ago, the Government appeared ready to argue that this cell phone evidence does not prove that Mr. Ameen was in Mersin, but rather only that his phone was. The Defense hopes that the Government will seriously consider this evidence, along with everything else the Defense has provided, and reconsider this extradition case. This is exactly the type of "meritorious, admissible, concrete information" that the Government has previously promised to "carefully evaluate." (Doc. 21, p. 10, n. 8.).

Mr. Ameen's phone cannot roam around Mersin without him, making and receiving calls to his family, friends, and employers. It would be beyond ludicrous for the Government to argue that Mr. Ameen obtained a body double, who slept in his apartment with his wife and kids, worked for his employers, and met and spoke with his friends and relatives in consistent ways throughout this time period. The specificity of this evidence, by location, time, and with respect to what has already been proven about Mr. Ameen's life in Mersin, corroborates everything else that Mr. Ameen has presented: the sign-in sheets, the phone calls with refugee programs, the declarations by those who know him in Mersin. The pattern of the calls – their locations, the other parties, and their corroboration with copious Defense evidence – makes it clear that Omar had the phone in his hand during this time and that he never left Turkey. It is critical for the U.S. Government to stand as a beacon of justice in the world, especially when it comes to criminal justice. The proof is clear, Mr. Ameen is innocent.

**B. THE CELL PHONE RECORDS PROVE THAT MR. AMEEN WAS EXACTLY WHERE HE WAS SUPPOSED TO BE – IN TURKEY – THROUGHOUT SUMMER 2014**

As on the day of the murder, the calls logs show that Mr. Ameen was in Mersin, Turkey throughout Summer 2014. These calls include contact with Turkish citizens that employed him (Mehmet Konar and Yüksel Eroğlu), his friends (Omar Hamid, Yacer Ede in Mersin; Hassan

Abdulhadi Ammar and his brother in Istanbul, among others), his wife, his brother Hudhayfah who was in Istanbul for business the week of the murder, and other acquaintances from Iraq, like Falah Mahdi Ahmed, who spoke frequently with Omar from Adana (the next town over) about the status of his refugee application, including on the day of Jasim's murder.

### 1. Omar Ameen Was Clearly in Mersin, Turkey the Day Before Mr. Jasim's Murder in Iraq

The day prior to Mr. Jasim's murder in Iraq, Omar Ameen had five phone calls in Mersin, Turkey.  (Exh. 164, Fig. I.)

| 21.06.2014 10:39:27 | 770 sc. | FALAH MAHDİ AHMED AHMED | 6043328427 - opr:Turkcell(DETAS11) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
|---|---|---|---|
| 21.06.2014 11:22:00 | 73 sc. | "Record not found"[4] [HUDHAYFAH AMEEN] | 6043328428 - opr:Turkcell(DETAS12) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 21.06.2014 12:40:44 | 488 sc. | AHMED HUSSEIN | 6043328428 - opr:Turkcell(DETAS12) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 21.06.2014 13:57:22 | 1030 sc. | HASSAN ABDULHADI AMMAR AMMAR | 6043328428 - opr:Turkcell(DETAS12) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 21.06.2014 19:06:07 | 179 sc. | AHMED HUSSEIN | 6033342262 - opr:Turkcell(KUMEZ22) - KÜLTÜR MAH (MERKULTURMER) AKDENIZ,MERSIN |

Four of the phone calls connected through the home cell tower, 77030 Sokok.  The fifth call connected through a tower near the Mersin waterfront near sunset.  The phone calls included substantive conversations lasting up to 18 minutes.

### 2. The Cell Phone Records Corroborate Omar Hamid's Sworn Declaration that Mr. Ameen was in Turkey all of June 2014 with Mr. Hamid

The phone records corroborate other powerful evidence that the Defense has provided.  Notably, witnesses have provided declarations swearing under penalty of perjury that Mr. Ameen was in Mersin, Turkey in late June 2014. These witnesses include Omar Hamid, who also lived

---

[4]       This phone call was with Hudhayfah Ameen, Omar's brother, as documented by the cell phone number on the call and Hudhayfah's declaration.  Calls with Hudhayfah are discussed more extensively below.

in Mersin, Turkey at the time and who appears throughout Mr. Ameen's cell phone records as Omar Hamid Altarash. (Exh. 4.)  This is the same name as on the official court proceeding paperwork provided to the Court as Exhibit 5.  (See also Exh. 114 (indicating that Government has evidence corroborating Mr. Hamid's statements).)  During the four months encompassed by the records, Omar Ameen spoke with Omar Hamid 41 times, including when Ameen was in Istanbul pursuing his refugee application.  Their calls show real conversations lasting up to 47 minutes, throughout the summer.

Omar Hamid declared under oath that he saw Mr. Ameen nearly every day in Mersin. Notably, he stated that on days that they did not see each other, they would talk on the phone to check in.  (Exh. 4, para. 5.)  He noted that they saw each other or spoke every day.  The cell phone records corroborate this. In June 2014, when Mr. Hamid was most worried about his hometown of Mosul and his family, he and Omar had the least number of phone calls, indicating, per Mr. Hamid, that they were seeing each other in person.  During the rest of the summer, they spoke more on the phone, including many calls when Omar Ameen was in Istanbul in connection with his refugee application.  This confirms Mr. Hamid's sworn declaration that when they did not see each other, they spoke on the phone.  In fact, over the days that Mr. Ameen spent in Istanbul in early July at the USCIS medical appointments and ICMC cultural orientation, he and Mr. Hamid spoke every day.

| 07.07.2014 19:06:13 | 233 | OMAR AHMED HAMİD ALATRASH | 138349080 - opr:Turkcell(BEYME1) - MESRUTIYET CAD HOTEL LODGE NO 201 BEYOGLU (ISTBEYOGMESRUTI) BEYOĞLU,İSTANBUL |
| 08.07.2014 21:44:03 | 46 | OMAR AHMED HAMİD ALATRASH | 6233428006 - opr:Turkcell(BEYME22) - MESRUTIYET CAD HOTEL LODGE NO 201 BEYOGLU (ISTBEYOGMESRUTI) BEYOĞLU,İSTANBUL |
| 09.07.2014 17:52:49 | 584 | OMAR AHMED HAMİD ALATRASH | 6233428003 - opr:Turkcell(BEYME11) - MESRUTIYET CAD HOTEL LODGE NO 201 BEYOGLU (ISTBEYOGMESRUTI) BEYOĞLU,İSTANBUL |
| 10.07.2014 17:12:40 | 113 | OMAR AHMED HAMİD ALATRASH | 643345889 - opr:Turkcell(MALTP21) - DEMIRKAPI CAD. NO:13, HAVAS SANAYI SITESI TOPÇULAR EYÜP (ISTMALTEPEHAVAS) EYÜP,İSTANBUL |

Mr. Hamid and Mr. Ameen saw each other nearly every day in June 2014.  Mr. Hamid and Mr. Ameen spoke on the phone the evening of June 19, 2014, which was the Thursday before Mr. Jasim's murder.  Mr. Ameen was in Mersin, as was Mr. Hamid.  (Exh. 164, Fig. K.)

| Date/Time | Sec. | Ameen Location | Hamid Location |
|---|---|---|---|
| 19.06.2014 14:12:00 | 93 | 4223358647 - opr:Turkcell(MSOLI4) - SOLİ CİVARI AKDENIZ MAH GMK BULVARI SOLI CIVARI FLORA SAHIL SITESI  A BLOK MEZITLI/MERSIN AKDENİZ MAH MEZITLI (MERSOLI) MEZITLI,MERSIN | 6033342262 - opr:Turkcell(KUMEZ22) - KÜLTÜR MAH (MERKULTURMER) AKDENIZ,MERSIN |

According to Mr. Hamid's sworn declaration, they would have seen each other in person over the weekend.  Mr. Ameen's cell phone frequently used the cell tower location most used by Hamid's cell phone, Kültür Mah, including on the evening before Mr. Jasim's murder.  (Exh. 164, Fig. I.)  Mr. Hamid and Mr. Ameen did not have a phone call on June 22, 2014, indicating that they must have seen each other in person in Mersin that day.

### 3. The Cell Phone Records Corroborate the Sign-in Sheets from the Mersin Immigration Office

Every Thursday, Mr. Ameen and other Iraqi refugees in Mersin, Turkey, would go to the Mersin Immigration Office (also known as the Foreigner's Police) to sign-in with the police and prove their continued presence in Mersin.  (Exh. 11-T (sign-in sheets).)  In June, the relevant Thursday dates would have been June 19, 2014 (the Thursday before the murder), and June 26, 2014 (the Thursday after the murder). The Mersin Immigration Office provided counsel a notarized letter with apostille attesting that Mr. Ameen signed in as required and completed all of the other requirements of his temporary protection status in Turkey. (Exhs. 11-D & E.)   Several of the witnesses attended sign-ins with Mr. Ameen every Thursday.  The cellphone location records document Mr. Ameen's presence in Mersin on the day he signed in with the Immigration Office.

### 4. The Cell Phone Records Corroborate the Sworn Declaration from Hudhayfah Ameen that He Spoke with Omar in Turkey in Late June 2014

Mr. Ameen's older brother, Hudhayfah, specifically remembered his contact with Mr. Ameen by phone between June 19 and June 27, 2014, because Hudhayfah was in Istanbul for business during that week and obtained a Turkish SIM card so that he could speak with Omar in Mersin. (Exh. 9, para. 2-3.)  Hudhayfah provided his passport to the Defense along with a sworn statement in April 2019.  The cell phone records completely confirm Hudhayfah's statement.

Hudhayfah's phone number in Turkey was 5387760629.  Because he was not a resident in Turkey, his name is not in the records, but the phone number he used is.  His phone calls with Omar are detailed in the cell records and show that Omar was in Mersin for those calls, and that Hudhayfah was in Istanbul exactly when he said he was.  The records show three phone calls between Hudhayfah and Omar – on June 19, 20, and 21, 2014.  (Exh. 164, Fig. L.)

| 5387760629 [HUDHAYFAH] | 19.06.2014 20:48:56 | 258 sc. | 6033342261 - opr:Turkcell(KUMEZ21) - KÜLTÜR MAH (MERKULTURMER) AKDENIZ,MERSIN |
|---|---|---|---|
| 5387760629 [HUDHAYFAH] | 20.06.2014 13:51:29 | 147 sc. | 6043328428 - opr:Turkcell(DETAS12) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
| 5387760629 [HUDHAYFAH] | 21.06.2014 11:22:00 | 73 sc. | 6043328428 - opr:Turkcell(DETAS12) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |

Omar was in Mersin for those phone calls – one was received near the Mersin waterfront promenade, and the other two were received at Omar's home.  Hudhayfah provided his passport with the Turkish entry and exit stamps for those dates, and a copy of that passport with the relevant stamps is attached to his declaration at Exhibit 9, which has been previously admitted by the court.  The cell phone records and Hudhayfah's statement place Omar with his cell phone in Mersin on the weekend of Jasim's murder.

### 5.  The Cell Phone Records Show that Omar Was in Turkey When He Spoke with the UNHCR in Late June 2014

The cell phone records also corroborate a phone call by the UNHCR in late June 2014 to Omar regarding his upcoming appointments in Istanbul in connection with his refugee application.  UNHCR records document that direct phone contact was made with Mr. Ameen in late June 2014 in order to notify him of the upcoming medical appointment and cultural orientation in Istanbul starting on July 7, 2014. (Exh. 11, Decl. para. 12.)

//

**From:** DP
**Sent:** Thursday, June 26, 2014 8:54 AM
**To:** DP

**Subject:** Medicals and CO for Iraqi cases between 07-10 Jul 2014
**Attachments:** Medicals and CO for Iraqi cases between 07-10 Jul 2014 (2. group).xls

Dear DP

I'm sending the attached list for Iraqi cases who have Medical screening on **07 Jul 2014** and CO between **08-10 Jul 2014.**

Could you please inform the applicants and request their travel permits accordingly?

Thank you .

The only method for refugee caseworkers to contact Mr. Ameen was through his Turkish cell phone number. It is clear that the UNHCR did contact Omar, in this phone call on June 26, 2014, about 90 minutes after the above email went out.  (Exh. 164, Fig. G.)

| 3124411696 | 26.06.2014 10:24:24 | 26 sc. | BİRLEŞMİŞ MİLLETLER MÜLTECİLER YÜKSEK KOMİSERLİĞİ | 6043328427 - opr:Turkcell(DETAS11) - 77030 SOK  NO 61 DEMIRTAŞ MAH (MERDEMIRTASMAH) TOROSLAR,MERSIN |
|---|---|---|---|---|

The cell phone records corroborate this contact and again put Mr. Ameen with his phone in Mersin, Turkey within days of the murder.  They document the very call from the UNHCR ("Birleşmiş Milletler Mülteciler Yüksek Komiserliği" in Turkish) to Omar on the morning of June 26, 2014 that went through the cell tower near Omar's home in Mersin.  (Exhs. 160, 161, Line 160.)  The UNHCR confirmed it contacted Omar and provided him information.  (Defense Exh. 11-F.)  This call puts Omar in Mersin in late June 2014, receiving the call that enabled him to arrange for his travel to Istanbul the following week for his required appointments.

### 6.  The Cell Phone Records Allowed the Defense to Contact Mr. Ameen's Turkish Employers and Confirm that He Worked for Them in Late June 2014

In addition, the information in the phone records allowed the Defense to interview Omar's two Turkish employers.  These additional witnesses have given statements to Turkish attorney Ayşe Meral Öztürkler.  Both of them confirm that Omar was in Mersin in June 2014, as

1  documented in the records.  The records show frequent phone calls between Mr. Ameen and

2  Yüksel Eroğlu and Mehmet Konar.  Both Mr. Eroğlu and Mr. Konar confirmed that Omar

3  worked for them during that time, they were in frequent telephone contact, and <u>Omar always</u>

4  <u>answered his cell phone when they called</u>.  (Exhs. 165, 166.)  They would call him when they

5  needed him to work, and he would go to Mr. Eroğlu's shop and work for a day or two doing

6  what they needed.  He was always available when they needed him.  No one else ever answered

7  his phone.

8      The pattern of phone calls between Mr. Ameen and his employers confirms what they

9  say.  They show that Mr. Eroğlu always called Mr. Ameen (never the other way around) and that

10  the phone calls were short and often multiple times a week.  (Exh. 164, Fig. M.)

| | | | | | | | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employers | 5/5/2014 | 5/6/2014 | 5/7/2014 | 5/12/2014 | 5/15/2014 | 5/19/2014 | 5/24/2014 | 5/30/2014 | 6/7/2014 | 6/19/2014 | 6/25/2014 | 6/30/2014 | 7/2/2014 | 8/1/2014 | 8/30/2014 |
| MEHMET KONAR | | | ■ | | | ■ | | | | | | ■ | | | ■ |
| YÜKSEL EROĞLU | ■ | | ■ | ■ | | ■ | ■ | ■ | ■ | ■ | ■ | ■ | | ■ | |

13  Mr. Konar and Mr. Ameen called each other through the time period, befitting their more

14  informal working relationship, since Mr. Eroğlu owned the show and employed them both.  The

15  records show that neither Mr. Konar, nor Mr. Eroğlu called Mr. Ameen during the periods of

16  time that he was in Istanbul for his refugee application, indicating that he had notified them that

17  he would not be available for work during that time.  Whenever they called him, he was in

18  Mersin, Turkey, usually at his home.  (Exh. 164,

19  Fig. N.)  Mapping Omar's calls with Eroğlu and

20  Konar shows Omar's regular path between

21  Omar's apartment and the construction supply

22  store that Eroğlu ran in a neighborhood west of

23  Mersin.  They provide compelling evidence

24  confirming what the cell phone records show:

25  Omar Ameen was in Mersin during all of June

26  2014.



27

28



**7. The Patterns in the Phone Records Prove that Mr. Ameen Used His Cell Phone in Turkey Throughout Summer 2014, Including Close to the Date of the Murder**

There is other evidence that the phone was in Mr. Ameen's hand for the Summer 2014 phone calls in Turkey.  As noted above, there are 153 calls that pinged off the cell tower closest to Mr. Ameen's home at 77030 Sokok No. 61.  (Exh. 164, Fig. C.)  That same tower was the one used most by Omar's wife to contact him when he was out of the house.  (Exh. 164, Fig. E).  The locations most used by Omar on calls were locations that have already been discussed in this case: the Mersin waterfront where Omar would meet friends, downtown Mersin where he would sign-in at the immigration office, and the route between his home and his work in Soli, a neighborhood to the west of the city.  All the calls and locations are consistent with Omar's life in Mersin.

The cellphone records prove that Mr. Ameen was in Mersin exactly when he was supposed to be, including in the days before and after Mr. Jasim's murder.  They also corroborate other Defense evidence, including relevant calls with the UNHCR and the ICMC, and Mr. Ameen's travels to Istanbul in late May 2014 and early July 2014 in connection with his refugee application.  In short, during the May through August 2014 period covered by the records, Mr. Ameen never left Turkey.

In graphic form, the cell phone records amply prove that Mr. Ameen was in Mersin during the relevant time.  Mapped onto Mersin, Turkey, the records show a consistent pattern of movement to various locations that are confirmed to be important in Omar's life: his home, the home of Omar Hamid, downtown Mersin where the refugee office and other necessary services

are, and Omar's work in a neighborhood called Sofi.

Over the four months, 270 calls are confirmed in the town of Mersin. One additional call is at the beach outside Mersin, still in the Province of Mersin where Mr. Ameen was required to stay by the Turkish Government. (Exh. 164, Fig. O.)



Focusing in on Mersin, 227 calls occurred in the central city of Mersin, while 42 calls occurred in the neighborhood to the west where Mr. Ameen's employer was located. (Exh. 164, Fig. P)



With respect to the Mersin calls, 182 occurred near Mr. Ameen's home, while 30 occurred in the downtown area. An additional 57 occurred between Mr. Ameen's home and his

work. (Exh. 164, Fig. Q.)



An additional 20 calls occurred in Istanbul, exactly during the periods where Mr. Ameen traveled there with official permission to engage in meetings and interviews in connection with his refugee application.  In fact, as documented in the graphic below, one call was received at the bus station between Istanbul and Mersin on exactly the day that Omar was returning after his cultural orientation, July 10, 2014.  (Exh. 164, Fig. R.)



The geographical proof in the calls is confirmed by their frequency and the parties involved, who have confirmed that Mr. Ameen was in Mersin when he was supposed to be. During his calls with Yüksel Eroğlu, his Turkish employer in Mersin, Omar was either at home or between home and work when he received those calls.  (Exh. 164, Fig. S.)



The calls using 73077 Sokok, Omar's home cell tower, show a clear pattern of longer calls with friends and family when Omar was at home.  This trend was consistent throughout the summer, including Omar's long phone calls at home on the day prior to Mr. Jasim's murder. (Exh. 164, Fig. T.)



Omar Ameen was in Mersin, Turkey, at the very time that the victim was killed in Rawah, Iraq.  He was in Turkey throughout the Summer of 2014, when ISIS advanced on Rawah

and declared its Caliphate in Syria and Iraq.  He did not leave Turkey from his entry in early 2012 until his departure for the United States in November 2014.  He did not kill Ihsan Jasim. He had nothing to do with that killing or with ISIS.  He has been wrongly accused of this offense by a witness whose official statements to the FBI and the Iraqi Court are wildly inconsistent and unreliable.  That witness said Omar was in Iraq in Spring 2014 with ISIS preparing to take over Rawah.  Omar was in Turkey.  That witness said Omar was in Rawah in late Summer 2014 with Abu Bakr al-Baghdadi celebrating the victory.  Omar was in Turkey.  That witness said Omar killed Ihsan Jasim in Iraq on June 22, 2014.  Omar was in Turkey.

## IV.    THE CELL PHONE LOCATION RECORDS OBLITERATE PROBABLE CAUSE

Omar's cell phone records obliterate probable cause.  They definitively prove that Omar was in Mersin, Turkey on the day, and within an hour, of Jasim's murder.  As the Court knows, Mersin and Rawah are approximately 600 kilometers away through the most direct route.  (Exh. 1 [admitted].)   As this Court previously ruled in admitting evidence that Omar Ameen was in Turkey, "It would be manifestly unjust to prohibit a fugitive from presenting evidence that conclusively establishes that he could not have committed the crime he is charged with."  (Doc. 160, p. 14-15.)  Accordingly, "the interests of justice militate in favor of admission of Ameen's alibi evidence."  Id.

Having been admitted, it is clear that the evidence obliterates probable cause.  The question is whether there is competent probable cause "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the guilt of the accused." See In re Extradition of Paberalius, No. 10M275, 2011 U.S. Dist. LEXIS 57907 at *41, 2011 Westlaw 2144065 at *13 (N.D. Ill. May 31, 2011).

Omar Ameen was undeniably in Mersin, Turkey, at the time of Mr. Jasim's murder.[5]  The strength of his evidence would be enough to obliterate even a strong showing of probable cause, because it is clearly impossible that he committed the murder.  However, even before the cell

---

[5]    The Extradition Treaty provides an additional legal basis to admit this evidence and deny extradition.  Mr. Ameen can only be extradited to Iraq for this murder if he was "actually within such jurisdiction when committing the crime."  (Treaty Art. I at Doc. 137, p. 8.).  He was not actually within Iraq and accordingly cannot be extradited under the explicit terms of the treaty.

phone evidence, the alleged proof against Mr. Ameen was riddled with forgeries, fraud, and inconsistencies.  "Given all the circumstances" here, there is not a "fair probability" that Mr. Ameen committed the crime.  Paberalius, at *42.  Wildly inconsistent statements, impossible timelines, and forgeries cannot support each other to establish probable cause.  See In re Mazur, 2007 U.S. Dist. LEXIS 52551, at *57-85 (N.D. Ill. July 20, 2007)(extradition denied despite 5 volumes of Government evidence).

Statements of Person 5 present "insufficient indicia of reliability or credibility to establish probable cause."  In re Rodriguez Ortiz, 444 F.Supp.2d 876, 884 (N.D. Ill. 2006).  Over and over, the Government's evidence lacks all indicia of credibility.  Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986) ("the credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extradition magistrate.");  Mainero v. Gregg, 164 F.3d 1199, 1205-06 (9th Cir. 1999) (quoting Quinn).  The Court has previously noted that Person 5 is the only purported eyewitness to Mr. Jasim's murder, requiring some kind of corroboration and "no basis for doubting the witness's veracity."[6]   (Doc. 160, p. 19 [emphasis by Court].) Person 5's statements fail on their face, as he accuses Omar Ameen of being in Rawah throughout 2014 and also accuses him of a 2016 kidnapping.  Even if somehow these statements support probable cause, they are clearly obliterated by the clear evidence that Omar Ameen was in Mersin, Turkey on the very day of the murder.

This very district has issued two compelling and well-reasoned court decisions rejecting probable cause for extradition.  In In re Extradition of Singh, 170 F. Supp. 2d 982, 1023 (E.D. Cal. 2001), Judge Wanger held that "the extradition judge makes credibility determinations as to the competence of the evidence supporting probable cause."  Accord In re Muñoz Santos, 228 F.Supp.3d 1034, 1054 (C.D. Cal. Jan. 9, 2017) (quoting Singh); In re Monroe, No. 1:06-CV-

---

[6]     The Government attempted to provide weak, unsworn corroboration by another witness -- handpicked and provided to the FBI by TMF-1 -- who provided inherently reliable claims as discussed in the Defense Second Supplemental Brief at Doc. 258, pp. 2-10.  That attempted corroboration is incredible on every possible basis.  See Republic of France v. Moghadam, 617 F. Supp. 777, 784 (N.D. Cal. 1985)(rejecting the Government's attempt to corroborate untrustworthy main witness).

Ameen – Third Supp. Brief              23

00418 OWW, 2006 U.S. Dist. LEXIS 65815, at *10 (E.D. Cal. Aug. 30, 2006)(quoting Singh).

Judge Wanger held that a credible witness affidavit "destroy[ed] the competence of the evidence

and obliterate[d] probable cause" for one of the charged offenses.  Singh, 170 F. Supp. 2d at

1023.   In In re Extradition of Strunk, 293 F. Supp. 2d 1117, 1126-1140 (E.D. Cal. 2003), Judge

Hollows denied extradition after a range of defense evidence, including alibi declarations from

family members, obliterated some of Government's evidence and the remaining evidence was

"so inconsistent and conflicting that it provides little competent evidence" supporting extradition.

     Here, the evidence of Mr. Ameen's presence in Turkey within an hour of the victim's

murder in Iraq, is overwhelming.  It obliterates any possibility that Omar committed the offense.

Judges faced with clear obliteration have refused to certify extradition.  Where, as here,

obliterating evidence is extremely strong and clear, and evidence of probable cause is highly

suspect, the Court should refuse to extradite.  See Republic of France v. Moghadam, 617 F.

Supp. 777, 783 (N.D. Cal. 1985); In re Gonzalez, 52 F.Supp.2d 725 (W.D. La. 1999) (releasing

defendants where they provided extremely strong evidence that they were not at the crime scene,

and where eyewitness identifications were highly suspect).

     Omar was in Turkey at the very moment that Jasim was killed by ISIS in Rawah, Iraq.

Omar had nothing to do with it.  This evidence "conclusively establishes" that Omar did not

commit the murder of Ihsan Jasim.

     //

     //

## V.    CONCLUSION

The Defense very much appreciates the Court's willingness to allow the time needed to obtain and present these records, which provide "near perfect surveillance" of Mr. Ameen's location, habits, and associations in Turkey during this time.  Carpenter v. United States, 138 S. Ct. 2206, 2210, 2223 (2018).  As the records prove, Mr. Ameen is absolutely innocent of the killing of Mr. Jasim.  Mr. Ameen is absolutely innocent of belonging to ISIS, much less of being a commander.  These records, along with the other overwhelming evidence that Omar Ameen was in Turkey and had nothing to do with the killing of Mr. Jasim, fully obliterate probable cause.  Mr. Ameen requests that the Court deny the request to certify extradition and order his release.

DATED: January 26, 2021                Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender


/s/ Rachelle Barbour
RACHELLE BARBOUR
Assistant Federal Defender


/s/ Benjamin D. Galloway
BENJAMIN D. GALLOWAY
Chief Assistant Federal Defender
Attorneys for OMAR AMEEN